LOFTUS & EISENBERG, LTD.
ALEXANDER N. LOFTUS, ESQ. (to be admitted *pro hac vice*)
ROSS M. GOOD, ESQ. (to be admitted *pro hac vice*)
161 N. Clark, Suite 1600
Chicago, Illinois 60601
T: (312) 772-5396
alex@loftusandeisenberg.com
ross@loftusandeisenberg.com

ARON LAW FIRM
WILLIAM ARON, ESQ. (#234408)
15 W Carrillo St, Suite 217
Santa Barbara, California 93101
T: (805) 618-1768
bill@aronlawfirm.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT—NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ELLUSIONIST CASH BALANCE PLAN AND TRUST, UYEN HUHYN, SOUTHWEST INVESTMENTS FUNDS, LLC, AVR GROUP, LLC, TRIDENT ASSET MANAGEMENT, INC., PHOENIX AFFORDABLE HOUSING AUTHORITY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> JEFFREY SPIEGEL, RYAN SPIEGEL, SAC ADVISORY GROUP, LLC, and SPIEGEL ACCOUNTANCY CORP. <br><br> Defendants. | CASE NO. 3:23-cv-00287 <br><br> **RESPONSE TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date:      March 30, 2023 <br> Time:      1:00 p.m. <br> Courtroom:  4 – 17th Floor <br> Judge:     Hon. Vince Chhabria |

## <u>TABLE OF CONTENTS</u>

I. STATEMENT OF ISSUES ............................................................................ 1

II. INTRODUCTION ..................................................................................... 1

III. ARGUMENT ........................................................................................... 2

A. Legal Standards ....................................................................................... 2

B. Plaintiffs State a Claim for Accounting Malpractice. ................................. 4

C. Each of the Defenses Based on the Agreement are Unenforceable
or Inapplicable............................................................................................ 5

1. The "waiver" is unenforceable and inapplicable. .................................... 6

i. The purported "waiver" is unenforceable pursuant to Section 29(a)
of the Securities Exchange Act ................................................................... 6

ii. The purported "Waiver" is unenforceable pursuant to California
Civil Code § 1668 ..................................................................................... 7

iii. The purported "Waiver" is unenforceable pursuant to common
law contract principals. ............................................................................. 8

iv. The purported "waiver" only applies to SAC Advisory Group. ............. 9

2. The Anti-Reliance Clause is unenforceable and inapplicable. ................. 9

i. The Anti-Reliance Language of the Agreement is unenforceable
pursuant to Section 29(a) of the Securities Exchange Act ......................... 9

ii. The Agreement itself contains the core misrepresentations alleged
in the Complaint. ...................................................................................... 10

D. Plaintiffs State Valid Securities Claims Authorizing Federal
Jurisdiction. .............................................................................................. 11

1. Plaintiffs State a Claim for Declaratory Judgment ................................. 12

2. Plaintiffs State Claims for Violation of 12(A)(2) and Violation of
Section 15.................................................................................................. 13

3. Plaintiffs Adequately Allege Defendants were Brokers as Defined
by Applicable State and Federal Regulations. ............................................ 15

4. Plaintiffs adequately allege Defendants Violated California
Corporations Code § 25401 ...................................................................... 16



E. The Claim for Violation of California Business & Professions Code §17200 is Pled in the Alternative and Moot since Defendants Admit this was a Securities Transaction ................................................ 16

F. Horwitz's Criminal Conduct is an Existing Condition and not an "Intervening Act." ................................................................................. 17

IV. CONCLUSION ............................................................................. 18



# TABLE OF AUTHORITIES

**Cases**

*AES Corp. v. Dow Chemical Co.*,
325 F.3d 174 (3d Cir. 2003)................................................................................. 10

*Alpha Investment, LLC v. Zynga, Inc.*,
2012 U.S. Dist. LEXIS 81311 (N.D. Cal. June 12, 2012) .................................. 7, 8

*In re Asyst Techs., Inc. Derivative Litig.*,
2008 WL 4891220 (N.D. Cal. Nov. 12, 2008).................................................... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 3

*Bell Atl. Corp. v Twombly*,
550 U.S. 544 (2007) .......................................................................................... 2, 3

*Bridges v. Geringer*,
2015 U.S. Dist. LEXIS 66695 (N.D. Cal. May 21, 2015) ................................... 15

*Bowen v. Ziasun Technologies, Inc.*,
116 Cal.App.4th 777 (2004) ............................................................................... 17

*Buffin v. Community*,
2021 U.S. Dist. LEXIS 190329 (C.D. Cal. Aug. 6, 2021) ............................... 6, 10

*Burgess v. Premier Corp.*,
727 F.2d 826 (9th Cir. 1984)................................................................................ 7

*Barkett v. Brucato*,
122 Cal. App. 2d 264, 264 P.2d 978 (1953) ......................................................... 8

*Conley v. Gibson*,
355 U.S. 41 (1957)............................................................................................... 2

*Cook v. Avien, Inc.*,
573 F.2d 685 (1st Cir. 1978)............................................................................... 14

*Doe v. United States*,
419 F.3d 1058 (9th Cir. 2005).............................................................................. 2

*Farnham v. Sup. Ct.*,
60 Cal. App. 4th 69, 74, 70 Cal. Rptr. 2d 85 (1997)......................................... 7, 8

*Hill York Corp. v. American International Franchises, Inc.*,
448 F.2d 680 (5th Cir. 1971).............................................................................. 14



*Hudgins v. Standard Oil Co.*
136 Cal. App. 44, 28 P.2d 433 (Cal. App. 1933). .................................................................. 8

*Jadoff v. Gleason,*
140 F.R.D. 330 (M.D.N.C. 1991) ......................................................................................... 9

*Larson v. Santa Clara Valley Water Conservation Dist.,*
218 Cal. App. 2d 515, 32 Cal. Rptr. 875 (Cal. App. 1st Dist. 1963) ................................... 9

*Leite v. Crane Co.,*
749 F.3d 1117 (9th Cir. 2014)............................................................................................... 3

*Lindner v. Barlow, Davis & Wood,*
210 Cal. App. 2d 660 (1962)................................................................................................. 5

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009)............................................................................................... 3

*Koepke v. Loo,*
18 Cal.App.4th 1444 (1993) ............................................................................................... 18

*McQuirk v. Donnelley*
189 F.3d 793 (9th Cir. 1999)................................................................................................. 8

*Melcher v. Fried,*
2018 U.S. Dist. LEXIS 205252, 2018 WL 6326334 (S.D. Cal. Dec. 4, 2018)..................... 6

*Merkamerica Inc. v. Glover,*
2019 U.S. Dist. LEXIS 231519, at *32-34 (C.D. Cal. Dec. 3, 2019) ................................. 10

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning,*
578 U.S. 374 (2016)............................................................................................................ 11

*Mills v. Electric Auto- Lite Co.,*
396 U.S. 375 (1970)............................................................................................................ 12

*Moore v. Anderson Zeigler Disharoon Gallagher & Gray,*
109 Cal. App. 4th 1287, 135 Cal. Rptr. 2d 888 (2003)........................................................ 5

*Morris v. Zusman,*
857 F. Supp. 2d 1082 (D. Or. March 9, 2012) ..................................................................... 7

*S.E.C. v. Murphy,*
626 F.2d 633 (9th Cir. 1980).......................................................................................... 14, 15

*Nationwide Inv. Corp. v. California Funeral Serv., Inc.,*
40 Cal. App. 3d 494, 502, 114 Cal. Rptr. 77 (Ct. App. 1974) ........................................... 15

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993)......................................................................... 3

*Paskenta Band of Nomlaki Indians v. Crosby*,
122 F.Supp.3d 982 (E.D.Cal. 2015) ....................................................... 17

*Parvin v. Davis Oil Co.*,
524 F.2d 112 (9th Cir. 1975)................................................................... 14

*Petersen v. Allstate Indem. Co.*,
281 F.R.D. 413 (C.D. Cal. 2012) ............................................................ 3

*Petro-Ventures, Inc. v. Takessian*,
967 F.2d 1337 (9th Cir. 1992)................................................................. 6

*Pool v. City of Oakland*,
42 Cal.3d 1051 (1986) ........................................................................... 17

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
768 F.3d 938 (9th Cir. 2014)................................................................... 4

*Rogen v. Illikon*,
361 F.2d 260 (1st Cir. 1966) ................................................................. 10

*Sater v. Chrysler Group LLC*,
2015 U.S. Dist. LEXIS 21022 (C.D. Cal. Feb. 20, 2015)......................... 3

*Starr v. Baca*,
652 F. 3d 1202 (9th Cir. 2011)................................................................. 4

*Turpin v. Sortini*,
31 Cal. 3d 220, 229-30, 182 Cal. Rptr. 337, 643 P.2d 954 (1982) .......... 4

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
 282 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................... 12

*West v. Innotrac Corp.*,
463 F. Supp. 2d 1169 (D. Nev. 2006) ................................................... 14

*Yokell v. Draper*,
2018 U.S. Dist. LEXIS 117427, at *27 (N.D. Cal. 2018)........................ 15

**Rules and Statutes**

California Civil Code § 1542 ................................................................... 8

California Civil Code § 1668 .............................................................. 6, 7



Fed. R. Civ. P. 8(a)(2) ........................................................................................... 2

Fed. R. Civ. P. 9(b) ............................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ..................................................................................... *passim*

Fed. R. Civ. P. 26(a)(1)(4) .................................................................................... 4

Section 12(a) of the Securities Exchange Act ....................................................... *passim*

Section 29(a) of the Securities Exchange Act ....................................................... *passim*

Plaintiffs, ELLUSIONIST CASH BALANCE PLAN AND TRUST, UYEN HUHYN, SOUTHWEST INVESTMENTS FUNDS, LLC, AVR GROUP, LLC, TRIDENT ASSET MANAGEMENT, INC., PHOENIX AFFORDABLE HOUSING AUTHORITY, LLC, respectfully submit this opposition to Defendants' Motion to Dismiss.

## I.     STATEMENT OF ISSUES

Whether the Accounting Malpractice and Federal Securities Complaint (the "Complaint") adequately pleads Defendants' violation of § 12(a)(2) of the Securities Act of 1933, violation of § 15 of the Securities Act of 1933, violation of § 15(a) and 17 CFR § 239.500, violation of California Corporations Code § 25501, violation of California Corporations Code § 25401, violation of California Corporations Code § 25403, violation of California's Unfair Competition Law, Cal. Bus. & Prof Cod § 17200, and states a claim for Negligent Misrepresentation and Accounting Malpractice

## II.     INTRODUCTION

This case involves the sale of securities for investment in a Ponzi Scheme. Defendants are the second largest aggregator for the 1inMM Ponzi Scheme operated by convicted fraudster Zachary Horwitz. *See* Doc. 11-1, Request for Judicial Notice ("RJN"), Ex. 3-5. Horwitz raised very little money directly from individual investors and instead relied on aggregators (salesmen), such as Defendants, to add credibility to the pitch and act as a gatekeeper between the fraudster and the investors. *Id.* Horwitz has gone to prison and the largest aggregator settled the civil claims against it. The liability against this aggregator is obvious (especially when limited to negligence) and well pled. This case should move forward expeditiously.

The 1inMM Ponzi would not have flourished with over $1 billion dollars running through its accounts were it not for the willful ignorance of aggregators and their retained professionals including Defendants.



Defendants' inexperience and ineptitude in selling securities is the basis for all of the claims and disposes of all of the defenses. Defendants profited from playing broker-dealers but failed at every level of compliance requisite for their assumed roles. Defendants did not register to sell securities, did not file a Form D, did not do any of the due diligence required of any professional in the role they assumed, and entered into agreements with investors that violated securities laws. The Defendants' hubris speaks through the instant rambling twenty-page Motion to Dismiss that flippantly disregards serious claims against Spiegel Accountancy Corp. and overlooks obvious facts and controlling law.

## III. ARGUMENT

### A. Legal Standards

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require a plaintiff to provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (quoting Fed. R. Civ. P. 8(a)(2)).); *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his" entitlement to relief"



requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

Defendants argue, or admit, that none of the claims sound in fraud with exception of negligent misrepresentation. (Mot. p. 12). Accordingly, the Rule 8 standard applies to all the claims that Defendants admit do not sound in fraud. *See* Fed. R. Civ. P. 9(b) (A party alleging fraud must "state with particularity the circumstances constituting fraud."); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *see also Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993). Finally, Courts do not subject allegations of negligent misrepresentation to heightened pleading requirements because that tort relies on objective standard of reasonableness, unlike common law fraud which contains scienter requirement. *Sater v. Chrysler Group LLC*, 2015 U.S. Dist. LEXIS 21022, at *30 (C.D. Cal. Feb. 20, 2015); *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417-18 (C.D. Cal. 2012) (discussing text of Rule 9(b) and contrasting elements of California tort of negligent misrepresentation with fraud).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 556).

The Motion is titled only as a 12(b)(6) and the prayer for relief only mentions 12(b)(6) but several portions make 12(b)(1) arguments. Regardless of how it is titled the same standard applies to a facial attack on jurisdiction such as this. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014), and court "must accept as true all factual allegations in the complaint and draw all reasonable



inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F. 3d 1202, 1216 (9th Cir. 2011).

The pleading standards are fully satisfied with the detailed Complaint.

**B. Plaintiffs State a Claim for Accounting Malpractice. (Mot. at 20).**

Defendants' argument on this claim is threadbare and oddly challenges the irrelevant motive for bringing it rather than challenging the pleading with any cogent legal argument.

As to the motive argument, it would certainly be prudent for Defendants to maximize available insurance coverage and provide Plaintiffs with that information regarding insurance coverage as required by Rule 26(a)(1)(4) and CCP §2017.210 that have been repeatedly requested in order to cover the substantial losses alleged and at least mitigate the cost of defense of complicated claims. All would benefit if Defendants understood the gravity of the situation and sought all available assistance in resolving the serious claims.

As to the merits of the accounting malpractice claim, the basic elements of a claim for professional malpractice are as follows: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. *Turpin v. Sortini*, 31 Cal. 3d 220, 229-30, 182 Cal. Rptr. 337, 643 P.2d 954 (1982). Regarding the first element, the duty to use skill, prudence, and diligence is triggered only where the professional owes a duty to the



claimant in the first place. *See Moore v. Anderson Zeigler Disharoon Gallagher & Gray*, 109 Cal. App. 4th 1287, 1294, 135 Cal. Rptr. 2d 888 (2003) (noting that "[a] key element of any action for professional malpractice is the establishment of a duty by the professional to the claimant" and that, "[a]bsent duty there can be no breach and no negligence") (internal quotation marks omitted). As an accountant, Jeff Spiegel and Spiegel Accountancy Corp. are subject to professional liability. *Lindner v. Barlow, Davis & Wood*, 210 Cal. App. 2d 660, 665 (1962).

Again, Spiegel Accountancy Corp. was the accountant for a feeder fund for a criminal enterprise whose principal profited from the investment in the criminal scheme, who's investors were customers of Spiegel Accountancy Corp. that were solicited for investment at Spiegel Accountancy Corp. by one of its owners.

Plaintiffs plead the following facts necessary to state a claim for accounting malpractice: First, Jeffrey Spiegel was acting as an agent or apparent agent of Spiegel Accountancy Corp. (Doc. 1 ("Cmplt.") ¶ 143). Second, Plaintiffs were customers of Spiegel Accountancy Corp. (*Id.* at 144) Jeffrey Spiegel sold Plaintiffs on the 1inMM in investments when meeting to discuss the tax services provided by Spiegel Accountancy Corp. at its office and utilized his knowledge of their financial situation and trusting relationship as their accountant to effectuate the sale of the bogus securities (Cmplt. ¶¶ 146, 147). The California Board of Accountancy, ICPA Code of Professional Conduct, and The International Ethics Standards Board for Accountants ("IESBA") Code of Ethics for Professional Accountants define the standard of care which prohibit just this sort of conduct. (Cmplt. ¶¶ 148-151). Spiegel Accountancy Corp. and Jeffrey Spiegel violated the controlling standards set forth herein and capitalized on a conflict of interest, woefully failed to discover the fraud despite the countless red flags, and, once the fraud became obvious, it failed to act in the public interest. (*Id.* at 156). Jeff Spiegel violated controlling regulations while concurrently selling his customers investment in a Ponzi scheme for his own personal gain while also providing them



with tax services. (*Id*. at 157). Finally, but for the negligent acts and breaches of the standard of care, Jeffrey Spiegel would not have parroted Horwitz's lies, would have uncovered the fraud, and would have saved Plaintiffs millions of dollars. (*Id*. at 158). Accordingly, there is no question that Plaintiffs state a claim for accounting malpractice against their accountant who profited by selling them into a Ponzi Scheme fund that his firm did the accounting work for.

**C. Each of the Defenses Based on the Agreement (RJN Ex. 4) are Unenforceable or Inapplicable. (Mot. at 11).**

**1. The "waiver" is unenforceable and inapplicable.**

The employment of this blanket prospective waiver in an investor agreement demonstrates Defendants lack of sophistication in selling securities. The broad prospective release of any liability is unenforceable for three reasons: First, it violates Section 29(a) of the Securities Exchange Act; Second it violates California Civil Code § 1668; Third, it violates common law principals; and, Fourth, even if valid, the waiver only applies to SAC itself and not the other Defendants.

**i. The purported "waiver" is unenforceable pursuant to Section 29(a) of the Securities Exchange Act.**

Section 29(a) of the Securities Exchange Act, however, provides that "any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void." 15 U.S.C. § 78cc(a); *Buffin v. Community*, 2021 U.S. Dist. LEXIS 190329, at *6 (C.D. Cal. Aug. 6, 2021). In addition, "[i]n dealing with federal securities, the general rule is that unknown or subsequently maturing causes of action may not be waived." *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1340-41 (9th Cir. 1992). That is exactly how Defendants are employing this contract term. This provision "generally invalidates blanket releases of liability that accompany the purchase of a sale of securities." *Melcher v. Fried*, No. 16-cv-2440, 2018 U.S. Dist. LEXIS 205252, 2018

WL 6326334 at *6 (S.D. Cal. Dec. 4, 2018). However, Section 29(a) does not bar waivers of securities fraud claims to settle existing litigation, *Petro-Ventures*, 967 F.3d at 1342-43, or if the waiving party has actual knowledge of claims for securities fraud at the time of signing the release, *Burgess v. Premier Corp.*, 727 F.2d 826, 831-32 (9th Cir. 1984). Neither occurred here: Plaintiffs signed the agreement before making the investment, learning of the present claims, or filing this action.

Accordingly, since the waiver is for an unknown and subsequently maturing cause of action it is void as a matter of law.

### ii. The Purported "Waiver" is unenforceable pursuant to California Civil Code § 1668.

The waiver is unenforceable pursuant to California Civil Code § 1668. This statute provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ. Code § 1668. Pursuant to this statute, California courts have held, "that the parties to a contract may not contract away liability for future intentional misconduct or **for future violation of statutory law**, <u>**whether or not intentional**</u>." *Alpha Investment, LLC v. Zynga, Inc*., 2012 U.S. Dist. LEXIS 81311, at *18-20 (N.D. Cal. June 12, 2012); *quoting Morris v. Zusman*, 857 F. Supp. 2d 1082, 2012 U.S. Dist. LEXIS 31854, 2012 WL 786838, *11 (D. Or. March 9, 2012)(emphasis added). With respect to intentional torts, California courts have also consistently invalidated "exemptions from all liability." *Farnham v. Sup. Ct.*, 60 Cal. App. 4th 69, 74, 70 Cal. Rptr. 2d 85 (1997). In *Farnham*, the court upheld *a* limitation on liability for intentional wrongs against directors of a corporation where the plaintiff was able to and did recover from the corporation for the director's conduct. Significantly, the court held that the plaintiff was entitled to prove that the directors were

acting as individuals, for their own self-interests, presumably to enable the plaintiff to recover against the directors directly despite the waiver of liability. *Id.* at 77-78. The court also noted that the corporation's insolvency could affect the enforceability of the waiver as well. *Id.* at 78 n.8. Thus, *Farnham* stands for the proposition that while some limitations on liability may be acceptable, California Civil Code § 1668 precludes a release that would prevent a plaintiff from recovering from anyone or any entity for an intentional wrong. *See McQuirk v. Donnelley*, 189 F.3d 793, 796-97 (9th Cir. 1999) (noting that *Farham* "stands for the proposition that § 1668 invalidates the total release of future liability for intentional wrongs.").

Plaintiffs Second through Eighth causes of action allege the violation of a statute. Section 1668 also precludes a waiver of statutory violations. *Alpha Investment*, 2012 U.S. Dist. LEXIS 81311, at *18-20. Accordingly, the purported waiver is not enforceable.

### iii. The purported "Waiver" is unenforceable pursuant to common law contract principals.

"One cannot contract away his liability to third parties for his own active negligence". *Larson v. Santa Clara Valley Water Conservation Dist*. 218 Cal. App. 2d 515, 32 Cal. Rptr. 875, (Cal. App. 1st Dist. 1963); *Barkett v. Brucato*, 122 Cal. App. 2d 264, 266, 264 P.2d 978, 981 (1953) (A general waiver clause, independently of Cal. Civ. Code § 1668, will not be interpreted, in the absence of clear, positive, and specific language, to include acts amounting to affirmative negligence). In this case, Defendants were in the middle of the affirmative negligent action of making ignorant representations based on false facts when securing the release.

In the alternative, the provision is void by application of the doctrine of mutual mistake. *Hudgins v. Standard Oil Co*. 136 Cal. App. 44, 28 P.2d 433, (Cal. App. 1933);.Cal. Civ. Code § 1542. Plaintiffs and Defendants were both mistaken as to the entire premise of the contract therefore it is voidable.



#### iv.   The purported "waiver" only applies to SAC Advisory Group.

Assuming, *arguendo,* the waiver was somehow valid, the waiver is limited to claims "against

SAC" there is no limitation on claims against the other Defendants.

The Agreement provides:

> "Investor acknowledges that SAC has not guaranteed that Investor will actually receive the Preferred Return and Investor irrevocably waives any and all claims **against SAC** in the event Investor receives less than the Preferred Return or realizes a complete loss of the Investment Amount in connection with the payment of the Investment Amount hereunder."

(RJN Ex. 1, ¶ 3.1)

There is no language in the contract extending this waiver to other parties or broadly

defining SAC to include all Defendants.

### 2.   The Anti-Reliance Clause is unenforceable and inapplicable. (Mot. 12, 17-18)

Defendants erroneously rely on the following contract provision to escape liability for the

incredible negligence:

> He or she acknowledges that in connection with paying the Investment Amount no oral or written representations have been made by SAC, its manager or any officer, employee, agent other than representations made in this Agreement.

(RJN Ex. 1, ¶ 4.4)

This clause fails to shield Defendants from liability for several reasons. First, the contract

provision is void by application of Section 29(a) of the Securities Exchange Act; Second, the core

misrepresentations are contained in the agreement itself.

#### i.   The Anti-Reliance Language of the Agreement is unenforceable pursuant to Section 29(a) of the Securities Exchange Act

Courts interpreting Section 29(a) have held that "non-reliance" clauses, where a party

represents that it did not rely on statements outside the contract itself, cannot establish nonreliance



as a matter of law. *See AES Corp. v. Dow Chemical Co.*, 325 F.3d 174, 180 (3d Cir. 2003) (holding that Section 29(a) "forecloses anticipatory waivers of compliance with duties imposed by Rule 10b-5," including non-reliance clauses, because "if a party commits itself never to claim that it relied on representations of the other party to its contract, it purports anticipatorily to waive any future claim based on fraudulent misrepresentations of that party"); *Rogen v. Illikon*, 361 F.2d 260, 268 (1st Cir. 1966) ("[W]e see no fundamental difference between saying, for example, 'I waive any rights I might have because of your representations or obligations to make full disclosure,' and 'I am not relying on your representations or obligations to make full disclosure.' Were we to hold that the existence of this provision constituted the basis . . . for finding non-reliance as a matter of law, we would have gone far toward eviscerating Section 29(a)"); *Jadoff v. Gleason*, 140 F.R.D. 330, 334 (M.D.N.C. 1991) ("Were such a statement to be upheld as a waiver it would constitute a license for fraud. Parties would be estopped from complaining of actionable misrepresentations and omission simply because they signed a paper stating there were none."). *Merkamerica Inc. v. Glover*, No. CV 19-6111 PSG (GJSx), 2019 U.S. Dist. LEXIS 231519, at *32-34 (C.D. Cal. Dec. 3, 2019); *Buffin,* 2021 U.S. Dist. LEXIS 190329, at *6-9.

### ii. The Agreement itself contains the core misrepresentations alleged in the Complaint.

The Agreement only disclaims representations, "other than representations made in this Agreement." (RJN Ex. 1, ¶ 4.4). The representations in the Agreement are fair game and provide a sufficient basis for each claim alleged. The fact that all the core misrepresentations are in the agreement itself renders the disclaimer useless here. There is no need to rely on any other representations to state the claims alleged. The Agreement contained the following misrepresentations that investors relied on that the Complaint alleges the Defendants were at least negligent in not discovering the truth of:



WHEREAS Distributor (defined below) is in the business of acquiring and licensing film distribution rights to third-party media companies for exclusive distribution in Latin American and African countries (the "Distribution Rights");

This statement is false. There were no rights being acquired and nothing was being distributed. (*See* Cmplt. ¶¶ 57, 35-37, RJN Ex. 4)

WHEREAS in connection with acquiring the Distribution Rights to a particular movie (the "Licensed Movie"), Distributor must pay a one-time non-refundable license fee (the "Acquisition Fee") to the holder of the movie's worldwide distribution rights which is generally the producer of the movie;

This statement is false. No distribution rights existed. There were no movies. (*See* Cmplt. ¶¶ 57, 35-37, RJN Ex. 4)

WHEREAS in order to assist the Distributor in acquiring the Distribution Rights, SAC provides the Distributor with the funds necessary to pay the Acquisition Fee (the "SAC Advance") in exchange for a participation interest in the funds received by Distributor in relicensing a portion of the Distribution Rights to a third-party media company ("Media Company").

This statement is false. No distribution rights existed. There was no acquisition fee paid. No funds were received by the Distributor. (*See* Cmplt. ¶¶ 57, 35-37, RJN Ex. 4)

Plaintiffs reasonably relied on these statements contained in the Agreement when investing in SAC. Each of these statements could have been easily proven false by Defendants had they done an iota of the due diligence required of someone in their position for which they were paid handsomely for. (Cmplt. ¶¶ 86, 91, 105). The Agreement has no impact on these claims even if it were legally enforceable.

**D. Plaintiffs State Valid Securities Claims Authorizing Federal Jurisdiction.**

Defendants occasionally reference 12(b)(1) in the Motion without including it in the prayer for relief or title. *See* (Mot. at 5, 17). As discussed below, Plaintiffs state several federal claims and the gravamen of the action is the violations of basic tenants of federal securities law (15 U.S.C. § 78o(a)(1), 17 CFR § 239.500, 15 U.S.C. § 78o(a)(1)) and voidable illegal agreements made in violation of Federal Law. Section 27 of the Securities Exchange Act "grants district courts

exclusive jurisdiction of 'all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 378-79 (2016) (citing 15 U.S.C. § 78aa(a)). The instant briefing makes clear the core of this dispute is compliance with Federal Securities laws.

### 1. Plaintiffs State a Claim for Declaratory Judgment. (Mot. 4, 16)

The Declaratory Judgement Claim is the heart of the claim. As detailed above, Defendants rely on voidable agreements with terms that are not enforceable. This claim seeks a declaration as to the numerous violations and voiding the agreement that is the foundation of the defense to all of the claims. "Section 29(b) renders voidable '[e]very contract made in violation of any provision of [the securities laws] or of any rule or regulation thereunder, and every contract ... the performance of which involves [such a] violation.' *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1039 (9th Cir. 2011). At the motion to dismiss stage, all a plaintiff must allege is that "(1) the contract involved a prohibited transaction; (2) he is in contractual privity with [the entity]; and (3) [the individual] is in the class of persons that the securities acts were designed to protect." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017) (*quoting In re Asyst Techs., Inc. Derivative Litig.*, 2008 WL 4891220, at \*9 (N.D. Cal. Nov. 12, 2008). In the *Wells Fargo* derivative action, the Court determined that allegations that defendants committed violations of the Exchange Act while performing their duties under various employment contracts was sufficient to state a claim under Section 29(b). *Wells Fargo*, 282 F. Supp 3d 1074 at 1106. The court justified this by reference to *Asyst Technologies*, where the contract in question were stock option contracts granted to director-defendants in that derivative action. *Asyst Technologies*, 2008 WL 4891220, at \*9.

Plaintiffs have a private right of action for rescission of the Securities Contracts in this case under Section 29(b) of the Act. *See Mills v. Electric Auto- Lite Co.*, 396 U.S. 375 (1970). The



Complaint pleads facts that an actual controversy of sufficient immediacy exists between the Parties as to whether Defendants violated Section 15(a)(1) of the Act and 17 CFR § 239.500 whether, pursuant to Section 29(b), the violative agreement or performance by Defendants of the same renders the agreements void. Section 29(b) of the Act voids the rights of the violator (i.e., Defendants, who are conducting themselves as unregistered dealers) when the conduct of the violator contravenes the Act.

The Complaint makes clear that Defendants were in the business of selling securities and were not registered as brokers. SAC was acting as a dealer within the meaning set forth in Act. *See* 15 U.S.C. § 78c(a)(5)(A) (Cmplt. ¶ 180). The federal securities laws require the notice to be filed by companies that have sold securities without registration under the Securities Act of 1933 in an offering made under Rule 504 or 506 of Regulation D or Section 4(a)(5) of the Securities Act. See 17 CFR § 230.503. It is not disputed that Defendants violated 17 CFR § 239.500 by failing to file a Form D. (Cmplt. ¶ 60)("Despite the wide solicitation of investment from greater than 35 investors for greater than $10,000,000, Defendants did not file a Form D with the Securities and Exchange Commission regarding the SAC offering");

There is no legitimate question that this action is properly broad "to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 378-79 (2016).

**2. Plaintiffs State Claims for Violation of 12(A)(2) and Violation of Section 15. (Mot. at 15).**

The language of § 12(a)(2) sets out for four elements for liability: (1) there must be an offer or sale of a security; (2) the offer or sale must be made by the use of any means of interstate commerce or the mails; (3) the offer must be made by means of a prospectus; and (4) the prospectus or oral communication relating to the prospectus must include an untrue statement or omission of a



material fact. Each element is satisfied in the Complaint. *See* (Cmplt. ¶ 60) ("Defendants solicited over 35 investors for greater than $10,000,000")

Courts have developed flexible tests to determine whether a transaction involves a public offering. These tests focus on four factors: "(1) the number of offerees; (2) the sophistication of the offerees; (3) the size and manner of the offering; and (4) the relationship of the offerees to the issuer." *S.E.C. v. Murphy*, 626 F.2d 633, 644-45 (9th Cir. 1980) (citations omitted). For an offering to be private, the test must be met with respect to each purchaser and offeree. *Id*. at 645. There is no language in *Gustafson* indicating that a "public offering" should be strictly defined as an offering made to the public at large.

*Ralston Purina* held that the offer of stock to employees by an employer may constitute a public offering requiring registration, *SEC v. Ralston Purina Co.*, 346 U.S. 119 (1953), indicates that that even if limited to only employees (or customers of an accounting firm and their associates) an offering may be public.

In determining whether a public offering exists, courts are to look to the characteristics of each offeree. *Id* With regard to the number of offerees, courts have routinely held that this factor is not dispositive; there may be instances where there are few offerees but the offering is nonetheless public. *Murphy*, 626 F.2d at 645.

A court assessing the availability of a private offering exemption focuses upon the issuer and the offerees, paying particular attention to the relationship between the two. *See, e.g., Cook v. Avien, Inc.*, 573 F.2d 685, 691 (1st Cir. 1978); *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680, 690 (5th Cir. 1971). This assessment often requires a careful inquiry into the facts surrounding the offering, *see, e.g., Parvin v. Davis Oil Co.*, 524 F.2d 112, 118 (9th Cir. 1975), and, of course, it requires knowledge of who was the issuer of the securities.



*West v. Innotrac Corp.*, 463 F. Supp. 2d 1169, 1177-78 (D. Nev. 2006) is another summary judgment case where the Court held where 40 employees receiving options in a company plan was sufficiently "public" for application of 12(a)(2). That Court held that the issue of whether an offering is public or private turns on whether the particular class of persons affected needs the protection of the securities laws and is subject to a four factor test: "(1) the number of offerees; (2) the sophistication of the offerees; (3) the size and manner of the offering; and (4) the relationship of the offerees to the issuer." *West* at 1176 (quoting *S.E.C. v. Murphy*, 626 F.2d 633, 644-45 (9th Cir. 1980)).

This is a fact intensive inquiry that is not possible to resolve at this stage of the case. Defendants did not register the offering as a private offering so there is no clear guidance on what this was. The leading cases on this complicated issue are summary judgment cases for a reason. *See Murphy*, 626 F.2d at 644; *see also Bridges v. Geringer*, 2015 U.S. Dist. LEXIS 66695, at *14 (N.D. Cal. May 21, 2015)(denying motion to dismiss when offering was limited to a handful of wealthy investors). Accordingly, the Motion to Dismiss should be denied.

Finally, while there is no law on this point, the Court could reasonably hold that Defendants are estopped from claiming this was a limited private offering then they failed to register it as such and comply with the necessary rules for such a small private offering.

### 3. Plaintiffs Adequately Allege Defendants were Brokers as Defined by Applicable State and Federal Regulations. (Mot. at 16-17)

Under California law, "if an individual in the course of his business participates in negotiations that involve the purchase or sale of securities . . . he is effecting or attempting to effect a transaction . . . in such securities and is a 'broker-dealer.'" *Nationwide Inv. Corp. v. California Funeral Serv., Inc.*, 40 Cal. App. 3d 494, 502, 114 Cal. Rptr. 77 (Ct. App. 1974). Similarly, the federal statute



defines broker broadly as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C.S. § 78c.

Plaintiffs further allege that they were solicited by and negotiated with Jeff and Ryan Spiegel prior to investing in SAC. (Cmplt. ¶¶ 6, 51, 52,161, 162). Thus, the complaint adequately alleges that Jeff and Ryan engaged in the business of effecting transactions in securities, and the transaction falls within the scope of California Corporations Code section 25210. *See Yokell v. Draper*, 2018 U.S. Dist. LEXIS 117427, at *27 (N.D. Cal. 2018)(denying motion to dismiss cause of action for unlicensed sale of securities in violation of California Corporations Code sections 25210 and 25501.5).

Obviously, the whole purpose of the selling for 1inMM was to generate a profit on the scam and some Defendants in this action are some of the tiny handful of the net winners in the Horwitz Ponzi Scheme.

### 4. Plaintiffs adequately allege Defendants Violated California Corporations Code § 25401 (Mot. at 17, 18)

This claim is pled based on negligence. The statute provides:

> It is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication **that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made**, in the light of the circumstances under which the statements were made, not misleading.

The Complaint details how Defendants parroted Horwitz's lies even after other similarly situated middlemen had disclosed the fraud to their investors. (Cmplt. ¶¶117-125). Defendants didn't do an iota of due diligence into any one besides Horwitz's own representations about himself. Defendants came nowhere close to the due diligence required of professional brokers engaged in the same work of offering securities. (Cmplt. ¶¶ 79-114). Instead, they were content to profit from of passing along the con man's lies.



**E. The Claim for Violation of California Business & Professions Code §17200 is Pled in the Alternative and Moot since Defendants Admit this was a Securities Transaction. (Mot. 19, 20)**

Defendants are correct on this point. Plaintiff pled this claim in the alternative assuming Defendants would dispute the investment at issue was a security. *See Bowen v. Ziasun Technologies, Inc.*, 116 Cal.App.4th 777, 790 (2004). Defendants appear to be admitting the investment is a security with this argument, so this alternative claim is moot.

**F. Horwitz's Criminal Conduct is an Existing Condition and not an "Intervening Act." (Mot. at 13).**

Defendants miss the mark on this argument. The criminal act by Horwitz is the first act in the causal chain. First, Horwitz lied to Defendants. Second, Defendants failed to investigate whether Horwitz was misrepresenting facts. Third, Defendants parroted Horwitz's lies to Plaintiffs. Fourth, Defendants profited handsomely on selling securities based on these lies. Fifth, Horwitz's obvious lies were discovered. Sixth, investors lost their investment. There is no "intervening act". The criminal conduct occurred, then Defendants through their willful ignorance profited on the crime and kept it going. The negligence alleged is the failure of Defendants to be aware of what had already occurred.

Defendants oddly rely on *Paskenta Band of Nomlaki Indians v. Crosby*, 122 F.Supp.3d 982 (E.D.Cal. 2015) which supports Plaintiffs' argument perfectly. The issue in that case was whether the criminal act broke the causal chain. The law as explained in *Paskenta* is clear, "Criminal conduct which causes injury will ordinarily be deemed the proximate cause of an injury, **superseding any prior negligence** which might otherwise be deemed a contributing cause." *Id.* at 996. In this instance, the crime of creating the imaginary investment preceded Defendants negligence in approving it and selling it for a profit. *See (*RJN Ex. 4-5, Cmplt. 28-36). The Central

District held the criminal conduct was not a superseding cause and the Motion to Dismiss was denied.

Defendants also rely on *Pool v. City of Oakland, 42* Cal.3d 1051 (1986) which also supports Plaintiffs' argument. *Pool* makes very clear that this issue cannot be resolved on a motion to dismiss. *Pool* at 1063 ("Foreseeability, like reasonableness, is a question of fact for the jury"; "the trier of fact determines whether a defendant's conduct satisfies the applicable standard of care"). In this case, the criminal act was already completed, and the entire system of securities regulation is designed to stop the proliferation of just this sort of fraud. Thanks to Defendants ignorance, they were oblivious to the obvious fraud and even profited from their ignorance.

Defendants rely on *Koepke v. Loo*, 18 Cal.App.4th 1444, 1449 (1993). Where, unlike here, the alleged negligence preceded the criminal act. In *Koepke* the alleged negligence was the failure to prevent an unforeseeable act. Conversely, in this case the criminal act was complete, and the negligence was in furtherance of the crime. The situations are completely distinct.

Obviously, there is no case that can be cited where a broker or salesman successfully placed the entire blame for his own failure to investigate on the person he failed to investigate and achieved dismissal.

**IV. CONCLUSION**

Defendants' motion to dismiss should be denied in its entirety.[1]


Dated:  March 3, 2023                              Respectfully submitted,

                                                   **LOFTUS & EISENBERG, LTD.**

                                                   By:    /s/*Alexander N. Loftus*
                                                          Alexander N. Loftus
                                                          Attorneys for Plaintiffs

Alexander N. Loftus, Esq. (to be admitted *pro hac vice*)
Ross M. Good, Esq. (to be admitted *pro hac vice*)
LOFTUS & EISENBERG, LTD.
161 N. Clark, Suite 1600
Chicago, Illinois 60601
T: (312) 899-6625
alex@loftusandeisenberg.com
ross@loftusandeisenberg.com

William Aron, Esq.
ARON LAW FIRM
15 W Carrillo St, Suite 217
Santa Barbara, CA 93101
T: (805) 618-1768
bill@aronlawfirm.com

---

[1] In the event the Court grants Defendants' motion, or any part of it, Plaintiffs respectfully request leave to amend under Rule 15(a)(2) of the Federal Rules of Civil Procedure.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2023 I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 3, 2023.

By:    /s/*Alexander N. Loftus*
         Alexander N. Loftus
         Attorneys for Plaintiffs

Alexander Loftus, Esq.
Ross M. Good, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark, Suite 1600
Chicago, Illinois 60601
T: (312) 772-5396
alex@loftusandeisenberg.com
ross@loftusandeisenberg.com

Response to Motion to Dismiss
Case No. 3:23-cv-00287

20

