PATRICK BALDWIN, ESQ. (SBN 93337)
CHRISTOPHER MADER, ESQ. (SBN 199605)
BALDWIN MADER LAW GROUP
516 North Sepulveda Boulevard
Manhattan Beach, CA 90266
Phone: (310) 363-2031
*Attorneys for Defendants Spiegel Accountancy Corporation, Jeffrey Spiegel, Ryan Spiegel and SAC Advisory Group, LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLUSIONIST CASH BALANCE PLAN AND TRUST, UYEN HUHYN, SOUTHWEST INVESTMENTS FUNDS, LLC, AVR GROUP, LLC, TRIDENT ASSET MANAGEMENT, INC. and PHOENIX AFFORDABLE HOUSING AUTHORITY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> SPIEGEL ACCOUNTANCY CORP., JEFFREY SPIEGEL, RYAN SPIEGEL and SAC ADVISORY GROUP, LLC, <br><br> Defendants. | **CASE NO. 23-cv-00287-VC** <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Date:          June 15, 2023 <br> Time:          1:00 p.m. <br> Courtroom:   4 <br> Judge:         Hon. Vince Chhabria <br><br> Action Filed:   January 19, 2023 <br> Trial Date:     Not Set |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on June 15, 2023 at 1:00 p.m. in Courtroom 4 of the above referenced Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Spiegel Accountancy Corporation, Jeffrey Spiegel, Ryan Spiegel and SAC Advisory Group, LLC (collectively, "Defendants"), will move the Court for an order dismissing the First Amended Complaint ("FAC") of Plaintiffs Ellusionist Cash Balance Plan and Trust, Uyen Huhyn,

1    Southwest Investments Funds, LLC, AVR Group, LLC, Trident Asset Management, Inc. and

2    Phoenix Affordable Housing Authority, LLC (collectively, "Plaintiffs").

3         Under Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6), Defendants move to

4    dismiss the FAC in its entirety because Plaintiffs have not alleged any facts establishing a cause

5    of action for: (1) Violation of §10(b)(5) of the Securities Act of 1934; (2) Violation of §12(a)(2)

6    of the Securities Act of 1933; (3) Violation of §15 of the Securities Act of 1933; (4) Declaratory

7    Judgment Pursuant to §29(b); (5) Violation of California Corporations Code §25401; (6)

8

9    Violation of California Corporations Code §25403; (7) Negligent Misrepresentation; and, (8)

10   Accounting Malpractice.

11                                   **ISSUES TO BE DECIDED**

12
13       1.   Whether Plaintiffs' claim for Violation of §10(b)(5) of the Securities Act of 1934
              must be dismissed under the FRCP and PSLRA because Plaintiffs have failed to
14            allege with the requisite particularity any misstatement or omission for which there
              was a duty to disclose.

15
16       2.   Whether Plaintiffs' claim for Violation of §10(b)(5) of the Securities Act of 1934
              must be dismissed under the FRCP and PSLRA because Plaintiff has failed to
17            allege with the requisite particularity that any alleged misstatement – even if
              alleged – was material.

18
19       3.   Whether Plaintiffs' claim for Violation of §10(b)(5) of the Securities Act of 1934
              must be dismissed under the FRCP and PSLRA because Plaintiff has failed to
20            allege with the requisite particularity a strong inference of scienter that any alleged
              misstatement – even if alleged – was made with knowledge that the statement was
21            false when made.

22       4.   Whether Plaintiffs' claim for Violation of §10(b)(5) of the Securities Act of 1934
              must be dismissed under the FRCP and PSLRA because Plaintiff has failed to
23            allege with the requisite particularity that any alleged misstatement – even if
              alleged – caused the Plaintiffs' alleged damages.
24

25       5.   Whether Plaintiffs' claims for Violation of §12(a)(2) of the Securities Act of 1933
              and Violation of §15 of the Securities Act of 1933 must be dismissed under FRCP
26            12(b)(6) pursuant to U.S. Supreme Court precedent, *Gustafson v. Alloyd Co*., 115
              S. Ct. 1061 (1995), holding that such claims are inapplicable to private placements.
27

28       6.   Whether Plaintiffs' claim for Declaratory Judgment under §29(b) must be
              dismissed under FRCP 12(b)(6) because Plaintiffs fail to make a *prima facia*
              showing that Plaintiffs have a right to rescission.

7.      Whether the entire FAC must be dismissed under FRCP 12(b)(1) because without federal securities law claims, the Court lacks subject matter jurisdiction over the remaining state law claims.

8.      Whether Plaintiffs' claims for Violation of California Corporations Code §§25401 and 25403 and Negligent Misrepresentation must be dismissed because Plaintiffs have failed to allege with the requisite particularity any misstatement or omission for which there was a duty to disclose.

9.      Whether Plaintiffs' claim for must be dismissed because Plaintiffs have failed to allege with the requisite particularity any material misstatement or omission for which there was a duty to disclose.

10.     Whether Plaintiffs' claim for Accounting Malpractice must be dismissed under FRCP 12(b)(6) because Plaintiffs fail to make a *prima facia* showing that Defendant Spiegel Accountancy Corporation had any connection to the subject investments.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Jeffrey Spiegel, and Request for Judicial Notice filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Dated: May 8, 2023                        BALDWIN MADER LAW GROUP

By: _____
    Patrick Baldwin, Esq.
    Christopher Mader, Esq.
    *Attorneys for Defendants*

## **TABLE OF CONTENTS**

I.   INTRODUCTION                                                                                    1

    A.   Plaintiffs' Newly Added Cause of Action No. 1 – Violation of Section 10(b)5 of
        The 1934 Act – Must be Dismissed Because Fraud is Not Plead with Particularity  1

    B.   Plaintiffs' Cause of Action No. 2 – Violation of Section 12(a)(2) of The 1933 – Must
        Be Dismissed Because Section 12(a)(2) Does Not Apply to Private Placements        4

    C.   Plaintiffs' Cause of Action No. 3 – Violation of Section 15 of The 1933 – Must
        Be Dismissed Because it is Derivative of the Section 12 Claim                     5

    D.   Plaintiffs' Cause of Action No. 4 – Declaratory Judgment Under Section 29(b) –
        Fails as a Matter of Law                                                          5

    E.   Plaintiffs' State Law Fraud Claims – Cause of Action No. 5 and 7 – Must
        be Dismissed Because Fraud is Not Plead with Particularity                        7

    F.   Plaintiffs' Cause of Action No. 6 for "Violation of California Corporations
        Code §25403" is Derivative of the Section 25401 Claim and Must Be Dismissed        7

    G.   Plaintiffs' Cause of Action No. 8 for "Accounting Malpractice" Must
        Be Dismissed Because it is Inadequately Plead                                     8

II.  LEGAL STANDARD                                                                                  8

    A.   Motion to Dismiss Under FRCP 12(b)(6)                                             8

    B.   Pleading Standards for Fraud Under FRCP Rule 9(b)                                 9

III. RELEVANT FACTS                                                                                  9

    A.   Plaintiffs are Institutional Accredited Investors Who Assumed their
        Own Due Diligence Obligations                                                     9

    B.   Plaintiffs and SAC Jointly Invested in 1inMM                                      10

IV.  ARGUMENT                                                                                        11

    A.   Plaintiffs' Claims for Violation of Section 12(a)(2) and Section 15 of The 1933 Act
        Must be Dismissed for the Same Reasons They Were Previously Dismissed              11

    B.   Plaintiffs' Cause of Action No. 4 – Declaratory Judgment Under Section 29(b) – Must
        be Dismissed for Essentially the Same Reason it Was Previously Dismissed           13

    C.   Plaintiffs' Newly Alleged 10(b)5 Claim Must be Dismissed                          14

D.   The Court Lacks Subject Matter Jurisdiction                                                    18

E.   Plaintiffs' State Law Fraud Claims Must be Dismissed                                           18

F.   Plaintiffs' Derivative Section 25403 Claim Must be Dismissed                                   20

G.   Plaintiffs' Accounting Malpractice Claim Must Be Dismissed                                     20

H.   Plaintiffs' State Law Claims Fail as a Matter of Law – Plaintiffs Have Not                     22
     Adequately Alleged Causation

V.   CONCLUSION                                                                                     23

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                    <u>**Page**</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)       1, 8

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*,
    579 F.3d 143 (2nd Cir. 2009)       15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2006)       1, 8

*Berckeley Investment Group, Ltd. v. Colkitt*,
    455 F.3d 195 (3rd Cir. 2009)       6, 13-14

*BLM v. Sabo & Deitsch*,
    55 Cal.App.4th 832 (1997)       7

*Comwest, Inc. v. Am. Op. Servs., Inc.*,
    765 F.Supp. 1467 (C.D. Cal. 1991)       2

*Continental Airlines v. McDonnel Douglas*,
    216 Cal.App.3d 388 (1989)       21

*Drulias v. Guthrie*,
    2019 WL 13240415 (C.D. Cal. 2019)       6, 13

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)       4, 18

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995)       9

*GFL Advantage Fund, Ltd. v. Colkitt*,
    272 F.3d 189 (3rd Cir. 2001)       6, 13-14

*Grove v. First National Bank of Herminie*,
    489 F.2d 512 (3rd Cir. 1974)       13

*Gustafson v. Alloyd Co.*,
    115 S.Ct. 1061, 115 S.Ct. 1061, 131 L.Ed.2d 1  (1995)       4-5, 11-12

*In re GlenFed Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994)       2, 9, 16

*In re Valence Technology Securities Litigation*,
    1995 WL 274343 (N.D. Cal. 1995)       12

# TABLE OF AUTHORITIES (Continued)

**Cases**                                                                 **Page**

*Inter-County Resources, Inc. v. Med'l. Res., Inc.*,
    49 F.Supp.2d 682 (S.D.N.Y. 1999)                               15

*Kaplan v. Rose*,
    49 F.3d 1363 (9th Cir. 1994)                                    9

*Koepke v. Loo*,
    18 Cal.App.4th 1444 (1993)                                     22

*Majd v. Bank of Am., N.A.*,
    243 Cal.App.4th 1293 (2015)                                     7

*Morgan v. AT & T Wireless Services, Inc.*,
    177 Cal.App.4th 1235 (2009)                                  7, 19

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014)                                   14

*Paskenta Band v. Crosby*,
    122 F.Supp.3d 982 (E.D. Cal. 2015)                             22

*Ross v. AH Robins Co.*,
    607 F.2d 545 (2nd Cir. 1979)                                   15

*Small v. Fritz Companies, Inc.*,
    30 Cal.4th 167 (2003)                                        7, 19

*Tellabs, Inc. v. Makor Is. & R., Ltd.*,
    551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)           15

*TSC Ind., Inc. v. Northway, Inc.*,
    426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)           4, 17

*Turpin v. Sortini*,
    31 Cal.3d 220 (1982)                                           20

*West v. JPMorgan Chase Bank, N.A.*,
    214 Cal.App.4th 780 (2013)                                      7

*Werner v. Knoll*,
    89 Cal.App.2d 474 (1948)                                       21

# TABLE OF AUTHORITIES (Continued)

| **Statutes** | **Page** |
| --- | --- |
| 15 U.S.C. §77b(10) | 11 |
| 15 U.S.C. §77r(b) | 12 |
| 15 U.S.C. §78, *et seq.* | 14-15 |
| 15 U.S.C. §1331 | 18 |
| 17 C.F.R. §240.10b-5 | 3 |
| California Civil Code §1668 | 21 |
| California Corporations Code §25401 | 7, 18-19 |
| California Corporations Code §25403 | 7-8, 20 |
| FRCP 9(b) | *passim* |
| FRCP 12(b) | *passim* |
| Private Securities Litigation Reform Act of 1995 ("PSLRA") | *passim* |
| The Securities Act of 1933 | *passim* |
| The Securities Exchange Act of 1934 | *passim* |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendants must unfortunately bring another Motion to Dismiss, as the Plaintiffs have failed to cure the same deficiencies that plagued their original Complaint.  The FAC embodies the exact style of allegations that the U.S. Supreme Court prohibited in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), as it is rife with "legal conclusion[s] couched as . . . factual allegation[s]" and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements."  *Iqbal* at 678, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2006).

Plaintiffs fail to identify any specific alleged misrepresentation or omission connected to a duty to disclose such information, the materiality of any such misrepresentation or omission, or a nexus between any such misrepresentation or omission and their alleged damages.  Instead, Plaintiffs offer prohibited formulaic recitals of the elements of their causes of action filled with conclusory statements.  Without the necessary alleged facts, the FAC fails to meet the standards imposed by the FRCP, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), U.S. Supreme Court and Ninth Circuit precedent.

### A.   Plaintiffs' Newly Added Cause of Action No. 1 – Violation of Section 10(b)5 of The 1934 Act – Must be Dismissed Because Fraud is Not Plead with Particularity

The "facts" alleged in support of the Plaintiffs' newly added Cause of Action No. 1 for "Violation of §10(b)(5) of the Securities Act of 1934" constitute implausible legal conclusions that cannot be accorded any credibility to sustain the FAC.  Under the PSLRA, Plaintiffs are required, but fail, to specify each statement they allege to be misleading, and the reason why the statement is misleading.  Rather, most of the Plaintiffs' alleged misrepresentations are simply conclusory statements, expressly prohibited under *Iqbal* and *Twombly*.  As just a few examples, Plaintiffs allege the following:

". . . **Horwitz passed along lies to Defendants** that they in turn used to pacify their investors and keep the fraud going to delay the inevitable reckoning."  FAC ¶42.  *Emphasis added.*

"**Plaintiffs were led to believe** that their investment with SAC was based on competent due diligence completed by financial professionals confirming that streaming services such as HBO and Netflix had business relationships with 1inMM. None of this was true."  FAC ¶137.  *Emphasis added.*

"**Defendants were deliberately reckless** in that their conduct represented an extreme departure from the standards of ordinary care . . .."  FAC ¶135.  *Emphasis added.*

"**At the time of the misrepresentations and omissions alleged herein, Plaintiffs believed all statements and assurances made by Defendants were true and was unaware of any of the omitted facts**, such as the fact that 1inMM did not have an agreement with HBO as alleged  herein.  Had Plaintiffs known the true facts, Plaintiffs would never have invested with Defendant SAC."  FAC ¶141.  *Emphasis added.*

"**As a direct and proximate result of the wrongful conduct** of The Spiegels and SAC, Plaintiffs suffered damages and are consequently entitled to all relief available under the Securities Exchange Act, including compensatory damages against each of the Defendants Jeffrey Spiegel, Ryan Spiegel, and SAC jointly and severally, for all damages suffered as a result of the Defendants.'"  FAC ¶142.  *Emphasis added.*

Plaintiffs' allegations are simply legal conclusions couched as factual allegations, and nothing more than "[t]hreadbare recitals of the elements . . . supported by merely conclusory statements." *Iqbal* at 678.  Plaintiffs' allegations fail to satisfy the particularity requirement that fraud allegations state: "[t]he time, place, and content of an alleged misrepresentation," and "set forth an explanation as to why the statement or omission complained of was false or misleading."  *In re GlenFed Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994).  Plaintiffs' allegations leave the Defendants to wonder:  Exactly who allegedly said what, to whom, and when?

In addition, Plaintiffs rely upon proscribed "group" allegations, inappropriately lumping the Defendants and Plaintiffs together.  *Comwest, Inc. v. Am. Op. Servs., Inc.*, 765 F.Supp. 1467, 1471 (C.D. Cal. 1991).  Plaintiffs fail to identify, as required, *which* of the Defendants allegedly made the supposed offending statements to *which* particular Plaintiff.  As just a few examples, Plaintiffs allege the following:

1

2
"**Jeff, Ryan, and SAC communicated by phone to Plaintiffs** at the time of their investment commitment that they did their own due diligence on Horwitz's representations" FAC ¶64 a. *Emphasis added.*

3

4
"**Jeff, Ryan, and SAC communicated by phone to Plaintiffs** at the time of their investment commitment that they engaged professionals to do due diligence on Horwitz's representations." FAC ¶64 b. *Emphasis added.*

5

6

7
"**Jeff, Ryan, and SAC told Plaintiffs** via email at the time of the investment and in the Profit Sharing Agreements that 1inMM was receiving its funds from HBO and had active contracts with HBO." FAC ¶64 d. *Emphasis added.*

8

9
"**Jeff, Ryan, and SAC told Plaintiffs via email** at the time of the investment and in the Profit Sharing Agreements that 1inMM was in the business of acquiring and licensing film distribution rights." FAC ¶64 e. *Emphasis added.*

10

11
"**Jeff, Ryan, and SAC told Plaintiffs via email** prior to their investment that Craig Cole ('Cole') was the co-founder and part owner of 1inMM." FAC ¶64 f. *Emphasis added.*

12

13
The Defendants have no idea *which* Defendant allegedly made each misrepresentation, and to

*which* Plaintiff.  Moreover, many alleged misrepresentations are incomplete, vague and ambiguous.

14

15
For example, Plaintiffs allege that "Jeff, Ryan, and SAC told **investors at conferences and**

**symposiums** and Plaintiffs by phone and email that 1inMM had a letter of intent . . ." and "Jeff,

16

17
Ryan, and SAC **told investors at conferences and symposiums** and Plaintiffs by phone and email

18
that they were co-signors on Horwitz's bank account . . .."  FAC ¶64 c. and i.  *Emphasis added*.

19
Such allegations are not asserted with the required particularity under the FRCP and PSLRA, and

20
cannot support a 10(b)5 claim because it is entirely unclear *which* Plaintiff, *if any*, was actually

21
present at the unidentified "conferences and symposiums."  Again, Plaintiffs' allegations leave the

22
Defendants to wonder:  Exactly who allegedly said what, to whom, and when?

23

24
Additionally, about half of the supposed misrepresentations cannot support a 10(b)5 cause of

action because they were not made "in connection with the purchase or sale of any security." 17

25

26
C.F.R. 240.10b-5.  Each Plaintiff alleges that their final investment was in January 2020.  FAC

27
¶¶121-127.  But the alleged misrepresentations recited at FAC ¶64 j. – o. occurred after January

28
2020, long *after* the Plaintiffs entered the Profit Sharing Agreements.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Other alleged misrepresentations are couched in language of negligence, which cannot support a 10(b)5 violation.  For example, Plaintiffs allege: "Jeff, Ryan, and SAC communicated by phone to Plaintiffs at the time of their investment commitment that they did their own due diligence on Horwitz's representations" and "Jeff, Ryan, and SAC communicated by phone to Plaintiffs at the time of their investment commitment that they engaged professionals to do due diligence on Horwitz's representations."  FAC ¶64 a. and b.  However, Plaintiffs admit that Defendants did in fact conduct due diligence, and did in fact engage counsel to investigate 1inMM:

> "Defendants . . . limited their due diligence to asking Horwitz and Cole questions and reviewing documents provided by Horwitz and Cole."  FAC ¶67 a.

> "SAC engaged an attorney named Brian Fraser ("Fraser") to draft documents and review contracts between SAC and 1inMM . . . and order[] a background check."  FAC ¶67 b.

Plaintiffs' allegations that Defendants falsely represented that they conducted due diligence, and falsely represented that they engaged professionals to do due diligence, are belied by their own admissions.  But moreover, Plaintiffs' inference that *negligently* performed due diligence can support a 10(b)5 claim is simply wrong.

Plaintiffs also fail to make the allegations showing that any alleged representations were "material," required per the U.S. Supreme Court decision *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).  Finally, fail to make the allegations showing "loss causation," required per the U.S. Supreme Court decision *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005).

**B.      Plaintiffs' Cause of Action No. 2 – Violation of Section 12(a)(2) of The 1933 – Must Be Dismissed Because Section 12(a)(2) Does <u>Not</u> Apply to Private Placements**

Plaintiffs' second attempt to allege Cause of Action No. 2, "Violation of Section 12(a)(2) of the Securities Act of 1933," is equally deficient as their first attempt.  In *Gustafson v. Alloyd Co.*, 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995), the U.S. Supreme Court held that Section 12(2) does not apply to private placements.  Plaintiffs already admitted that the subject Profit Sharing

Agreements are private placements (Complaint ¶¶27, 81, 84), and make no attempt whatsoever in the FAC to allege a public offering.  It is axiomatic that a limited offering to six Accredited Investors, five of whom are institutional investors, is by its own terms a private, rather than public offering.  The subject Profit Sharing Agreements are a textbook private placement.  Because Plaintiffs fail to make a *prima facie* showing that the Defendants violated Section 12(a)(2) of the Securities Act of 1933, this Cause of Action must be dismissed under FRCP 12(b)(6).

**C.      Plaintiffs' Cause of Action No. 3 – Violation of Section 15 of The 1933 – Must Be Dismissed Because it is Derivative of the Section 12 Claim**

Plaintiffs' Cause of Action No. 3 alleges "Violation of Section 15 of the Securities Act of 1933" – "control person" liability against Defendants Jeffrey Spiegel, Ryan Spiegel and Spiegel Accountancy for Defendant SAC Advisory Group, LLC's alleged violation of Section 12(a)(2) of the 1933 Act.  As was explained in Defendants' Motion to Dismiss the Plaintiffs' original Complaint, Section 15 control person liability is derivative of any liability for the alleged primary violation under Section 12(a)(2).  Because Plaintiffs' Section 12(a)(2) claim must be dismissed, the derivative Section 15 control person liability claim must also be dismissed under FRCP 12(b)(6).

**D.      Plaintiffs' Cause of Action No. 4 – Declaratory Judgment Under Section 29(b) – Fails as a Matter of Law**

Plaintiffs' Cause of Action for "Declaratory Judgment Pursuant to Section 29(b)" fails as a matter of law, and therefore must be dismissed pursuant to FRCP Rule 12(b)(6).  Plaintiffs allege that under Section 29(b) of the Securities Exchange Act of 1934, they are entitled to rescind the Profit Sharing Agreements because the agreements include terms that allegedly "seek to waive compliance with the antifraud and civil liability provisions of the Securities Exchange Acts of 1933 and 1934."  FAC ¶165.  Specifically, the Profit Sharing Agreements include terms, typical in all private placements, that SAC made no representations to the Plaintiffs outside of those in the agreements themselves, and Plaintiffs waive all claims.

Plaintiffs incorrectly allege that Section 29(b) permits full rescission of the agreement based upon the mere presence of those terms.  Section 29(b) of the 1934 Act makes voidable every contract "made in violation of" federal securities law, "the performance of which involves [such a] violation." However, federal courts take very narrow views of the phrases "made in violation of" and "the performance of which involves the violation of" in Section 29(b).  *Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195, 206 (3rd Cir. 2009), cited with approval by the Central District of California in *Drulias v. Guthrie*, 2019 WL 13240415 (C.D. Cal. 2019).  Plaintiffs fail to demonstrate, as required, "a direct relationship between the violation at issue and the performance of the contract; i.e., the violation must be 'inseparable from the performance of the contract' rather than 'collateral or tangential to the contract.'"  *Berckeley* at 205.  In other words, a contract can be voided under Section 29(b) only where the "agreement cannot be performed without violating the securities laws." *Id.* at 206.  The nexus between the alleged securities law violation and the contract must be closer than a simple allegation that a securities violation was committed in the course of a contract.  *Drulias* at *7.

The terms of the Profit Sharing Agreements cited by the Plaintiffs do *not* directly violate federal securities law.  But even if those cited terms did violate federal securities law, they are not "inseparable" from the parties' agreement.  "The test . . . is whether the alleged securities violations are 'inseparable' from the underlying agreement between the parties."  *Berckeley* at 205, citing *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 201 (3rd Cir. 2001).  Only if an agreement cannot be performed without violating the securities laws, that agreement is subject to rescission under Section 29(b). *Id.*  The breadth of liability alleged by Plaintiff's interpretation of Section 29(b), that any violation of securities law permits full rescission of the contract, is not supported by case law.

/ / /

/ / /

**E.     Plaintiffs' State Law Fraud Claims – Cause of Action No. 5 and 7 – Must be Dismissed Because Fraud is Not Plead with Particularity**

Plaintiffs' Cause of Action No. 5 alleges "Violation of California Corporations Code §25401." Plaintiffs fail to make a *prima facia* showing that Defendants violated Section 25401, which makes it unlawful to sell a security by means of "an untrue statement of a material fact." Claims sounding fraud must be plead with particularity and specificity rather than general or conclusory allegations. *Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 184 (2003). This particularity requirement necessitates pleading facts which show how, when, where, to whom, and by what means the representations were made. *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal.App.4th 1235, 1261-1262 (2009). Plaintiffs are required, but fail to specify with particularity each statement they allege to be false and the reason why each such statement was false. Plaintiffs fail to plead specific factual allegations showing "how, when, where, to whom, and by what means" the alleged fraudulent representations or misrepresentations were made to them, as required for fraud cases.

Plaintiffs' Cause of Action No. 7 for "Negligent Misrepresentation" must be dismissed for this same reason. To adequately plead Negligent Misrepresentation under California law, the plaintiff must allege facts showing a misrepresentation of material fact, and that the defendant intended to induce reliance on the fact misrepresented. *BLM v. Sabo & Deitsch*, 55 Cal.App.4th 832 (1997). See also, *Majd v. Bank of Am., N.A.*, 243 Cal.App.4th 1293, 1307 (2015), *as modified* (Jan. 14, 2016) (negligent misrepresentation claim requires a showing that "the defendant intended to deceive the plaintiff"); and, *West v. JPMorgan Chase Bank, N.A.*, 214 Cal.App.4th 780, 792 (2013). Plaintiffs fail to do so here.

**F.     Plaintiffs' Cause of Action No. 6 for "Violation of California Corporations Code Section 25403" is Derivative of the Section 25401 Claim and Must Be Dismissed**

Plaintiffs Cause of Action No. 6 for "Violation of California Corporations Code §25403" alleges "control person" liability against Defendant Spiegel Accountancy Corporation for SAC's

alleged violation of Section 25401.  Because Plaintiffs' Section 25401 claim must be dismissed, their Section 25403 control person liability claim must also be dismissed under FRCP 12(b)(6).

**G.     Plaintiffs' Cause of Action No. 8 for "Accounting Malpractice" Must Be Dismissed Because it is Inadequately Plead**

Cause of Action No. 8 for "Accounting Malpractice" is inadequately plead, as Plaintiffs fail to make a *prima facia* showing that Spiegel Accountancy Corporation had any connection whatsoever to the Profit Sharing Agreements.  That the accounting firm provided basic tax services to both the Plaintiffs and SAC does not create a conflict of interest.

## II.     LEGAL STANDARD

**A.     Motion to Dismiss Under FRCP 12(b)(6)**

Under the Federal Rules of Civil Procedure a party may assert a defense by motion for failure to state a claim upon which relief can be granted.  FRCP 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, *supra* at 678, quoting *Twombly*, *supra* at 570.

A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  A plaintiff must establish "more than sheer possibility that a defendant has acted unlawfully." *Id*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possible and plausibility of 'entitlement to relief.'" *Id*.   An entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do. *Twombly* at 555.  "[L]egal conclusion[s] couched as…factual allegations[s]" and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements" need not be presumed true for the purposes of a motion to dismiss. *Iqbal* at 678.

**B.      Pleading Standards for Fraud Claims Under FRCP Rule 9(b)**

FRCP Rule 9(b) requires that "the circumstances constituting fraud" be "stated with particularity."  "In a securities fraud action, a pleading is sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer."  *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995), quoting *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994).  To satisfy the particularity requirement, the fraud allegations *must* state "[t]he time, place, and content of an alleged misrepresentation," and "set forth an explanation as to why the statement or omission complained of was false or misleading."  *In re GlenFed Inc. Sec. Litig.*, *supra* at 1547-48.

## III.   RELEVANT FACTS

SAC is a California limited liability company formed in July 2014.  Jeffrey Spiegel and Ryan Spiegel, who are father and son, co-founded SAC and are the company's Managers.  Jeffrey Spiegel also founded Spiegel Accountancy Corporation, an accounting firm, more than thirty years ago.  Other than providing basic tax accounting services to SAC, Spiegel Accountancy Corporation has no connection to SAC.  Declaration of Jeffrey Spiegel ("Spiegel Decl.").

**A.      Plaintiffs are Institutional Accredited Investors Who Assumed their Own Due Diligence Obligations**

Each Plaintiff entered a Profit Sharing Agreement with SAC, whereby each Plaintiff partnered with SAC and jointly invested in third-party, 1inMM Capital, LLC ("1inMM").  FAC **Exhibit A**.  Every Plaintiff represented and warranted in their respective Profit Sharing Agreement that they are an Accredited Investor:

> "**4.2 Accredited Investor; Economic Risk.  He or she represents that he or she is an Accredited Investor (as defined in Rule 501(a) of Regulation D of the Securities Act of 1933) and/or is financially able to bear the economic risk of paying the Investment Amount, including the total loss thereof**."  FAC **Exhibit A**; and, Spiegel Decl.

/ / /

The term "Accredited Investor" refers to high net worth and financially sophisticated investors who have little need for the protection provided by regulatory disclosure filings. The Securities and Exchange Commission ("Commission") defines the term in Rule 501 of Regulation D of The Securities Act of 1933 (the "1933 Act"), as follows:

(1)     an individual with gross income exceeding $200,000, or joint income with a spouse or partner exceeding $300,000, in each of the two most recent years;

(2)     a person with individual net worth, or joint net worth with their spouse or partner exceeding $1,000,000, excluding primary residence; or

(3)      a business entity with assets exceeding $5 million, or whose equity owners are Accredited Investors.

Every Plaintiff also represented and warranted in their respective Profit Sharing Agreement that, as institutional investors, they were "capable of evaluating the risks and merits" of the venture:

"**4.1 . . . He or she acknowledges that . . . he or she is capable of evaluating the risks and merits of paying the Investment Amount and of protecting his or her own interests in connection with such investment**." FAC **Exhibit A**; and, Spiegel Decl.

In other words, Plaintiffs agreed to conduct their own due diligence.

**B.      Plaintiffs and SAC Jointly Invested in 1inMM**

1inMM raised over $690 Million from investors throughout the United States.  FAC ¶19; and, Request for Judicial Notice ("RJN") **Exhibit 1**.  In April 2021, the Securities and Exchange Commission ("Commission") filed a securities fraud complaint against 1inMM and its founder, Zachary Horwitz.  FAC ¶87; and, RJN **Exhibit 1**.

According to the Commission, Mr. Horwitz represented to investors that 1inMM was engaged in the business of acquiring and licensing the distribution rights for films, primarily from Latin America, to major media companies including Netflix and Home Box Office. Mr. Horwitz distributed to investors sophisticated documents substantiating his purported deals with Netflix and HBO, including film distribution agreements.

/ / /

In reality, Mr. Horwitz and 1inMM had no relationship with either Netflix or HBO, and never licensed any movie rights to either company.  Mr. Horwitz misappropriated investor funds to pay putative returns on earlier investments, a class Ponzi scheme.  Mr. Horwitz defrauded several prominent investment funds, including but not limited to JJMT Capital, LLC ($490 Million), Movie Fund, LLC ($80 Million), Vausse Films ($21 Million) and Pure Health Enterprises, Inc. ($20.4 Million).  RJN **Exhibit 1**.

In April 2021, the U.S. Attorney's Office filed a criminal complaint against Mr. Horwitz, who plead guilty to the charges and was sentenced in February 20222 to serve 240 month prison sentence and pay $230 Million in restitution to the victims of his scheme. RJN **Exhibit 2** and **Exhibit 3**. Plaintiffs allege that they lost at least $6,000,000 in connection with Mr. Horwitz's fraudulent scheme.  FAC Prayer for Relief.

## IV.   ARGUMENT

### A.    Plaintiffs' Claims for Violation of Section 12(a)(2) and Section 15 of The 1933 Act Must be Dismissed for the Same Reasons They Were Previously Dismissed

Plaintiffs' Cause of Action No. 2, "Violation of Section 12(a)(2) of the Securities Act of 1933" fails as a matter of law.  The goal of The 1933 Act, which concerns "Issuers" of securities, is to force "Issuers" to disclose material information through a prospectus and other filings, so that investors can make informed investment decisions.  Section 12(a)(2) of The 1933 Act creates liability for any person who offers or sells a security through a prospectus containing a material misstatement or omission.   Until 1995, Section 12(a)(2) had been given broad scope.   Because the term "prospectus" had been defined to include "any . . . communication . . . which offers any security for sale," pursuant to 15 U.S.C. §77b(10), Section 12(a)(2) had been applied to private transactions.  But in 1995, the U.S. Supreme Court limited the scope of Section 12 to public offerings of securities by an Issuer in *Gustafson*, *supra*.

/ / /

*Gustafson* holds that Section 12(a)(2) does not apply to private transactions because communications in such transactions will not ordinarily constitute "prospectuses" under the Supreme Court's definition of that term.  That Section 12(a)(2) does not apply to private placements has been confirmed by several courts, including the Northern District of California.  *In re Valence Technology Securities Litigation*, 1995 WL 274343 (N.D. Cal. 1995), f/n 15 ("The Court in *Gustafson* held that §12(2) does not apply to private placement transactions.")

Plaintiffs' Section 12 claim must be dismissed under FRCP 12(b)(6) because, as the Plaintiffs admitted in their original Complaint, the Profit Sharing Agreements are in fact private placements.  Complaint ¶¶27, 79.  Plaintiffs specifically alleged: ". . . [T]he unregistered securities at issue in this case are not 'covered securities' within the meaning of National Securities Market Improvement Act of 1996 (NMSIA), 15 U.S.C. § 77r(b), . . . The securities were not issued by a nationally registered investment company nor was it designated for trading in a national securities exchange."  Complaint ¶27.  And in their FAC, Plaintiffs make no attempt whatsoever to allege a public offering.

Notably, Plaintiffs' allegation regarding "access" to the type of information normally provided in a prospectus in a registration statement filed on SEC Form S-1 appears to suggest a disclosure deficiency.  FAC ¶150.  However, there is no disclosure requirement in a private placement limited to Accredited Investors, and particularly the case here where five of the six Accredited Investors are institutional investors.

Plaintiffs' Cause of Action No. 3 for "Violation of Section 15 of the Securities Act of 1933, "control person" liability against Jeffrey Spiegel, Ryan Spiegel and Spiegel Accountancy Corporation for SAC's alleged violation of Section 12, is derivative of the alleged Section violation.  Because Plaintiffs' Section 12(a)(2) claim must be dismissed, their Section 15 control person liability claim must also be dismissed under FRCP 12(b)(6).

/ / /

**B.      Plaintiffs' Cause of Action No. 4 – Declaratory Judgment Under Section 29(b) – Must be Dismissed for Essentially the Same Reason it Was Previously Dismissed**

Plaintiffs allege that terms in the Profit Sharing Agreements typical for a private placement – a disclaimer of representations outside of those in the agreement and a waiver of claims – "seek to waive compliance with the antifraud and civil liability provisions of the Securities Exchange Acts of 1933 and 1934." FAC ¶165. Plaintiffs allege the mere presences of those terms permits rescission of the Profit Sharing Agreements under Section 29(b) of the Securities Exchange Act of 1934.

Plaintiffs' claim for rescission based upon Section 29(b) fails as a matter of law. Plaintiff's claim that the mere presence of the foregoing terms permits rescission of the Profit Sharing Agreement under Section 29(b) has been rejected by the federal courts. While it is technically correct that Section 29(b) renders voidable every contract "made in violation of" federal securities law, "the performance of which involves [such a] violation," federal courts narrowly view the phrases "made in violation of" and "the performance of which involves the violation of." *Berckeley*, *supra* at 206, cited with approval by Central District of California in *Drulias*. Plaintiffs must demonstrate "a direct relationship between the violation at issue and the performance of the contract." *Id.* at 205. A contract can be voided under Section 29(b) only where the "agreement cannot be performed without violating the securities laws." *Id.* at 206. There must be a nexus between the alleged securities violation and the contract, which nexus must be closer than a simple allegation that a securities violation was committed in the course of a contract. *Drulias*, *supra* at *7. For example, in *Grove v. First National Bank of Herminie*, 489 F.2d 512 (3rd Cir. 1974), a debtor obtained a series of loans from a bank to purchase registered securities. Regulation U, promulgated under The 1934 Act, provided that such loans were limited to set percentages of the value of the stock to be purchased. The bank, however, failed to inform the debtor of the Regulation U margin requirements and loaned him the money. The court held that Section 29(b) precluded the bank from recovering a loan deficiency because the loans were made in direct violation of Regulation U.

Here, the two terms cited by the Plaintiffs do not directly violate federal securities law. But even if those terms did violate federal securities law, they are not "inseparable" from the agreement between the parties. *Berckeley* at 205, citing *GFL Advantage*, *supra* at 201. As explained in *Berckeley*, an agreement is subject to rescission under Section 29(b) *only if* it cannot be performed without violating the securities laws. That clearly is not the situation here, where the two terms are incidental to the performance of the parties' agreement.

The breadth of liability alleged by Plaintiffs – that any violation of securities law permits rescission of the agreement – is contrary to law. And even if the Plaintiffs were able to state a claim for recission under Section 29(b), a claim would only exist as to the counter-party to the Profit Sharing Agreements, SAC, and *not* Jeffrey Spiegel, Ryan Spiegel or Spiegel Accountancy Corporation, who were not parties to the agreements.

### C.     Plaintiffs' Newly Alleged 10(b)5 Claim Must be Dismissed

Rule 10b-5 of the Securities Exchange Act of 1934 makes it unlawful:

"(a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or decide upon any person, in connection with the purchase or sale of any security." 17 C.F.R. 240.10b-5.

Per the PSLRA:

"in any private action in which the plaintiff alleges that defendant (a) made an untrue statement or material fact; or (b) omitted to state a material fact necessary in order to make the statements made…not misleading" the "complaint shall specify (1) each statement alleged to have been misleading, (2) the reason or reasons why the statement is misleading, and (3) if the allegation regarding the statement or omission is made on information and belief, state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(A) and (B).

The elements of falsity, scienter, and loss causation all must be pleaded with particularity. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

/ / /

Section 78u-4 of Title 15, entitled "Private securities litigation," consists of three subsections: subsection (a) entitled "Private class actions"; subsection (b) entitled "Requirements for securities fraud actions"; and subsection (c) entitled "Sanctions for abusive litigation."  Subsections (b) and (c) apply to by their terms to "any private action arising under this title [15 U.S.C. §§ 78a et seq.]," and not just to "any private class action arising under this title."  This understanding of the PSLRA is shared by appellate and district courts nationwide.  See e.g., *Inter-County Resources, Inc. v. Medical Resources, Inc.*, 49 F.Supp.2d 682, 684 (S.D.N.Y. 1999) ("[T]here is no question that [the PSLRA] extends to all 10b-5 claims, and not merely to class actions."); and, *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152-154 (2nd Cir. 2009) (applying PSLRA to non-class action). Therefore, the pleading requirements of the PSLRA apply to non-class actions.

Even prior to enactment of the PSLRA, securities fraud claims were subject to heightened pleading requirements under FRCP 9(b), which requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake.  However, the PSLRA imposes additional pleading requirements, beyond those imposed by FRCP 9(b), and adopts a version of the Second Circuit's strong inference of scienter requirement for fraud claims brought under The 1934 Act. 15 U.S.C. § 78u-4(b).[1]  Thus, in any action requiring proof that the defendant acted with a particular state of mind, the complaint must allege, with particularity, facts that give rise to a strong inference that defendant acted with the required state of mind.  15 U.S.C. § 78u-4(b)(2); and, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

/ / /

/ / /

---

[1]     FRCP 9(b) provides that a party's state of mind may be alleged generally.  However, the Second Circuit imposed a requirement that facts giving rise to a "strong inference" of scienter must be alleged, to avoid the facility with which claims of fraud by hindsight could be made. *Ross v. AH Robins Co.*, 607 F.2d 545, 556 (2nd Cir. 1979).

Here, Plaintiffs fail to plead with particularity the allegedly false and/or misleading statements. Rather, the majority of the Plaintiffs' alleged misrepresentations are simply conclusory statements. For example, Plaintiffs allege as follows (in addition to the allegations described in Page 2 herein):

> "Defendants individually and in concert used directly and indirectly the means and instrumentalities of interstate commerce, the mails and/or interstate wires in connection with their scheme to defraud and manipulate as set forth above." FAC ¶134.

> "Defendants each employed devices, schemes, and artifices to defraud, made untrue statements of material fact, and omitted material facts necessary to make their statements not misleading, and engaged in acts, practices and a course of business that operated as a fraud and deceit upon the Plaintiffs." FAC ¶136.

> "The Spiegels and SAC acted with intent to deceive, manipulate and defraud the Plaintiffs. The Spiegels and SAC acted with actual knowledge, or at a minimum severe recklessness, that the omissions and statements referenced herein were false and misleading, and that the failure to disclose material facts and make accurate representations as to their actual and intended plans and trading induced Plaintiff to do business with SAC and participate in its funding of 1inMM." FAC ¶139.

Not only are the foregoing allegations (as well as the allegations described in Page 2 herein) mere "threadbare recitals of the elements" "supported by merely conclusory statements" prohibited by the Supreme Court in *Iqbal*, but they fail to satisfy the particularity requirement of FRCP 9(b) and the PSLRA. The allegations fail to state: "[t]he time, place, and content of an alleged misrepresentation," and "set forth an explanation as to why the statement or omission complained of was false or misleading." *In re GlenFed Inc. Sec. Litig.*, *supra* at 1547-48.

Plaintiffs also routinely make prohibited "group" allegations, inappropriately lumping the Defendants and Plaintiffs together. *Comwest* at 1471. For example, Plaintiffs allege as follows (in addition to the allegations described in Page 3 herein):

> "Jeff, Ryan, and SAC told investors at conferences and symposiums and Plaintiffs by phone and email that 1inMM had a letter of intent to sell each movie with a distributor before the movie rights were purchased." FAC ¶64 c.

As the Defendants cannot divine which Defendant allegedly made alleged misrepresentations to which Plaintiff, these allegations lack the required specificity to support a 10(b)5 claim.

Additionally, as previously described herein other alleged misrepresentations are entirely vague (for example that "Jeff, Ryan, and SAC [made misrepresentations to] **investors** at **conferences and symposiums**"), were made long *after* the Plaintiffs entered the Profit Sharing Agreements and thus *not* "in connection with the offer and sale of the security" as required, and sound in negligence.  FAC ¶64 c. (*emphasis added*), FAC ¶64 j. – o. and FAC ¶64 a. and b.  All of these allegations fail to meet the particularity requirements of FRCP 9(b) and the PSLRA.

Plaintiffs also fail to make the required allegations showing that the representations were "material," as required by the Supreme Court in *Northway*, *supra*.  *Northway* concerned an allegedly misleading proxy statement.  The Supreme Court held, among other things, that an omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.  The standard requires a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of a reasonable shareholder.  Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by reasonable investors as having significantly altered the "total mix" of information made available.  The Supreme Court rejected the holding of the Seventh Circuit that material facts "include[] all facts which a reasonable investor might consider important," observing that "if the standard of materiality is unnecessarily low, not only may the corporation and its management be subjected to liability for insignificant omissions or misstatements, but also for fear of exposing itself to substantial liability may cause it simply to bury the shareholders in an avalanche of trivial information is hardly conducive to informed decision-making."  *Northway* at 448-449.  Here, Plaintiffs fail to allege, as required, facts demonstrating a substantial likelihood that the alleged misrepresentations and omissions would have assumed actual significance in their deliberations.

/ / /

Finally, Plaintiffs fail to make the required factual allegations demonstrating "loss causation," as required by the Supreme Court in *Dura Pharmaceuticals*, *supra*. As stated in *Dura*, while FRCP Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," the "short and plain statement" must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura* at 337. The Court went on state that the defendant must be given notice of "what the causal connection might be between that loss and the misrepresentation," and "[a]llowing a plaintiff to forgo giving any indication of the economic loss and proximate cause would bring about the very sort of harm the securities statutes seek to avoid, namely the abusive practice of filing lawsuits with only a faint hope that discovery might lead to some plausible cause of action." *Dura* at 347. The bottom line is that in order to have recoverable damages in a Rule 10b-5 claim, a plaintiff must allege loss causation, i.e. that the actionable misconduct was the cause of economic losses to the plaintiff. Plaintiffs' FAC is legally insufficient in this respect.

**D.      The Court Lacks Subject Matter Jurisdiction**

Because all of the Plaintiffs' federal claims, Cause of Action Nos. 1-4, must be dismissed under FRCP Rule 12(b)(6), there is no basis for federal question jurisdiction under 15 U.S.C. §1331 and the entire Complaint must be dismissed for lack of subject matter jurisdiction under FRCP Rule 12(b)(1).

**E.      Plaintiffs' State Law Fraud Claims Must be Dismissed**

California Corporations Code §25401 makes it unlawful for:

> ". . . a broker-dealer or other person selling or offering for sale or purchasing or offering to purchase the security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading."

Claims sounding fraud must be plead with particularity and specificity rather than general or conclusory allegations.  *Small*, *supra* at 184. This particularity requirement necessitates pleading facts which show how, when, where, to whom, and by what means the representations were made. *Morgan*, *supra* at 1261-1262.  Plaintiffs are required but fail to specify with particularity each statement they allege to be false and the reason why each such statement was false.  Plaintiffs fail to plead specific factual allegations showing "how, when, where, to whom, and by what means" the alleged fraudulent representations or misrepresentations were made to them, as required for fraud cases.

For example, Plaintiffs' following allegations lack the "how, when, where, to whom and by what means" required under California law:

". . . Horwitz passed along lies to Defendants that they in turn used to pacify their investors and keep the fraud going to delay the inevitable reckoning."  FAC ¶42.

"Jeff, Ryan, and SAC communicated by phone to Plaintiffs at the time of their investment commitment that they did their own due diligence on Horwitz's representations" FAC ¶64 a.

"Jeff, Ryan, and SAC communicated by phone to Plaintiffs at the time of their investment commitment that they engaged professionals to do due diligence on Horwitz's representations." FAC ¶64 b.

"Jeff, Ryan, and SAC told investors at conferences and symposiums and Plaintiffs by phone and email that 1inMM had a letter of intent to sell each movie with a distributor before the movie rights were purchased." FAC ¶64 c.

"Jeff, Ryan, and SAC told Plaintiffs via email at the time of the investment and in the Profit Sharing Agreements that 1inMM was receiving its funds from HBO and had active contracts with HBO." FAC ¶64 d.

"Jeff, Ryan, and SAC told Plaintiffs via email at the time of the investment and in the Profit Sharing Agreements that 1inMM was in the business of acquiring and licensing film distribution rights." FAC ¶64 e.

"Jeff, Ryan, and SAC told Plaintiffs via email prior to their investment that Craig Cole ('Cole') was the co-founder and part owner of 1inMM." FAC ¶64 f.

"Jeff, Ryan, and SAC concealed from investors that they never had direct communication with HBO, Netflix, Horwitz's Bank, or Horwitz's accountant to confirm anything Horwitz told them." FAC ¶64 g.

As previously referenced herein, other alleged misrepresentations are vague and ambiguous. Plaintiffs allege that "Jeff, Ryan, and SAC [made misrepresentations to] **investors** at **conferences and symposiums** . . .." FAC ¶64 c. *Emphasis added*. See also, FAC ¶64 i.  Plaintiffs fail to allege exactly who made the representations and which Plaintiff, *if any*, was present at the unidentified "conferences and symposiums." Further, as previously referenced herein, many of the alleged misrepresentations, FAC ¶64 j. – o., were made long *after* the Plaintiffs entered the Profit Sharing Agreements, and therefore cannot be made in connection with "selling or offering for sale or purchasing or offering to purchase the security" as required under Section 25400.  The supposed misrepresentations recited at FAC ¶64 j. – o were made long *after* the date of each Plaintiff's final investment, January 2020.  FAC ¶¶121-127.

Plaintiffs' "Negligent Misrepresentation" claim must be dismissed for these same reasons. Plaintiffs fail to allege misrepresentation of material fact, and fail to allege facts showing that any Defendant intended to induce reliance on the fact misrepresented. *BLM*, *supra*.  Critically, per the Profit Sharing Agreements, the Plaintiffs represented that they were Accredited Investors and performed their own investigation.  FAC **Exhibit A** at Sections 4.2 and 4.1.

## F.      Plaintiffs' Derivative Section 25403 Claim Must be Dismissed

Because Plaintiffs' Section 25401 claim must be dismissed, the derivative Section 25403 control person liability claim must also be dismissed under FRCP 12(b)(6).  Without a primary violation of Section 25401, there can be no control person liability under Section 25403.

## G.      Plaintiffs' Accounting Malpractice Claim Must Be Dismissed

The required elements for an Accounting Malpractice claim are:  ". . . (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Turpin v. Sortini*, 31 Cal.3d 220, 229-30 (1982).

Plaintiffs fail to adequately plead the elements of an Accounting Malpractice claim. First, Plaintiffs have failed to allege that Spiegel Accountancy Corporation owed them a duty vis-à-vis the Profit Sharing Agreements. That is, the Plaintiffs allege that they were "customers" of Spiegel Accountancy Corporation, who prepared their tax returns. FAC ¶208. But nowhere in the Complaint do the Plaintiffs allege that Spiegel Accountancy Corporation owed them a duty *with respect to the Profit Sharing Agreements*. Second, Plaintiffs have failed to allege that Spiegel Accountancy Corporation breached any purported duty owed vis-à-vis the Profit Sharing Agreements. While the Plaintiffs cut and paste a hodgepodge of boilerplate rules, they fail to allege the nexus between those purported rules and Spiegel Accountancy Corporation's alleged breach of duty. It appears that Plaintiffs are trying to allege a claim based upon some sort of conflict of interest. But Plaintiffs fail to address or plead exactly what the alleged conflict of interest was, or how providing basic tax services to both the Plaintiffs and SAC created a conflict of interest, proximately causing damages to Plaintiffs. Moreover, each institutional Accredited Investor Plaintiff waived non-statutory claims, non-fraud based in their respective Profit Sharing Agreement:

> "**3.1 . . . Investor irrevocably waives any and all claims against SAC in the event Investor . . . realizes a complete loss of the Investment Amount**." FAC **Exhibit A**.

The California Court of Appeal has specifically ruled that "contracts relieving individuals from the results of their own ordinary negligence are not invalid under [California Civil Code §1668] for contravening public policy." *Continental Airlines v. McDonnel Douglas*, 216 Cal.App.3d 388, 403 (1989), citing *Werner v. Knoll*, 89 Cal.App.2d 474, 475-477 (1948).

In all events, Plaintiffs fail to make a *prima facia* showing that Spiegel Accountancy Corporation had any connection whatsoever to the Profit Sharing Agreements. Plaintiffs fail to allege exactly what Spiegel Accountancy allegedly did wrong, its role in the Profit Sharing Agreements and obligations related thereto, and exactly how Spiegel Accountancy Corporation acted negligently.

### H. Plaintiffs' State Law Claims Fail as a Matter of Law – Plaintiffs Have Not Adequately Alleged Causation

Under California law, Mr. Horwitz's intentional criminal conduct is deemed the proximate cause of any of the Plaintiffs' alleged losses. *Koepke v. Loo*, 18 Cal.App.4th 1444, 1449 (1993). There is no doubt that Mr. Horwitz engaged in criminal conduct, as he already has been sentenced to serve 240 months in federal prison and pay restitution in the amount of $230 Million to the victims of his scheme. RJN **Exhibit 3**. A third-party's criminal act is the proximate cause of a plaintiff's alleged damages. *Paskenta Band v. Crosby*, 122 F.Supp.3d 982 (E.D. Cal. 2015). A plaintiff can only establish that the defendant is the proximate cause of his damages by alleging and proving *specific facts* demonstrating that the third-party's fraud was foreseeable. For example, in *Paskenta* the plaintiff Tribe alleged that certain defendant Tribe members used their positions as employees of the Tribe to embezzle funds from the Tribe and its primary business entity. Plaintiff Tribe further alleged that other defendants, including Associated Pension Consultants, Inc. ("APC"), assisted in the defendant Tribe members' fraudulent scheme. APC moved to dismiss the complaint on the grounds that the criminal conduct of the defendant Tribe members was the proximate cause of the plaintiff Tribe's losses, superseding any prior negligence on APC's behalf which might otherwise be deemed a cause. The Court held that the "general test of whether an independent intervening act, which operates to produce an injury, breaks the chain of causation is the foreseeability of the act," and denied APC's motion, finding the *detailed allegations* of the Plaintiff Tribe (if true) would evidence that the defendant Tribe members' fraud was foreseeable.

Here, the Plaintiffs have not alleged, and moreover cannot prove, *specific facts* demonstrating that Mr. Horwitz's fraud was foreseeable. Mr. Horwitz affirmatively falsified industry specific documents and financial statements in a highly sophisticated manner. RJN **Exhibit 1**. In particular, Mr. Horowitz created false bank statements (purportedly showing payments by film distributors related to 1inMM investments) and elaborate false e-mails (purportedly between Mr. Horwitz and

movie industry executives related to 1inMM investments), which he provided to SAC and other investors.  Such intentional conduct is the superseding proximate cause of the Plaintiffs' alleged damages.

## V.    CONCLUSION

Plaintiffs fail to make a *prima facia* showing for each of their causes of action.  As a result, Plaintiffs fail to state any causes of action for which any relief can be granted. Therefore, Defendants respectfully requests that this Court grant their Motion to Dismiss all of Plaintiffs' causes of action under FRCP Rule 12(b)(6) with prejudice.

Dated:  May 8, 2023                                    BALDWIN MADER LAW GROUP

By: _____
                                Patrick Baldwin, Esq.
                                Christopher Mader, Esq.
                                *Attorneys for Defendants*