UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLUSIONIST CASH BALANCE PLAN AND TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SPIEGEL ACCOUNTANCY CORP., et al.,<br><br>Defendants. | Case No. 23-cv-00287-AMO<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 36 |

Defendants Spiegel Accountancy Corporation, Jeffrey Spiegel, Ryan Spiegel and SAC Advisory Group, LLC move to dismiss the first amended complaint filed by Plaintiffs Ellusionist Cash Balance Plan and Trust, Uyen Huhyn, Southwest Investments Funds, LLC, AVR Group, LLC, Trident Asset Management, Inc., and Phoenix Affordable Housing Authority, LLC. Pursuant to Civil Local Rule 7-1(b), the Court deems the matter suitable for disposition without oral argument and VACATES the hearing currently set for August 17, 2023. Having carefully considered the parties' papers, the relevant legal authority, and good cause appearing, the Court GRANTS the motion WITH LEAVE TO AMEND for the reasons set forth below.

I.  **BACKGROUND**

  A.  **Factual Background**[1]

Zachary Horwitz is an actor based in Los Angeles. ECF 32 ¶ 19. He raised more than

---

[1] The factual background is based on the allegations in Plaintiffs' first amended complaint, which are taken as true for the purposes of deciding this motion. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

$690 million as part of a Ponzi scheme operated through his company, 1inMM Capital, LLC. *Id.* 1inMM issued promissory notes with maturities ranging from three to twenty-four months, with the majority of the notes coming due in six or twelve months. *Id.* ¶ 21. The "relativity short maturities" supposedly aligned with "the standard payment timeline" for Netflix and HBO. *Id.* ¶ 34. Each note provided for a specific amount to be paid at maturity, equating to a profit between 35 to 45 percent over the life of the note. *Id.* ¶ 21.

The funds generated from the promissory notes were to be used "to purchase the rights to a specific movie, to license those rights to either HBO or Netflix, and to use the profits to repay the note[s]." *Id.* ¶ 31. Horwitz claimed 1inMM would generate revenue by:

> (i) receiving a percentage of the gross receipts that HBO generated from exploiting film rights; (ii) retaining a portion of the profit margin from Netflix-specific transactions; (iii) following the repayment of notes used to finance the acquisition of content rights and the expiration of initial 3-year sublicensing period with platforms such as HBO and Netflix, 1inMM would retain rights to the same content for an additional period of years, thereby enabling 1inMM to continue licensing the content to other parties for 1inMM's sole financial benefit.

*Id.* ¶ 32. Horwitz actually had no relationship with HBO or Netflix, did not sign distribution agreements with either company, and did not acquire the promised movie rights using the money raised by the sale of promissory notes. *Id.* ¶¶ 24, 35. He used "fabricated agreements and fake emails with third-party companies with whom Horwitz had no actual business relationship." *Id.* ¶ 19.

Plaintiffs attribute Horwitz's success to Defendant "SAC and other aggregators acting as placement agents via promissory notes which were issued to the aggregators." *Id.* ¶ 25. He "raised money with five principal aggregators who acted as placement agents or underwriters selling securities for investment in 1inMM most of whom raised funds from friends, family, and other downstream investors[.]" *Id.* ¶ 43. Defendants' efforts led to "$75,132,950 in investment[s,]" with Plaintiffs' collective investments totaling more than $17,000,000. *Id.* ¶¶ 1, 46. The investments "were structured as 'Profit Sharing Agreements' whereby SAC provided 1inMM with the funds necessary to pay the purported Acquisition Fee (the 'SAC Advance') in exchange for a participation interest in the funds received by 1inMM in relicensing a portion of the

Distribution Rights to a third-party media company." *Id.* ¶ 50. "SAC did not invest money via the Profit Sharing Agreements but earned a significant profit on each investment that paid before the Ponzi Scheme collapsed." *Id.* ¶ 53.

Plaintiffs Southwest Investment Funds, AVR Group, Trident Asset Management, and Phoenix Affordable Housing Authority first invested in SAC on or about June 2019. *Id.* ¶¶ 124-127. Plaintiffs UYEN and Ellusionist first invested in SAC on or about September 2019. *Id.* ¶¶ 121, 122. All Plaintiffs entered into their final investment agreement on or about January 2020. *Id.* ¶¶ 121-127. Horwitz and 1inMM stopped making payments to investors in late 2019. *Id.* ¶¶ 38, 74.

### B. Procedural Background

Plaintiffs commenced this action on January 19, 2023, asserting claims for (1) accounting malpractice, (2) violation of Section 12(a)(2) of the Securities Act of 1933, (3) violation of Section 15 of the Securities Act of 1933, (4) declaratory judgment under Section 29(b) for Violation of Section 15(a) and 17 C.F.R. § 239.500, (5) violation of California Corporations Code § 25501.5, (6) violation of California Corporations Code § 25401, (7) violation of California Corporations Code § 25403, (8) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and (9) negligent misrepresentation. ECF 1. Defendants moved to dismiss the original complaint on February 17, 2023. ECF 11, 21. After full briefing and a hearing on the motion, the Court granted Plaintiffs leave to file an amended complaint.[2] ECF 26.

Plaintiffs filed their first amended complaint on April 26, 2023, asserting claims for (1) violation of Section 10(b) of the Securities Act of 1934 and Rule 10b-5, (2) violation of Section 12(a)(2) of the Securities Act of 1933, (3) violation of Section 15 of the Securities Act of 1933, (4) declaratory judgment under Section 29(b) of the Securities Act of 1934, (5) violation of California Corporations Code § 25401, (6) violation of California Corporations Code § 25403, (7) negligent misrepresentation, and (8) accounting malpractice. ECF 32.

//

---

[2] The matter was pending before the Honorable Vince Chhabria at the time and has since been re-assigned to this Court. ECF 26, 39.

## II. LEGAL STANDARDS

### A. Request for Judicial Notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993) (citing Fed. R. Evid. 201(b)(2)). This includes matters of public record. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B. Motion to Dismiss

Federal Rule of Civil Procedure 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

To overcome a Rule 12(b)(6) motion to dismiss, the factual allegations in the plaintiff's complaint "'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (alterations in original)). In ruling on the motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031 (citation omitted).

"[A]llegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The court may dismiss a claim "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (citing *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008)). "[T]he non-conclusory factual content and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotations and citation omitted).

For claims sounding in fraud or mistake, a plaintiff must "state with particularity the

4

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  A plaintiff must set forth "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, the court may consider material submitted as part of the complaint or relied upon in the complaint and may also consider material subject to judicial notice.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

### III. DISCUSSION

#### A. Request for Judicial Notice

Defendants ask the Court to take judicial notice of the following documents (1) the SEC's complaint against Horwitz and 1inMM, (2) the United States' criminal complaint against Horwitz, (3) the sentencing order issued in Horwitz's federal criminal case, and (4) the transcript of the hearing on the last motion to dismiss.  ECF 36-1; ECF 44 at 6, n.1.  Because these are court records whose accuracy cannot reasonable be questioned, *see* Fed. R. Evid. 201(b), the Court grants the request for judicial notice.[3]  *See Bridges v. Geringer*, No. 5:13-CV-01290-EJD, 2015 WL 2438227, at *1 n.2 (N.D. Cal. May 21, 2015) (taking judicial notice of indictment and plea agreement in related federal criminal proceedings).[4]

#### B. Motion to Dismiss

Applying the heightened pleading standard that governs here, the Court evaluates whether Plaintiffs have alleged sufficient facts in support of each federal claim.

//

---

[3] As to Exhibits 1-3, the Court deems Plaintiffs to have joined in the request because they cite those materials in their opposition brief.  *See* ECF 41 at 7.

[4] The Court has not, however, considered the factual assertions made in paragraphs 2 and 3 of the declaration of Jeffrey Spiegel filed in support of Defendants' motion to dismiss.  ECF 36-2. Defendants have offered no basis on which the Court may properly consider that content.

5

### 1. Violation of Section 10(b) of the Securities Act of 1934

In order to state a claim under Section 10(b) and Rule 10b-5, "'a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2013)). Allegations of such a violation "must meet both the heightened pleading requirements for fraud claims under Fed. R. Civ. P. 9(b), which require[] that the complaint 'state with particularity the circumstances constituting fraud[.]'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)). They must also meet the "exacting pleading requirements . . . of the Private Securities Litigation Reform Act ('PSLRA'), which require that the complaint 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

Defendants argue that Plaintiffs' first cause of action should be dismissed for failing the heightened specificity standard set by the PSLRA and Rule 9(b). ECF 36 at 22-26. They contend that Plaintiffs have resorted to improper group pleading and have not identified the material statements alleged to be misleading, the reason why each such statement was misleading, when each such statement was made, who made it, and to whom. *Id.* at 24, 25. Where Plaintiffs have provided *some* detail, Defendants argue that the allegations fail for a different reason, *i.e.*, the alleged misrepresentations were either not made in connection with the purchase or sale of a security[5] or they sound in negligence. *Id.* at 25. Defendants also argue that Plaintiffs have failed to sufficiently allege loss causation. *Id.* at 26.

Plaintiffs argue that they've alleged sufficient facts to meet the heightened pleading standard. ECF 41 at 9-17. Plaintiffs explain that "[t]he premise of the [Section 10(b)] claim is

---

[5] Nowhere in their papers do Plaintiffs address Defendant's argument that allegations of a connection with the purchase or sale of a security are lacking. *See generally* ECF 41. That failure alone serves as an independently sufficient basis to grant the motion to dismiss as to Plaintiffs' claims for violations of federal securities laws. *See Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence.").

that Defendants affirmatively created the impression that Horwitz's scheme was real, money was moving to and from HBO and Netflix, and Defendants had investigated this fully and even were co-signors on the accounts to guarantee the money was moving as promised." ECF 41 at 9 (citing ECF 32 ¶ 64). They claim "[t]he reality is that the whole thing was imaginary[,] and Defendants did nothing to confirm Horwitz's story." *Id.* (citing ECF 32 ¶ 65).

The misrepresentations alleged in Paragraph 64 of the operative complaint are as follows:

> 64. The Spiegels made the following representations to Plaintiffs:
>    a. Jeff, Ryan, and SAC communicated by phone to Plaintiffs at the time of their investment commitment that they did their own due diligence on Horwitz's representations;
>    b. Jeff, Ryan, and SAC communicated by phone to Plaintiffs at the time of their investment commitment that they engaged professionals to do due diligence on Horwitz's representations;
>    c. Jeff, Ryan, and SAC told investors at conferences and symposiums and Plaintiffs by phone and email that 1inMM had a letter of intent to sell each movie with a distributor before the movie rights were purchased;
>    d. Jeff, Ryan, and SAC told Plaintiffs via email at the time of the investment and in the Profit Sharing Agreements that 1inMM was receiving its funds from HBO and had active contracts with HBO;
>    e. Jeff, Ryan, and SAC told Plaintiffs via email at the time of the investment and in the Profit Sharing Agreements that 1inMM was in the business of acquiring and licensing film distribution rights;
>    f. Jeff, Ryan, and SAC told Plaintiffs via email prior to their investment that Craig Cole ("Cole") was the co-founder and part owner of 1inMM;
>    . . .
>    i. Jeff, Ryan, and SAC told investors at conferences and symposiums and Plaintiffs by phone and email that they were co-signors on Horwitz's bank account and signed off on each payment to foreign sales agents that 1inMM bought the movie rights from[.]

ECF 32 ¶ 64.a-64.f, 64.i. Paragraph 65 states "All of the aforementioned representations in paragraph 64 will hereinafter be referred to as the 'Representations.'" *Id.* ¶ 65.

The Court agrees with Defendants that these allegations are too general. They do not specify which Defendant made a given alleged misrepresentation or to which Plaintiff. They do not specify whether Plaintiffs were present at some of the events where some of these alleged misrepresentations were made. Most of the allegations also do not specify when a given alleged misrepresentation was made. As for the few allegations that do include a timeframe or are linked

7

to an identified individual, they appear to post-date Plaintiffs' final investments in the Ponzi scheme. *See id.* ¶¶ 64.j-64.o.

Plaintiffs argue that any purported "group" pleading ignores the reality of how the scheme was perpetrated, *i.e.*, "representations were made by both father and son . . . father, son, and the business they own all communicating the same offering." ECF 41 at 15. This argument merely underscores the difficulty Plaintiffs may face in preparing a future compliant pleading rather than demonstrating one is presently before the Court. To the extent Plaintiffs suggest that by operation of California law "what SAC says, Jeff and Ryan say, and Jeff and Ryan are liable for SAC's statements," *see* ECF 41 at 15-16, the Court declines to rule that invoking state substantive law in this Court excuses non-compliance with federal pleading standards. *See Vess*, 317 F.3d at 1103 ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action.").

Without the foundational "who, what, where, when, and how," the Court cannot proceed to address the element of falsity that Plaintiffs argue is met here. *See Crago v. Charles Schwab & Co.*, No. 16-CV-03938-RS, 2017 WL 2540577, at *5 (N.D. Cal. June 12, 2017) ("Plaintiffs fail to indicate when the [alleged misrepresentations] were made; whether during or after the class period. Accordingly, it is not possible to evaluate them for falsity.") (citing *Cooper*, 137 F.3d at 627). Nor can the Court proceed to meaningfully analyze claims of scienter, *see id.* ("fail[ure] to plead the falsity of [defendant's] alleged misrepresentations with requisite particularity . . . precludes a determination that plaintiffs have adequately plead scienter"), or loss causation, *see id.* at *7 ("it is premature to accept as adequately pleaded plaintiffs' theory of loss causation" where the assumptions underlying that theory "maps onto an element of a 10b-5 claim that plaintiffs have not yet adequately pleaded").

In sum, because Plaintiffs have failed to specifically plead the details surrounding the material statements alleged to be misleading, the Court cannot assess the rest of the Plaintiffs' allegations, and this claim must be dismissed.

//

### 2. Violation of Section 12(a)(2) of the Securities Act of 1933

"[T]o prevail under Section 12(a)(2), a plaintiff must demonstrate (1) an offer or sale of a security, (2) by the use of a means or instrumentality of interstate commerce, (3) by means of a prospectus or oral communication, (4) that includes an untrue statement of material fact or omits to state a material fact that is necessary to make the statements not misleading." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 885 (9th Cir. 2008). Section 12(a)(2) does not prohibit all species of securities fraud; instead, it prohibits fraud in or relating to a prospectus. *See id.* (quoting 15 U.S.C. § 77*l*(a)(2)). For the purposes of Section 12(a), a "prospectus" is "a document that describes a public offering of securities by an issuer or controlling shareholder." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 584 (1995).

In their opening brief, Defendants argue that Plaintiffs' second cause of action fails because Section 12(a)(2) does not apply to private placements. ECF 36 at 19-20. On this issue, Defendants cite to specific allegations Plaintiffs' original complaint, including:

> 27. The unregistered securities at issue in this case are not "covered securities" within the meaning of National Securities Market Improvement Act of 1996 (NMSIA), 15 U.S.C. § 77r(b), and accordingly this action is not subject to the procedural requirements of the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u–4(a). The securities were not issued by a nationally registered investment company nor was it designated for trading in a national securities exchange.
> 81. Placement agents such as SAC who sell private placements to retail customers for a commission such as SAC are required to register with the Financial Industry Regulatory Authority ("FINRA"). While SAC was not actually a professional broker/dealer, it pretended to be and just as it assumed the profits of a broker/dealer, it assumed the duties.
> 84. A placement agent, or at least a party acting in that role such as SAC, is required to perform reasonable due diligence on a private placement prior to offering it for sale to its customers pursuant to FINRA Rule 2111.05(a), FINRA Regulatory Notice 10-22, NASD Notice to Members 03-71, and NASD Notice to Members 05-26, 17 C.F.R. § 240.15l-1(b)(1).

ECF 36 at 20 (citing ECF 1 ¶ 27); ECF 44 at 15 (citing ECF 1 ¶¶ 27, 81, 84).[6] They also cite to

---

[6] Defendants argue that "Plaintiffs cannot now change course and alter a fundamental allegation, just to get past a Motion to Dismiss." *See* ECF 44 at 8 (citing *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014)). Whether that argument is related or wholly independent of the basis for sanctions Judge Chhabria alluded to during the

specific allegations in Plaintiffs' first amended complaint, "Neither Plaintiffs nor SAC had access to the type of information normally provided in prospectus of a SEC registration statement such as Form S-1," noting that "there is no disclosure requirement in a private placement limited to Accredited Investors, and particularly . . . where five of the six Accredited Investors are institutional investors." ECF 36 at 20 (citing ECF 32 ¶ 150); ECF 44 at 15 (citing ECF 32 ¶ 150).

Plaintiffs focus their counter-argument on whether the 1inMM investment offering was public, not private, citing to the following facts:

> (1) Defendants solicited $75,132,950 in investment via sales of three forms of investment in the 1inMM Offering of which $29,733,025 remains owed to investors (FAC ¶ 46);
> (2) Over 100 individuals from all walks of life and experience invested in Defendants' various offerings of investment in 1inMM thanks to Defendants' aggressive public sales efforts. (FAC ¶ 63);
> (3) Defendants employed a video presentation to sell investment in the 1inMM Offering (FAC ¶ 66, https://grabify.link/RCI5S5);
> (4) Defendants engaged at least one salesman with experience selling insurance and unregistered investments and paid him a finder's fee of 5% of the amount invested in consideration of each investor he successfully solicited on Defendants' behalf. (FAC ¶ 55);
> (5) Defendants had no prior relationship with the investors solicited by salesmen including recent immigrants and elderly individuals. (FAC ¶ 56); Ryan and Jeff presented to large groups of potential investors at a conference in Oregon. (FAC ¶ 57); On or about April 5, 2017, Ryan presented the investment opportunity to individuals at the Mile Marker Club Symposium in Oregon. (FAC ¶ 57); Defendants had no prior relationship with the investors solicited at conferences. (FAC ¶ 58).

ECF 41 at 17-18. Plaintiffs, however, do not address the remaining elements of their cause of action under Section 12(a)(2), claiming that "the only point of contention now is whether the investment is public or private." *Id.* at 17. While Defendants focus their opening brief on whether the offering was public or private, *see* ECF 36 at 19-20, Plaintiffs' reading is too narrow. On reply, Defendants clarify: "Plaintiffs' statement that the Defendants concede that the elements

---

hearing on Defendants' prior motion to dismiss is not properly before the Court at this time. It will, however, factor into the analysis of whether leave to amend will be appropriate on subsequent attempts. *See Airs Aromatics*, 744 F.3d at 600 ("Given leave to amend, Airs Aromatics could not advance an alternative set of allegations about activities by Airs International during the period in dispute that would constitute continuous usage. Consequently, leave to amend would be futile.").

have been adequately plead . . . is flat wrong. To the contrary, Plaintiffs fail to allege all of the required elements for the [Section] 12(a)(2) claim." ECF 44 at 15. A footnote at the end of Plaintiffs' opposition brief states "This Response only addresses the arguments in Defendants' Motion. If any new arguments are made in Defendants' Reply, Plaintiff will seek leave to file a sur-reply." ECF 41 at 28 n.2. Plaintiffs have sought no such leave, even though Defendants' reply brief clearly puts Plaintiffs on notice of their misreading of the opening brief. The Court treats Plaintiffs' inaction as consent to grant the motion to dismiss this cause of action. *See Ardente, Inc.*, 2010 WL 546485, at *6.

### 3. Violation of Section 15 of the Securities Act of 1933

"Section 15(a) provides liability for persons who control any person or entity liable under other sections of the 1933 Act, including Section 12." *Fabian v. LeMahieu*, No. 19-CV-00054-YGR, 2019 WL 4918431, at *7 (N.D. Cal. Oct. 4, 2019) (citing 15 U.S.C. § 77o(a)).

Defendants argue that Plaintiffs' Section 15 claim is derivative of the Section 12 claim and must be dismissed because the underlying claim is not viable. ECF 36 at 20. Though Plaintiffs dispute that the claim is subject to dismissal, Plaintiffs appear to agree that the claims rise and fall together. ECF at 41 at 20 ("[T]he Motion to Dismiss should be denied as to the 12(a) claim and the related control person claim.").

As discussed above, the Court grants the motion to dismiss as to the Section 12 claim, and so dismissal is appropriate as to the Section 15 claim. *See In re Rigel Pharms., Inc. Sec. Litig. v. Deleage*, 697 F.3d 869, 886 (9th Cir. 2012) (Section 15 "require[s an] underlying primary violation of the securities laws. . . . Because Plaintiff here has failed to adequately plead a violation of the federal securities laws, it follows that Plaintiff also has failed to adequately plead violation[] of . . . section 15."); *see also Fabian*, 2019 WL 4918431, at *7 ("as [the] parties conceded during the September 24 hearing, plaintiff's Section 15 claim rises and falls with his Section 12 claim.")).

### 4. Declaratory Judgment under Section 29

Section 29(a) of the Securities Exchange Act of 1934 provides that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this

11

chapter or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void." 15 U.S.C. § 78cc(a).  Section 29(b) renders voidable "'[e]very contract made in violation of any provision of [the securities laws] or of any rule or regulation thereunder, and every contract . . . the performance of which involves [such a] violation.'" *Facebook Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1039 (9th Cir. 2011) (quoting 15 U.S.C. § 78cc(b); *Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 387-88 (1970) (modifications in original)).

In the operative complaint, Plaintiffs allege that "[t]he Profit Sharing Agreement impermissibly seeks to waive compliance with the antifraud and civil liability provisions of the Securities Exchange Acts of 1933 and 1934." ECF 32 at 30.  They point to two specific provisions:

> "Investor irrevocably waives any and all claims against SAC in the event Investor receives less than the Preferred Return or realizes a complete loss of the Investment Amount in connection with the payment of the Investment Amount hereunder[.]"
>
> "He or she acknowledges that in connection with paying the Investment Amount no oral or written representations have been made by SAC, its manager or any officer, employee, agent other than representations made in this Agreement[.]"

*Id.*

Defendants argue that these provisions are insufficient to render the Profit Sharing Agreement voidable under Section 29.  ECF 36 at 21-22; ECF 44 at 17-18.  Citing *Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195, 206 (3d Cir. 2009), but failing to address Ninth Circuit authority cited by Plaintiffs, Defendants assert that Section 29(b) permits rescission "only where the agreement cannot be performed without violating the securities laws." ECF 36 at 21; ECF 44 at 17-18.

In *Facebook, Inc. v. Pacific Northwest Software, Inc.*, the Ninth Circuit upheld the district court's enforcement of a settlement agreement between Facebook, Cameron and Tyler Winklevoss, and Divya Narendra (collectively, "the Winklevosses").  640 F.3d at 1042.  The Winklevosses argued that Facebook misled them during settlement negotiations by representing that the company's shares were worth about four times more than they actually were.  *Id.* at 1038. They claimed that if had they known the true value during negotiations, they would have never

1  agreed to the settlement agreement. *Id.* They alleged Facebook's representation about the share

2  price constituted a violation of Rule 10b-5, which entitled them to rescission under Section 29(b).

3  *Id.* Though it declined to disturb the district court's order enforcing the settlement agreement for

4  reasons not relevant here, the Ninth Circuit stated: "If Facebook violated Rule 10b-5, the

5  Winklevosses would be entitled to rescission of the Settlement Agreement." *Id.* at 1039 (citing

6  *Mills*, 396 U.S. at 387-88; *Royal Air Props., Inc. v. Smith*, 312 F.2d 210, 213 (9th Cir. 1962)).

7        That observation is instructive here. If Defendants here violated a provision of the

8  securities laws, Plaintiffs would be entitled to relief under Section 29(b). But given the

9  deficiencies in the operative complaint, that is a big "if." The Court cannot sustain a Section 29(b)

10 claim where allegations of a necessary predicate claim are inadequate. *Compare In re Wells*

11 *Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1106 (N.D. Cal. 2017) (Section

12 29(b) claim survived dismissal where plaintiffs alleged actionable claims). For these reasons, the

13 Court must dismiss this claim.

14       **C.**    **State Law Claims**

15       In addition to the federal claims discussed above, Plaintiffs also assert state law claims for

16 (5) violation of California Corporations Code § 25401, (6) violation of California Corporations

17 Code § 25403, (7) negligent misrepresentation, and (8) accounting malpractice. ECF 32. Because

18 the Court has dismissed all federal claims asserted in the operative complaint, the Court declines

19 to exercise supplemental jurisdiction over Plaintiffs' state law claims. Accordingly, those claims

20 will also stand dismissed. *See Bridges*, 2015 WL 2438227, at *7 (citing 28 U.S.C.

21 § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988); *Acri v. Varian*

22 *Assocs., Inc.,* 114 F.3d 999, 1000 (9th Cir.1997) (en banc)).

23 //

24 //

25 //

26 //

27 //

28 //

13

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS the motion to dismiss. Because leave to amend should be liberally granted, Plaintiffs may file an amended complaint within 21 days of this order.

**IT IS SO ORDERED.**

Dated: August 15, 2023

                                              **ARACELI MARTÍNEZ-OLGUÍN**
                                              **United States District Judge**