# EXHIBIT A

## PROFIT SHARING AGREEMENT

THIS AGREEMENT is made and entered into as of March 25, 2019 (the "**Effective Date**") by and between SAC ADVISORY GROUP, LLC, a California limited liability company ("**SAC**"), and the undersigned investor ("**Investor**").

## WITNESSETH

WHEREAS Distributor (defined below) is in the business of acquiring and licensing film distribution rights to third-party media companies for exclusive distribution in Latin American and African countries (the "**Distribution Rights**");

WHEREAS in connection with acquiring the Distribution Rights to a particular movie (the "**Licensed Movie**"), Distributor must pay a one-time non-refundable license fee (the "**Acquisition Fee**") to the holder of the movie's worldwide distribution rights which is generally the producer of the movie;

WHEREAS in order to assist the Distributor in acquiring the Distribution Rights, SAC provides the Distributor with the funds necessary to pay the Acquisition Fee (the "**SAC Advance**") in exchange for a participation interest in the funds received by Distributor in relicensing a portion of the Distribution Rights to a third-party media company ("**Media Company**").

WHEREAS Investor has agreed to provide SAC with the funds necessary to fund the SAC Advance in exchange for a profits interest in the Participation Fee (defined below) received by SAC in connection with the distributor licensing the Licensed Movie to a Media Company.

NOW THEREFORE, in consideration good and valuable consideration, the receipt of which is hereby mutually acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

**Section 1.**     **Definitions.**

    **1.1**     "**Distributor**" means 1INMM Capital, LLC, a California limited liability company

    **1.2**     "**Participation Fee**" means the fees paid by the distributor to SAC in connection with licensing the Licensed Movie to a Media Company.

**Section 2.**     **Investor Payment of Investment Amount.**

    Subject to the terms and conditions of this Agreement, Investor agrees to pay SAC the amount of $99,450 ("**Investment Amount**") in order to fund the SAC Advance for the purchase of the Distribution Rights of a Licensed Movie (The Corrupted).

**Section 3.**     **Payment of License Fee.**

    **3.1**     Upon the receipt of the Participation Fee received by SAC from the distributor, SAC shall immediately pay Investor an amount equal to a 16% return on the Investment Amount (the "**Preferred Return**"). After the payment of the Preferred Return to Investor, SAC shall be entitled to retain the remaining amount of the Participation Fee. In the event that the amount of the Participation Fee is less than the amount necessary to provide Investor with the Preferred Return, Investor shall be paid the entire Participation Fee. Investor acknowledges that SAC has not guaranteed that Investor will actually receive the Preferred Return and Investor irrevocably waives any and all claims against SAC in the event Investor

receives less than the Preferred Return or realizes a complete loss of the Investment Amount in connection with the payment of the Investment Amount hereunder.

**3.2** As collateral security for the payment of each participation fee with respect a particular Licensed Movie, Distributor has granted SAC a lien and continuing security interest in the Distribution Rights with respect to such Licensed Movie and proceeds of the foregoing and all general intangibles and contract rights related thereto, including without limitation, all revenues, License Fees, distributions, contract rights and other rights and interests that Distributor is, or may hereafter become, entitled to receive on account of such Licensed Movie (the "**Security Interest**"). SAC hereby agrees that Investor is entitled to the protections provided by the Security Interest and, therefore, SAC hereby assigns Investor an undivided interest in the Security Interest. For avoidance of doubt, Investor's undivided interest in the Security Interest means that both SAC and Investor are joint holders of the Security Interest with identical rights and preferences with respect to any Licensed Movie subject to the Security Interest.

**Section 4.    Representations and Warranties.** Investor makes the following representations and warranties in connection with executing this Agreement.

4.1 <u>Preexisting Relationship or Experience</u>. He or she has a preexisting personal or business relationship with SAC, its manager, or by reason of his or her business or financial experience, or by reason of the business or financial experience of his or her financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by SAC or any affiliate or selling agent of SAC, he or she is capable of evaluating the risks and merits of paying the Investment Amount and of protecting his or her own interests in connection with such investment.

4.2 <u>Accredited Investor; Economic Risk</u>. He or she represents that he or she is an Accredited Investor (as defined in Rule 501(a) of Regulation D of the Securities Act of 1933) and/or is financially able to bear the economic risk of paying the Investment Amount, including the total loss thereof.

4.3 <u>Investment Risk</u>. He or she acknowledges that the payment of the Investment Amount is a speculative investment that involves a substantial degree of risk of loss by him or her of his or her entire investment, and that he or she understands and take full cognizance of the risk factors related to the investment made hereunder and that SAC may never receive any Participation Fee in attempting to sell the Distributions Rights to the Licensed Movie.

4.4 <u>No Other Warranties</u>. He or she acknowledges that in connection with paying the Investment Amount no oral or written representations have been made by SAC, its manager or any officer, employee, agent other than representations made in this Agreement.

4.5 <u>Inquiry Opportunity</u>. He or she has been given the opportunity to ask questions of, and receive answers from, SAC concerning the terms and conditions of the Investment Amount in order to evaluate the merits and risks entering into this Agreement.

**Section 5.    Miscellaneous.**

5.1 This Agreement shall terminate upon the payment of all amounts due Investor hereunder.

5.2 All previous agreements and arrangements made by the parties and relating to the subject matter hereof are hereby superseded and this Agreement, there being no promises, terms, conditions or obligations, oral or written, express or implied, other than those contained herein. This Agreement may only be amended by a written document signed by all parties.

5.3     This Agreement has been delivered in the State of California and shall be construed and interpreted in accordance with the laws thereof.  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.  If any legal action is necessary or brought in any court or arbitration proceeding, to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs, and necessary expenses, in addition to any other relief to which such party may be entitled.

5.4     No waiver of any term or condition of this Agreement shall be valid or binding on a party unless the same has been mutually assented to in writing by both parties.  The failure of a party to enforce at any time any of the provisions of this Agreement, or the failure to require at any time performance by the other party of any of the provisions of this Agreement, shall in no way be construed to be a present or future waiver of such provisions, nor in any way affect the ability of a party to enforce each and every such provision thereafter.

IN WITNESS WHEREOF, the parties hereto have executed this Profit Sharing Agreement as of the day and year first above written.

SAC ADVISORY GROUP, LLC                    INVESTOR:
a California limited liability company          C421


_____          _____

Ryan Spiegel, Manager                          Cindy Huynh

# PROFIT SHARING AGREEMENT

THIS AGREEMENT is made and entered into as of March 25, 2019 (the "**Effective Date**") by and between SAC ADVISORY GROUP, LLC, a California limited liability company ("**SAC**"), and the undersigned investor ("**Investor**").

## WITNESSETH

WHEREAS Distributor (defined below) is in the business of acquiring and licensing film distribution rights to third-party media companies for exclusive distribution in Latin American and African countries (the "**Distribution Rights**");

WHEREAS in connection with acquiring the Distribution Rights to a particular movie (the "**Licensed Movie**"), Distributor must pay a one-time non-refundable license fee (the "**Acquisition Fee**") to the holder of the movie's worldwide distribution rights which is generally the producer of the movie;

WHEREAS in order to assist the Distributor in acquiring the Distribution Rights, SAC provides the Distributor with the funds necessary to pay the Acquisition Fee (the "**SAC Advance**") in exchange for a participation interest in the funds received by Distributor in relicensing a portion of the Distribution Rights to a third-party media company ("**Media Company**").

WHEREAS Investor has agreed to provide SAC with the funds necessary to fund the SAC Advance in exchange for a profits interest in the Participation Fee (defined below) received by SAC in connection with the distributor licensing the Licensed Movie to a Media Company.

NOW THEREFORE, in consideration good and valuable consideration, the receipt of which is hereby mutually acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

**Section 1.**        **Definitions.**

       **1.1**        "**Distributor**" means 1INMM Capital, LLC, a California limited liability company

       **1.2**        "**Participation Fee**" means the fees paid by the distributor to SAC in connection with licensing the Licensed Movie to a Media Company.

**Section 2.**        **Investor Payment of Investment Amount.**

       Subject to the terms and conditions of this Agreement, Investor agrees to pay SAC the amount of $526,500 ("**Investment Amount**") in order to fund the SAC Advance for the purchase of the Distribution Rights of a Licensed Movie (The Corrupted).

**Section 3.**        **Payment of License Fee.**

       **3.1**        Upon the receipt of the Participation Fee received by SAC from the distributor, SAC shall immediately pay Investor an amount equal to a 16% return on the Investment Amount (the "**Preferred Return**").  After the payment of the Preferred Return to Investor, SAC shall be entitled to retain the remaining amount of the Participation Fee.  In the event that the amount of the Participation Fee is less than the amount necessary to provide Investor with the Preferred Return, Investor shall be paid the entire Participation Fee.  Investor acknowledges that SAC has not guaranteed that Investor will actually receive the Preferred Return and Investor irrevocably waives any and all claims against SAC in the event Investor

DocuSign Envelope ID: 9C4576E0-8A23-4B57-8A5B-B7ED5A057481

receives less than the Preferred Return or realizes a complete loss of the Investment Amount in connection with the payment of the Investment Amount hereunder.

      **3.2**     As collateral security for the payment of each participation fee with respect a particular Licensed Movie, Distributor has granted SAC a lien and continuing security interest in the Distribution Rights with respect to such Licensed Movie and proceeds of the foregoing and all general intangibles and contract rights related thereto, including without limitation, all revenues, License Fees, distributions, contract rights and other rights and interests that Distributor is, or may hereafter become, entitled to receive on account of such Licensed Movie (the "**Security Interest**").  SAC hereby agrees that Investor is entitled to the protections provided by the Security Interest and, therefore, SAC hereby assigns Investor an undivided interest in the Security Interest.  For avoidance of doubt, Investor's undivided interest in the Security Interest means that both SAC and Investor are joint holders of the Security Interest with identical rights and preferences with respect to any Licensed Movie subject to the Security Interest.

**Section 4.**     **Representations and Warranties.**  Investor makes the following representations and warranties in connection with executing this Agreement.

      4.1     <u>Preexisting Relationship or Experience</u>.  He or she has a preexisting personal or business relationship with SAC, its manager, or by reason of his or her business or financial experience, or by reason of the business or financial experience of his or her financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by SAC or any affiliate or selling agent of SAC, he or she is capable of evaluating the risks and merits of paying the Investment Amount and of protecting his or her own interests in connection with such investment.

      4.2     <u>Accredited Investor; Economic Risk</u>.  He or she represents that he or she is an Accredited Investor (as defined in Rule 501(a) of Regulation D of the Securities Act of 1933) and/or is financially able to bear the economic risk of paying the Investment Amount, including the total loss thereof.

      4.3     <u>Investment Risk</u>.  He or she acknowledges that the payment of the Investment Amount is a speculative investment that involves a substantial degree of risk of loss by him or her of his or her entire investment, and that he or she understands and take full cognizance of the risk factors related to the investment made hereunder and that SAC may never receive any Participation Fee in attempting to sell the Distributions Rights to the Licensed Movie.

      4.4     <u>No Other Warranties</u>.  He or she acknowledges that in connection with paying the Investment Amount no oral or written representations have been made by SAC, its manager or any officer, employee, agent other than representations made in this Agreement.

      4.5     <u>Inquiry Opportunity</u>. He or she has been given the opportunity to ask questions of, and receive answers from, SAC concerning the terms and conditions of the Investment Amount in order to evaluate the merits and risks entering into this Agreement.

**Section 5.**     **Miscellaneous.**

      5.1     This Agreement shall terminate upon the payment of all amounts due Investor hereunder.

      5.2     All previous agreements and arrangements made by the parties and relating to the subject matter hereof are hereby superseded and this Agreement, there being no promises, terms, conditions or obligations, oral or written, express or implied, other than those contained herein.  This Agreement may only be amended by a written document signed by all parties.

5.**3**     This Agreement has been delivered in the State of California and shall be construed and interpreted in accordance with the laws thereof.  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.  If any legal action is necessary or brought in any court or arbitration proceeding, to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs, and necessary expenses, in addition to any other relief to which such party may be entitled.

5.**4**     No waiver of any term or condition of this Agreement shall be valid or binding on a party unless the same has been mutually assented to in writing by both parties.  The failure of a party to enforce at any time any of the provisions of this Agreement, or the failure to require at any time performance by the other party of any of the provisions of this Agreement, shall in no way be construed to be a present or future waiver of such provisions, nor in any way affect the ability of a party to enforce each and every such provision thereafter.

IN WITNESS WHEREOF, the parties hereto have executed this Profit Sharing Agreement as of the day and year first above written.

SAC ADVISORY GROUP, LLC                     INVESTOR:
a California limited liability company             Ellusionist.com Cash Balance Plan & TST UA
                                                                        Jan 01, 2013

_____          _____
Ryan Spiegel, Manager                                  Brad Christian, Managing Member

3

**PROFIT SHARING AGREEMENT AMENDMENT**

This agreement is to amend section 3.1 of the profit sharing agreement that was dated October 28, 2019 by and between SAC ADVISORY GROUP, LLC, a California limited liability company ("SAC"), and the undersigned investor ("Investor") for the licensed movie, The Burnt Orange Heresy, for the amount of $744,250.

The below amendment to section 3.1 is agreed upon by both parties as of January 17, 2020.

      **3.1**     Upon the receipt of the Participation Fee received by SAC from the distributor, SAC shall immediately pay Investor an amount equal to a 21% return on the Investment Amount (the "Preferred Return").  After the payment of the Preferred Return to Investor, SAC shall be entitled to retain the remaining amount of the Participation Fee.  In the event that the amount of the Participation Fee is less than the amount necessary to provide Investor with the Preferred Return, Investor shall be paid the entire Participation Fee.  Investor acknowledges that SAC has not guaranteed that Investor will actually receive the Preferred Return and Investor irrevocably waives any and all claims against SAC in the event Investor receives less than the Preferred Return or realizes a complete loss of the Investment Amount in connection with the payment of the Investment Amount hereunder.

SAC ADVISORY GROUP, LLC

a California limited liability company

_____

Ryan Spiegel, Manager

INVESTOR:

AVR Group, LLC

Joe McNulty
_____

Print Name


E73E3C014A78473...
_____

Signature

Trident Asset Management Inc.

Joe McNulty
_____

Print Name


E73E3C014A78473...
_____

Signature

## PROFIT SHARING AGREEMENT

THIS AGREEMENT is made and entered into as of October 28, 2019 (the "**Effective Date**") by and between SAC ADVISORY GROUP, LLC, a California limited liability company ("**SAC**"), and the undersigned investor ("**Investor**").

### WITNESSETH

WHEREAS Distributor (defined below) is in the business of acquiring and licensing film distribution rights to third-party media companies for exclusive distribution in Latin American and African countries (the "**Distribution Rights**");

WHEREAS in connection with acquiring the Distribution Rights to a particular movie (the "**Licensed Movie**"), Distributor must pay a one-time non-refundable license fee (the "**Acquisition Fee**") to the holder of the movie's worldwide distribution rights which is generally the producer of the movie;

WHEREAS in order to assist the Distributor in acquiring the Distribution Rights, SAC provides the Distributor with the funds necessary to pay the Acquisition Fee (the "**SAC Advance**") in exchange for a participation interest in the funds received by Distributor in relicensing a portion of the Distribution Rights to a third-party media company ("**Media Company**").

WHEREAS Investor has agreed to provide SAC with the funds necessary to fund the SAC Advance in exchange for a profits interest in the Participation Fee (defined below) received by SAC in connection with the distributor licensing the Licensed Movie to a Media Company.

NOW THEREFORE, in consideration good and valuable consideration, the receipt of which is hereby mutually acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

**Section 1.**      **Definitions.**

**1.1**      "**Distributor**" means 1INMM Capital, LLC, a California limited liability company

**1.2**      "**Participation Fee**" means the fees paid by the distributor to SAC in connection with licensing the Licensed Movie to a Media Company.

**Section 2.**      **Investor Payment of Investment Amount.**

Subject to the terms and conditions of this Agreement, Investor agrees to pay SAC the amount of $744,250 ("**Investment Amount**") in order to fund the SAC Advance for the purchase of the Distribution Rights of a Licensed Movie (The Burnt Orange Heresy).

**Section 3.**      **Payment of License Fee.**

**3.1**      Upon the receipt of the Participation Fee received by SAC from the distributor, SAC shall immediately pay Investor an amount equal to a 17% return on the Investment Amount (the "**Preferred Return**").  After the payment of the Preferred Return to Investor, SAC shall be entitled to retain the remaining amount of the Participation Fee.  In the event that the amount of the Participation Fee is less than the amount necessary to provide Investor with the Preferred Return, Investor shall be paid the entire Participation Fee.  Investor acknowledges that SAC has not guaranteed that Investor will actually receive the Preferred Return and Investor irrevocably waives any and all claims against SAC in the event Investor

receives less than the Preferred Return or realizes a complete loss of the Investment Amount in connection with the payment of the Investment Amount hereunder.

**3.2** As collateral security for the payment of each participation fee with respect a particular Licensed Movie, Distributor has granted SAC a lien and continuing security interest in the Distribution Rights with respect to such Licensed Movie and proceeds of the foregoing and all general intangibles and contract rights related thereto, including without limitation, all revenues, License Fees, distributions, contract rights and other rights and interests that Distributor is, or may hereafter become, entitled to receive on account of such Licensed Movie (the "**Security Interest**").  SAC hereby agrees that Investor is entitled to the protections provided by the Security Interest and, therefore, SAC hereby assigns Investor an undivided interest in the Security Interest.  For avoidance of doubt, Investor's undivided interest in the Security Interest means that both SAC and Investor are joint holders of the Security Interest with identical rights and preferences with respect to any Licensed Movie subject to the Security Interest.

**Section 4.        Representations and Warranties.**  Investor makes the following representations and warranties in connection with executing this Agreement.

4.1      <u>Preexisting Relationship or Experience</u>.  He or she has a preexisting personal or business relationship with SAC, its manager, or by reason of his or her business or financial experience, or by reason of the business or financial experience of his or her financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by SAC or any affiliate or selling agent of SAC, he or she is capable of evaluating the risks and merits of paying the Investment Amount and of protecting his or her own interests in connection with such investment.

4.2      <u>Accredited Investor; Economic Risk</u>.  He or she represents that he or she is an Accredited Investor (as defined in Rule 501(a) of Regulation D of the Securities Act of 1933) and/or is financially able to bear the economic risk of paying the Investment Amount, including the total loss thereof.

4.3      <u>Investment Risk</u>.  He or she acknowledges that the payment of the Investment Amount is a speculative investment that involves a substantial degree of risk of loss by him or her of his or her entire investment, and that he or she understands and take full cognizance of the risk factors related to the investment made hereunder and that SAC may never receive any Participation Fee in attempting to sell the Distributions Rights to the Licensed Movie.

4.4      <u>No Other Warranties</u>.  He or she acknowledges that in connection with paying the Investment Amount no oral or written representations have been made by SAC, its manager or any officer, employee, agent other than representations made in this Agreement.

4.5      <u>Inquiry Opportunity</u>. He or she has been given the opportunity to ask questions of, and receive answers from, SAC concerning the terms and conditions of the Investment Amount in order to evaluate the merits and risks entering into this Agreement.

**Section 5.        Miscellaneous.**

5.**1**      This Agreement shall terminate upon the payment of all amounts due Investor hereunder.

5.**2**      All previous agreements and arrangements made by the parties and relating to the subject matter hereof are hereby superseded and this Agreement, there being no promises, terms, conditions or obligations, oral or written, express or implied, other than those contained herein.  This Agreement may only be amended by a written document signed by all parties.

5.**3**      This Agreement has been delivered in the State of California and shall be construed and interpreted in accordance with the laws thereof.  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.  If any legal action is necessary or brought in any court or arbitration proceeding, to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs, and necessary expenses, in addition to any other relief to which such party may be entitled.

5.**4**      No waiver of any term or condition of this Agreement shall be valid or binding on a party unless the same has been mutually assented to in writing by both parties.  The failure of a party to enforce at any time any of the provisions of this Agreement, or the failure to require at any time performance by the other party of any of the provisions of this Agreement, shall in no way be construed to be a present or future waiver of such provisions, nor in any way affect the ability of a party to enforce each and every such provision thereafter.

IN WITNESS WHEREOF, the parties hereto have executed this Profit Sharing Agreement as of the day and year first above written.

SAC ADVISORY GROUP, LLC
a California limited liability company

INVESTOR:
AVR Group, LLC

_____
Ryan Spiegel, Manager

Joe McNulty
_____
Print Name

_____
Signature

Trident Asset Management Inc.

Joe McNulty
_____
Print Name

_____
Signature

## PROFIT SHARING AGREEMENT

THIS AGREEMENT is made and entered into as of June 25, 2018 (the "**Effective Date**") by and between SAC ADVISORY GROUP, LLC, a California limited liability company ("**SAC**"), and the undersigned investor ("**Investor**").

## WITNESSETH

WHEREAS Distributor (defined below) is in the business of acquiring and licensing film distribution rights to third-party media companies for exclusive distribution in Latin American and African countries (the "**Distribution Rights**");

WHEREAS in connection with acquiring the Distribution Rights to a particular movie (the "**Licensed Movie**"), Distributor must pay a one-time non-refundable license fee (the "**Acquisition Fee**") to the holder of the movie's worldwide distribution rights which is generally the producer of the movie;

WHEREAS in order to assist the Distributor in acquiring the Distribution Rights, SAC provides the Distributor with the funds necessary to pay the Acquisition Fee (the "**SAC Advance**") in exchange for a participation interest in the funds received by Distributor in relicensing a portion of the Distribution Rights to a third-party media company ("**Media Company**").

WHEREAS Investor has agreed to provide SAC with the funds necessary to fund the SAC Advance in exchange for a profits interest in the Participation Fee (defined below) received by SAC in connection with the distributor licensing the Licensed Movie to a Media Company.

NOW THEREFORE, in consideration good and valuable consideration, the receipt of which is hereby mutually acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

**Section 1.**     **Definitions.**

   **1.1**     "**Distributor**" means 1INMM Capital, LLC, a California limited liability company

   **1.2**     "**Participation Fee**" means the fees paid by the distributor to SAC in connection with licensing the Licensed Movie to a Media Company.

**Section 2.**     **Investor Payment of Investment Amount.**

   Subject to the terms and conditions of this Agreement, Investor agrees to pay SAC the amount of $675,950 ("**Investment Amount**") in order to fund the SAC Advance for the purchase of the Distribution Rights of a Licensed Movie (WER).

**Section 3.**     **Payment of License Fee.**

   **3.1**     Upon the receipt of the Participation Fee received by SAC from the distributor, SAC shall immediately pay Investor an amount equal to an 18% return on the Investment Amount (the "**Preferred Return**"). The 18% preferred return will be paid as follows: First, 15% will be paid to Southwest Investment Funds, LLC and second, 3% paid to Trident Asset Management Inc. After the payment of the Preferred Return to Investor, SAC shall be entitled to retain the remaining amount of the Participation Fee. In the event that the amount of the Participation Fee is less than the amount necessary to provide Investor with the Preferred Return, Investor shall be paid the entire Participation Fee. Investor acknowledges that SAC has not guaranteed that Investor will actually receive the Preferred Return and Investor irrevocably

waives any and all claims against SAC in the event Investor receives less than the Preferred Return or realizes a complete loss of the Investment Amount in connection with the payment of the Investment Amount hereunder.

**3.2**     As collateral security for the payment of each participation fee with respect a particular Licensed Movie, Distributor has granted SAC a lien and continuing security interest in the Distribution Rights with respect to such Licensed Movie and proceeds of the foregoing and all general intangibles and contract rights related thereto, including without limitation, all revenues, License Fees, distributions, contract rights and other rights and interests that Distributor is, or may hereafter become, entitled to receive on account of such Licensed Movie (the "**Security Interest**").  SAC hereby agrees that Investor is entitled to the protections provided by the Security Interest and, therefore, SAC hereby assigns Investor an undivided interest in the Security Interest.  For avoidance of doubt, Investor's undivided interest in the Security Interest means that both SAC and Investor are joint holders of the Security Interest with identical rights and preferences with respect to any Licensed Movie subject to the Security Interest.

**Section 4.       Representations and Warranties.**  Investor makes the following representations and warranties in connection with executing this Agreement.

4.1     <u>Preexisting Relationship or Experience</u>.  He or she has a preexisting personal or business relationship with SAC, its manager, or by reason of his or her business or financial experience, or by reason of the business or financial experience of his or her financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by SAC or any affiliate or selling agent of SAC, he or she is capable of evaluating the risks and merits of paying the Investment Amount and of protecting his or her own interests in connection with such investment.

4.2     <u>Accredited Investor; Economic Risk</u>.  He or she represents that he or she is an Accredited Investor (as defined in Rule 501(a) of Regulation D of the Securities Act of 1933) and/or is financially able to bear the economic risk of paying the Investment Amount, including the total loss thereof.

4.3     <u>Investment Risk</u>.  He or she acknowledges that the payment of the Investment Amount is a speculative investment that involves a substantial degree of risk of loss by him or her of his or her entire investment, and that he or she understands and take full cognizance of the risk factors related to the investment made hereunder and that SAC may never receive any Participation Fee in attempting to sell the Distributions Rights to the Licensed Movie.

4.4     <u>No Other Warranties</u>.  He or she acknowledges that in connection with paying the Investment Amount no oral or written representations have been made by SAC, its manager or any officer, employee, agent other than representations made in this Agreement.

4.5     <u>Inquiry Opportunity</u>. He or she has been given the opportunity to ask questions of, and receive answers from, SAC concerning the terms and conditions of the Investment Amount in order to evaluate the merits and risks entering into this Agreement.

**Section 5.       Miscellaneous.**

5**.1**     This Agreement shall terminate upon the payment of all amounts due Investor hereunder.

5**.2**     All previous agreements and arrangements made by the parties and relating to the subject matter hereof are hereby superseded and this Agreement, there being no promises, terms, conditions or obligations, oral or written, express or implied, other than those contained herein.  This Agreement may only be amended by a written document signed by all parties.

5.3     This Agreement has been delivered in the State of California and shall be construed and interpreted in accordance with the laws thereof.  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.  If any legal action is necessary or brought in any court or arbitration proceeding, to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs, and necessary expenses, in addition to any other relief to which such party may be entitled.

5.4     No waiver of any term or condition of this Agreement shall be valid or binding on a party unless the same has been mutually assented to in writing by both parties.  The failure of a party to enforce at any time any of the provisions of this Agreement, or the failure to require at any time performance by the other party of any of the provisions of this Agreement, shall in no way be construed to be a present or future waiver of such provisions, nor in any way affect the ability of a party to enforce each and every such provision thereafter.

IN WITNESS WHEREOF, the parties hereto have executed this Profit Sharing Agreement as of the day and year first above written.

SAC ADVISORY GROUP, LLC                          INVESTOR:
a California limited liability company            SOUTHWEST INVESTMENT FUNDS, LLC


                                                  KAMBIZ ZOMORRODI
_____                 _____
Ryan Spiegel, Manager                             Print Name


                                                  _____
                                                  Signature



                                                  TRIDENT ASSET MANAGEMENT INC.


                                                  Joe McNulty, President
                                                  _____
                                                  Print Name


                                                  _____
                                                  Signature

                                                              6/26/2018 8:17:59 PM PDT

3

## PROFIT SHARING AGREEMENT

THIS AGREEMENT is made and entered into as of June 25, 2018 (the "**Effective Date**") by and between SAC ADVISORY GROUP, LLC, a California limited liability company ("**SAC**"), and the undersigned investor ("**Investor**").

## WITNESSETH

WHEREAS Distributor (defined below) is in the business of acquiring and licensing film distribution rights to third-party media companies for exclusive distribution in Latin American and African countries (the "**Distribution Rights**");

WHEREAS in connection with acquiring the Distribution Rights to a particular movie (the "**Licensed Movie**"), Distributor must pay a one-time non-refundable license fee (the "**Acquisition Fee**") to the holder of the movie's worldwide distribution rights which is generally the producer of the movie;

WHEREAS in order to assist the Distributor in acquiring the Distribution Rights, SAC provides the Distributor with the funds necessary to pay the Acquisition Fee (the "**SAC Advance**") in exchange for a participation interest in the funds received by Distributor in relicensing a portion of the Distribution Rights to a third-party media company ("**Media Company**").

WHEREAS Investor has agreed to provide SAC with the funds necessary to fund the SAC Advance in exchange for a profits interest in the Participation Fee (defined below) received by SAC in connection with the distributor licensing the Licensed Movie to a Media Company.

NOW THEREFORE, in consideration good and valuable consideration, the receipt of which is hereby mutually acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

**Section 1.**    **Definitions.**

    **1.1**    "**Distributor**" means 1INMM Capital, LLC, a California limited liability company

    **1.2**    "**Participation Fee**" means the fees paid by the distributor to SAC in connection with licensing the Licensed Movie to a Media Company.

**Section 2.**    **Investor Payment of Investment Amount.**

    Subject to the terms and conditions of this Agreement, Investor agrees to pay SAC the amount of $680,550 ("**Investment Amount**") in order to fund the SAC Advance for the purchase of the Distribution Rights of a Licensed Movie (Red Snake).

**Section 3.**    **Payment of License Fee.**

    **3.1**    Upon the receipt of the Participation Fee received by SAC from the distributor, SAC shall immediately pay Investor an amount equal to an 18% return on the Investment Amount (the "**Preferred Return**"). The 18% preferred return will be paid as follows: First, 15% will be paid to Southwest Investment Funds, LLC and second, 3% paid to Trident Asset Management Inc. After the payment of the Preferred Return to Investor, SAC shall be entitled to retain the remaining amount of the Participation Fee. In the event that the amount of the Participation Fee is less than the amount necessary to provide Investor with the Preferred Return, Investor shall be paid the entire Participation Fee. Investor acknowledges that SAC has not guaranteed that Investor will actually receive the Preferred Return and Investor irrevocably

DocuSign Envelope ID: F13BE781-20EE-47E9-975E-FE9375E856A9

waives any and all claims against SAC in the event Investor receives less than the Preferred Return or realizes a complete loss of the Investment Amount in connection with the payment of the Investment Amount hereunder.

      **3.2**    As collateral security for the payment of each participation fee with respect a particular Licensed Movie, Distributor has granted SAC a lien and continuing security interest in the Distribution Rights with respect to such Licensed Movie and proceeds of the foregoing and all general intangibles and contract rights related thereto, including without limitation, all revenues, License Fees, distributions, contract rights and other rights and interests that Distributor is, or may hereafter become, entitled to receive on account of such Licensed Movie (the "**Security Interest**").  SAC hereby agrees that Investor is entitled to the protections provided by the Security Interest and, therefore, SAC hereby assigns Investor an undivided interest in the Security Interest.  For avoidance of doubt, Investor's undivided interest in the Security Interest means that both SAC and Investor are joint holders of the Security Interest with identical rights and preferences with respect to any Licensed Movie subject to the Security Interest.

**Section 4.**    **Representations and Warranties.**  Investor makes the following representations and warranties in connection with executing this Agreement.

      4.1    <u>Preexisting Relationship or Experience</u>.  He or she has a preexisting personal or business relationship with SAC, its manager, or by reason of his or her business or financial experience, or by reason of the business or financial experience of his or her financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by SAC or any affiliate or selling agent of SAC, he or she is capable of evaluating the risks and merits of paying the Investment Amount and of protecting his or her own interests in connection with such investment.

      4.2    <u>Accredited Investor; Economic Risk</u>.  He or she represents that he or she is an Accredited Investor (as defined in Rule 501(a) of Regulation D of the Securities Act of 1933) and/or is financially able to bear the economic risk of paying the Investment Amount, including the total loss thereof.

      4.3    <u>Investment Risk</u>.  He or she acknowledges that the payment of the Investment Amount is a speculative investment that involves a substantial degree of risk of loss by him or her of his or her entire investment, and that he or she understands and take full cognizance of the risk factors related to the investment made hereunder and that SAC may never receive any Participation Fee in attempting to sell the Distributions Rights to the Licensed Movie.

      4.4    <u>No Other Warranties</u>.  He or she acknowledges that in connection with paying the Investment Amount no oral or written representations have been made by SAC, its manager or any officer, employee, agent other than representations made in this Agreement.

      4.5    <u>Inquiry Opportunity</u>. He or she has been given the opportunity to ask questions of, and receive answers from, SAC concerning the terms and conditions of the Investment Amount in order to evaluate the merits and risks entering into this Agreement.

**Section 5.**    **Miscellaneous.**

      5**.1**    This Agreement shall terminate upon the payment of all amounts due Investor hereunder.

      5**.2**    All previous agreements and arrangements made by the parties and relating to the subject matter hereof are hereby superseded and this Agreement, there being no promises, terms, conditions or obligations, oral or written, express or implied, other than those contained herein.  This Agreement may only be amended by a written document signed by all parties.

5.**3**     This Agreement has been delivered in the State of California and shall be construed and interpreted in accordance with the laws thereof.  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.  If any legal action is necessary or brought in any court or arbitration proceeding, to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs, and necessary expenses, in addition to any other relief to which such party may be entitled.

5.**4**     No waiver of any term or condition of this Agreement shall be valid or binding on a party unless the same has been mutually assented to in writing by both parties.  The failure of a party to enforce at any time any of the provisions of this Agreement, or the failure to require at any time performance by the other party of any of the provisions of this Agreement, shall in no way be construed to be a present or future waiver of such provisions, nor in any way affect the ability of a party to enforce each and every such provision thereafter.

        IN WITNESS WHEREOF, the parties hereto have executed this Profit Sharing Agreement as of the day and year first above written.

SAC ADVISORY GROUP, LLC                          INVESTOR:
a California limited liability company                   SOUTHWEST INVESTMENT FUNDS, LLC

*Ryan Spiegel*                                            KAMBIZ ZOMORRODI
1B173702EC924C7                                          _____
_____                          Print Name
Ryan Spiegel, Manager

                                                         [signature]
                                                         1C29E5B57E9642B...
                                                         _____
                                                         Signature


                                                         TRIDENT ASSET MANAGEMENT INC.


                                                         Joe McNulty, President
                                                         _____
                                                         Print Name


                                                         *joemcnulty*
                                                         E73E3C014A78473...
                                                         _____
                                                         Signature

                                                         6/26/2018 8:17:59 PM PDT

3

DocuSign Envelope ID: F138E781-20EE-47F0-87EE-5E027EE56A9

# PROFIT SHARING AGREEMENT

THIS AGREEMENT is made and entered into as of June 25, 2018 (the "**Effective Date**") by and between SAC ADVISORY GROUP, LLC, a California limited liability company ("**SAC**"), and the undersigned investor ("**Investor**").

## WITNESSETH

WHEREAS Distributor (defined below) is in the business of acquiring and licensing film distribution rights to third-party media companies for exclusive distribution in Latin American and African countries (the "**Distribution Rights**");

WHEREAS in connection with acquiring the Distribution Rights to a particular movie (the "**Licensed Movie**"), Distributor must pay a one-time non-refundable license fee (the "**Acquisition Fee**") to the holder of the movie's worldwide distribution rights which is generally the producer of the movie;

WHEREAS in order to assist the Distributor in acquiring the Distribution Rights, SAC provides the Distributor with the funds necessary to pay the Acquisition Fee (the "**SAC Advance**") in exchange for a participation interest in the funds received by Distributor in relicensing a portion of the Distribution Rights to a third-party media company ("**Media Company**").

WHEREAS Investor has agreed to provide SAC with the funds necessary to fund the SAC Advance in exchange for a profits interest in the Participation Fee (defined below) received by SAC in connection with the distributor licensing the Licensed Movie to a Media Company.

NOW THEREFORE, in consideration good and valuable consideration, the receipt of which is hereby mutually acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

**Section 1.**    **Definitions.**

    **1.1**    "**Distributor**" means 1INMM Capital, LLC, a California limited liability company

    **1.2**    "**Participation Fee**" means the fees paid by the distributor to SAC in connection with licensing the Licensed Movie to a Media Company.

**Section 2.**    **Investor Payment of Investment Amount.**

    Subject to the terms and conditions of this Agreement, Investor agrees to pay SAC the amount of $695,200 ("**Investment Amount**") in order to fund the SAC Advance for the purchase of the Distribution Rights of a Licensed Movie (Brick Mansions).

**Section 3.**    **Payment of License Fee.**

    **3.1**    Upon the receipt of the Participation Fee received by SAC from the distributor, SAC shall immediately pay Investor an amount equal to an 18% return on the Investment Amount (the "**Preferred Return**"). The 18% preferred return will be paid as follows: First, 15% will be paid to Southwest Investment Funds, LLC and second, 3% paid to Trident Asset Management Inc. After the payment of the Preferred Return to Investor, SAC shall be entitled to retain the remaining amount of the Participation Fee. In the event that the amount of the Participation Fee is less than the amount necessary to provide Investor with the Preferred Return, Investor shall be paid the entire Participation Fee. Investor acknowledges that SAC has not guaranteed that Investor will actually receive the Preferred Return and Investor irrevocably

waives any and all claims against SAC in the event Investor receives less than the Preferred Return or realizes a complete loss of the Investment Amount in connection with the payment of the Investment Amount hereunder.

**3.2**      As collateral security for the payment of each participation fee with respect a particular Licensed Movie, Distributor has granted SAC a lien and continuing security interest in the Distribution Rights with respect to such Licensed Movie and proceeds of the foregoing and all general intangibles and contract rights related thereto, including without limitation, all revenues, License Fees, distributions, contract rights and other rights and interests that Distributor is, or may hereafter become, entitled to receive on account of such Licensed Movie (the "**Security Interest**").   SAC hereby agrees that Investor is entitled to the protections provided by the Security Interest and, therefore, SAC hereby assigns Investor an undivided interest in the Security Interest.  For avoidance of doubt, Investor's undivided interest in the Security Interest means that both SAC and Investor are joint holders of the Security Interest with identical rights and preferences with respect to any Licensed Movie subject to the Security Interest.

**Section 4.       Representations and Warranties.**  Investor makes the following representations and warranties in connection with executing this Agreement.

4.1      <u>Preexisting Relationship or Experience</u>.  He or she has a preexisting personal or business relationship with SAC, its manager, or by reason of his or her business or financial experience, or by reason of the business or financial experience of his or her financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by SAC or any affiliate or selling agent of SAC, he or she is capable of evaluating the risks and merits of paying the Investment Amount and of protecting his or her own interests in connection with such investment.

4.2      <u>Accredited Investor; Economic Risk</u>.  He or she represents that he or she is an Accredited Investor (as defined in Rule 501(a) of Regulation D of the Securities Act of 1933) and/or is financially able to bear the economic risk of paying the Investment Amount, including the total loss thereof.

4.3      <u>Investment Risk</u>.  He or she acknowledges that the payment of the Investment Amount is a speculative investment that involves a substantial degree of risk of loss by him or her of his or her entire investment, and that he or she understands and take full cognizance of the risk factors related to the investment made hereunder and that SAC may never receive any Participation Fee in attempting to sell the Distributions Rights to the Licensed Movie.

4.4      <u>No Other Warranties</u>.  He or she acknowledges that in connection with paying the Investment Amount no oral or written representations have been made by SAC, its manager or any officer, employee, agent other than representations made in this Agreement.

4.5      <u>Inquiry Opportunity</u>. He or she has been given the opportunity to ask questions of, and receive answers from, SAC concerning the terms and conditions of the Investment Amount in order to evaluate the merits and risks entering into this Agreement.

**Section 5.       Miscellaneous.**

5**.1**      This Agreement shall terminate upon the payment of all amounts due Investor hereunder.

5**.2**      All previous agreements and arrangements made by the parties and relating to the subject matter hereof are hereby superseded and this Agreement, there being no promises, terms, conditions or

obligations, oral or written, express or implied, other than those contained herein.  This Agreement may only be amended by a written document signed by all parties.

**5.3**     This Agreement has been delivered in the State of California and shall be construed and interpreted in accordance with the laws thereof.  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.  If any legal action is necessary or brought in any court or arbitration proceeding, to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs, and necessary expenses, in addition to any other relief to which such party may be entitled.

**5.4**     No waiver of any term or condition of this Agreement shall be valid or binding on a party unless the same has been mutually assented to in writing by both parties.  The failure of a party to enforce at any time any of the provisions of this Agreement, or the failure to require at any time performance by the other party of any of the provisions of this Agreement, shall in no way be construed to be a present or future waiver of such provisions, nor in any way affect the ability of a party to enforce each and every such provision thereafter.

IN WITNESS WHEREOF, the parties hereto have executed this Profit Sharing Agreement as of the day and year first above written.

SAC ADVISORY GROUP, LLC
a California limited liability company

*Ryan Spiegel*
1B173702EC924C7...
_____
Ryan Spiegel, Manager

INVESTOR:
SOUTHWEST INVESTMENT FUNDS, LLC

KAMBIZ ZOMORRODI
_____
Print Name

1C29E5B57E9642B...
_____
Signature

TRIDENT ASSET MANAGEMENT INC.

Joe McNulty, President
_____
Print Name

*joemcnulty*
572E3C014A78473...
_____
Signature

6/26/2018 8:17:59 PM PDT

DocuSign Envelope ID: F13BE781-20EE-47F0-875B-FF0275EB56A9

## PROFIT SHARING AGREEMENT

THIS AGREEMENT is made and entered into as of June 25, 2018 (the "**Effective Date**") by and between SAC ADVISORY GROUP, LLC, a California limited liability company ("**SAC**"), and the undersigned investor ("**Investor**").

## WITNESSETH

WHEREAS Distributor (defined below) is in the business of acquiring and licensing film distribution rights to third-party media companies for exclusive distribution in Latin American and African countries (the "**Distribution Rights**");

WHEREAS in connection with acquiring the Distribution Rights to a particular movie (the "**Licensed Movie**"), Distributor must pay a one-time non-refundable license fee (the "**Acquisition Fee**") to the holder of the movie's worldwide distribution rights which is generally the producer of the movie;

WHEREAS in order to assist the Distributor in acquiring the Distribution Rights, SAC provides the Distributor with the funds necessary to pay the Acquisition Fee (the "**SAC Advance**") in exchange for a participation interest in the funds received by Distributor in relicensing a portion of the Distribution Rights to a third-party media company ("**Media Company**").

WHEREAS Investor has agreed to provide SAC with the funds necessary to fund the SAC Advance in exchange for a profits interest in the Participation Fee (defined below) received by SAC in connection with the distributor licensing the Licensed Movie to a Media Company.

NOW THEREFORE, in consideration good and valuable consideration, the receipt of which is hereby mutually acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

**Section 1.**     **Definitions.**

      **1.1**     "**Distributor**" means 1INMM Capital, LLC, a California limited liability company

      **1.2**     "**Participation Fee**" means the fees paid by the distributor to SAC in connection with licensing the Licensed Movie to a Media Company.

**Section 2.**     **Investor Payment of Investment Amount.**

Subject to the terms and conditions of this Agreement, Investor agrees to pay SAC the amount of $640,000 ("**Investment Amount**") in order to fund the SAC Advance for the purchase of the Distribution Rights of a Licensed Movie (Everly).

**Section 3.**     **Payment of License Fee.**

      **3.1**     Upon the receipt of the Participation Fee received by SAC from the distributor, SAC shall immediately pay Investor an amount equal to an 18% return on the Investment Amount (the "**Preferred Return**"). The 18% preferred return will be paid as follows: First, 15% will be paid to Southwest Investment Funds, LLC and second, 3% paid to Trident Asset Management Inc. After the payment of the Preferred Return to Investor, SAC shall be entitled to retain the remaining amount of the Participation Fee. In the event that the amount of the Participation Fee is less than the amount necessary to provide Investor with the Preferred Return, Investor shall be paid the entire Participation Fee. Investor acknowledges that SAC has not guaranteed that Investor will actually receive the Preferred Return and Investor irrevocably

DocuSign Envelope ID: F13BE781-20EE-47E0-975E-5E0275EB56A9

waives any and all claims against SAC in the event Investor receives less than the Preferred Return or realizes a complete loss of the Investment Amount in connection with the payment of the Investment Amount hereunder.

**3.2**    As collateral security for the payment of each participation fee with respect a particular Licensed Movie, Distributor has granted SAC a lien and continuing security interest in the Distribution Rights with respect to such Licensed Movie and proceeds of the foregoing and all general intangibles and contract rights related thereto, including without limitation, all revenues, License Fees, distributions, contract rights and other rights and interests that Distributor is, or may hereafter become, entitled to receive on account of such Licensed Movie (the "**Security Interest**").  SAC hereby agrees that Investor is entitled to the protections provided by the Security Interest and, therefore, SAC hereby assigns Investor an undivided interest in the Security Interest.  For avoidance of doubt, Investor's undivided interest in the Security Interest means that both SAC and Investor are joint holders of the Security Interest with identical rights and preferences with respect to any Licensed Movie subject to the Security Interest.

**Section 4.    Representations and Warranties.**  Investor makes the following representations and warranties in connection with executing this Agreement.

4.1    <u>Preexisting Relationship or Experience</u>.  He or she has a preexisting personal or business relationship with SAC, its manager, or by reason of his or her business or financial experience, or by reason of the business or financial experience of his or her financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by SAC or any affiliate or selling agent of SAC, he or she is capable of evaluating the risks and merits of paying the Investment Amount and of protecting his or her own interests in connection with such investment.

4.2    <u>Accredited Investor; Economic Risk</u>.  He or she represents that he or she is an Accredited Investor (as defined in Rule 501(a) of Regulation D of the Securities Act of 1933) and/or is financially able to bear the economic risk of paying the Investment Amount, including the total loss thereof.

4.3    <u>Investment Risk</u>.  He or she acknowledges that the payment of the Investment Amount is a speculative investment that involves a substantial degree of risk of loss by him or her of his or her entire investment, and that he or she understands and take full cognizance of the risk factors related to the investment made hereunder and that SAC may never receive any Participation Fee in attempting to sell the Distributions Rights to the Licensed Movie.

4.4    <u>No Other Warranties</u>.  He or she acknowledges that in connection with paying the Investment Amount no oral or written representations have been made by SAC, its manager or any officer, employee, agent other than representations made in this Agreement.

4.5    <u>Inquiry Opportunity</u>. He or she has been given the opportunity to ask questions of, and receive answers from, SAC concerning the terms and conditions of the Investment Amount in order to evaluate the merits and risks entering into this Agreement.

**Section 5.    Miscellaneous.**

5.**1**    This Agreement shall terminate upon the payment of all amounts due Investor hereunder.

5.**2**    All previous agreements and arrangements made by the parties and relating to the subject matter hereof are hereby superseded and this Agreement, there being no promises, terms, conditions or obligations, oral or written, express or implied, other than those contained herein.  This Agreement may only be amended by a written document signed by all parties.

2

5.**3**     This Agreement has been delivered in the State of California and shall be construed and interpreted in accordance with the laws thereof.  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.  If any legal action is necessary or brought in any court or arbitration proceeding, to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs, and necessary expenses, in addition to any other relief to which such party may be entitled.

5.**4**     No waiver of any term or condition of this Agreement shall be valid or binding on a party unless the same has been mutually assented to in writing by both parties.  The failure of a party to enforce at any time any of the provisions of this Agreement, or the failure to require at any time performance by the other party of any of the provisions of this Agreement, shall in no way be construed to be a present or future waiver of such provisions, nor in any way affect the ability of a party to enforce each and every such provision thereafter.

        IN WITNESS WHEREOF, the parties hereto have executed this Profit Sharing Agreement as of the day and year first above written.

SAC ADVISORY GROUP, LLC
a California limited liability company

_DocuSigned by:_
*Ryan Spiegel*
1B173702EC924C7...
_____
Ryan Spiegel, Manager

INVESTOR:
SOUTHWEST INVESTMENT FUNDS, LLC


KAMBIZ ZOMORRODI
_____
Print Name

_DocuSigned by:_
1C29E5B57E9642B...
_____
Signature


TRIDENT ASSET MANAGEMENT INC.


Joe McNulty, President
_____
Print Name

_DocuSigned by:_
*joemcnulty*
E73E3C014A78473...
_____
Signature
                6/26/2018 8:17:59 PM PDT