# EXHIBIT 2A

Terence G. Banich (SBN 212173)
terence.banich@katten.com
Allison E. Yager (*pro hac vice*)
allison.yager@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

*Attorneys for the Receiver*
Michele Vives

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:21-cv-02927-CAS-PD |
| Plaintiff, | **NOTICE OF MOTION AND MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING SETTLEMENT WITH TYLER CROOKSTON AND FOR RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| ZACHARY J. HORWITZ and 1inMM CAPITAL, LLC, | |
| Defendants. | |
| | Date: July 10, 2023 |
| | Time: 10:00 a.m. PT |
| | Judge: Hon. Christina A. Snyder |
| | Courtroom: 8D |

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on July 10, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8D, located at the United States Courthouse, 350 West First Street, Los Angeles, California 90012, Michele Vives, not individually, but solely as the federal equity receiver (the "Receiver") of defendant of 1inMM Capital, LLC and its subsidiaries, affiliates and over the assets more particularly described in the *Order on Appointment of Permanent Receiver*, dated January 14, 2022 [ECF #70] (the "Receiver Order"), will and hereby does move the Court for entry of an order approving the settlement with Tyler Crookston and for related relief (the "Motion").

The Motion is based on the Memorandum of Points and Authorities below and is supported by: (a) the *Settlement Agreement and Mutual Release*, dated March 16, 2023, copy attached as **Exhibit 1**; (b) the *Declaration of Michele Vives*, dated May 26, 2023 ("Vives Decl."), copy attached as **Exhibit 2**; (c) the *Declaration of Margaret Nelson*, dated May 26, 2023 ("Nelson Decl."), copy attached as **Exhibit 3**; and (d) the *Declaration of Alexander Loftus*, dated May 26, 2023 ("Loftus Decl."), copy attached as **Exhibit 4**.

This Motion is made following the Local Rule 7-3 conference of counsel which took place on May 26, 2023. **No party requests a hearing on the Motion.**

Dated: May 26, 2023

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By: /s/*Terence G. Banich*
Terence G. Banich

*Attorneys for the Receiver*
Michele Vives

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

# <u>TABLE OF CONTENTS</u>

Table of Authorities .................................................................................................iii

Factual Background ................................................................................................. 1

    A.    The Receiver; investigation of transfers ............................................. 1

    B.    The Investor Actions; the Mediation ................................................... 1

    C.    The Transfers ..................................................................................... 2

    D.    The Settlement ................................................................................... 2

Legal Standards ...................................................................................................... 5

Argument ................................................................................................................ 7

I.    The Settlement is fair, equitable and in the best interests of the Estate. ................................................................................................................ 7

    A.    Probability of success ........................................................................ 8

        1.    UVTA ..................................................................................... 8

        2.    Defenses ................................................................................. 9

    B.    Collection difficulties ........................................................................ 12

    C.    Complexity/expense .......................................................................... 12

    D.    Creditors ........................................................................................... 13

II.    The Court should approve the Bar Order. ................................................... 13

    A.    The Court has the power to enter the Bar Order. ............................... 13

    B.    The Bar Order is fair, just, equitable and in the best interest of the Estate. ....................................................................... 14

    C.    The Bar Order is necessary to the Settlement. ................................... 16

III.    The Court should approve the Administrative Claims................................. 17

Notice to Creditors ............................................................................................... 21

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3   *Baten v. Mich. Logistics, Inc.*, 2023 WL 2440244 (C.D. Cal. Mar. 8, 2023) ......... 18

4   *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417 (B.A.P. 9th Cir. 1997) .................... 7

5   *Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008) .................................................. 8-10

6   *Donell v. Mojtahedian*, 976 F. Supp. 2d 1183 (C.D. Cal. 2013) ............................ 9

7   *Fed. Trade Comm'n v. Cardiff*, 2020 WL 9938072 (C.D. Cal. Mar. 10, 2020) ..... 22

8   *Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.2d 1107 (9th Cir.
    1999) ........................................................................................................................ 5
9

10  *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361
    (7th Cir. 1998) ....................................................................................................... 20

11  *Gill v. Blessing*, 2014 WL 12573667 (C.D. Cal. Oct. 6, 2014) .............................. 9

12  *Gordon v. Dadante*, 2008 WL 1805787 (N.D. Ohio Apr. 18, 2008), *aff'd*, 336 F.
    App'x 540 (6th Cir. 2009) ..................................................................................... 17
13

    *Gordon v. Dadante*, 336 F. App'x 540 (6th Cir. 2009) .......................................... 5
14

15  *Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020) .................................. 21

16  *In re Bondanelli*, 2020 WL 1304140 (B.A.P. 9th Cir. Mar. 18, 2020) .................. 13

17  *In re Douglas J. Roger, M.D., Inc., APC*, 393 F. Supp. 3d 940 (C.D.
    Cal. 2019) .......................................................................................................... 7, 20

18  *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) ............... 20

19  *In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............ 20

20  *In re Incomnet, Inc.*, 463 F.3d 1064 (9th Cir. 2006) ............................................. 10

21  *In re ISE Corp.*, 2012 WL 1377085 (Bankr. S.D. Cal. Apr. 13, 2012) .................. 11

22  *In re Lahijani*, 325 B.R. 282 (B.A.P. 9th Cir. 2005) ........................................ 7, 21

23  *In re Law*, 308 F. App'x 152 (9th Cir. 2009) ....................................................... 12

24  *In re MGS Mktg.*, 111 B.R. 264 (B.A.P. 9th Cir. 1990) ......................................... 7

25  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................... 20

26  *In re Open Med. Inst., Inc.*, 639 B.R. 169 (B.A.P. 9th Cir. 2022) ..................... 7, 11

27  *In re Slatkin*, 525 F.3d 805 (9th Cir. 2008) ........................................................... 9

28  *In re TBH19, LLC*, 2022 WL 16782946 (B.A.P. 9th Cir. Nov. 8, 2022) ........... 7, 12

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

*In re Tidwell*, 2018 WL 1162511 (Bankr. C.D. Cal. Mar. 1, 2018) ........................ 13

*In re Walldesign, Inc.*, 872 F.3d 954 (9th Cir. 2017) ..........................................10-11

*In re Woodson*, 839 F.2d 610 (9th Cir. 1988) ............................................................ 6

*Jenson v. First Tr. Corp.*, 2008 WL 11338161 (C.D. Cal. June 9, 2008) .............. 20

*Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543 (6th Cir. 2006) .................. 5-6, 21

*Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377 (9th Cir. 1986) ...................... 6

*Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950) ................................ 21

*Muñoz v. United States Dep't of State*, 50 F.4th 906 (9th Cir. 2022) .................... 21

*Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508 (N.D. Cal. 2008) ...................... 21

*Rodriguez v. Seabreeze Jetlev LLC*, 2022 WL 3327925 (N.D. Cal. Aug. 11, 2022) ............................................................................................................ 17

*RPB SA v. Hyla, Inc.*, 2021 WL 4980092 (C.D. Cal. June 24, 2021) ...................... 8

*SEC v. Aequitas Mgmt., LLC*, 2020 WL 7318305 (D. Or. Nov. 10, 2020) ............. 14

*SEC v. Adams*, 2021 WL 8016843 (S.D. Miss. Feb. 25, 2021) ................. 14-15, 22

*SEC v. Alleca*, 2021 WL 4843987 (N.D. Ga. Sept. 9, 2021), *vacated on other grounds*, 2022 WL 16631325 (11th Cir. Nov. 2, 2022) ..................................... 14-17

*SEC v. Cap. Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005) ........................ 6

*SEC v. Cap. Cove Bancorp LLC*, 2016 WL 11752897 (C.D. Cal. Dec. 15, 2016) ................................................................................................................ 11, 18

*SEC v. Champion-Cain*, 2022 WL 126114 (S.D. Cal. Jan. 13, 2022) .................... 6

*SEC v. DeYoung*, 850 F.3d 1172 (10th Cir. 2017) ...........................................14-16

*SEC v. Hardy*, 803 F.2d 1034 (9th Cir. 1986) ........................................................5, 13

*SEC v. Hickey*, 322 F.3d 1123 (9th Cir. 2003) ........................................................ 13

*SEC v. Kaleta*, 530 F. App'x 360 (5th Cir. 2013) ...........................................6, 14-16

*SEC v. Nadel*, 2012 WL 12910648 (M.D. Fla. Feb. 10, 2012) ................... 14-15, 22

*SEC v. Pritzker Levine LLP*, 2022 WL 671020 (9th Cir. Mar. 7, 2022) ...........18-20

*SEC v. Stanford Int'l Bank, Ltd.*, 2017 WL 9989250 (N.D. Tex. Aug. 23, 2017), *aff'd sub nom. Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019) ................................................................................ 14, 16

*SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830 (5th Cir. 2019) .............................. 6

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

*SEC v. Total Wealth Mgmt., Inc.*, 2019 WL 13179068 (S.D. Cal. Sept. 18, 2019) ...................................................................................6-8, 12

*SEC v. Wencke*, 622 F.2d 1363 (9th Cir. 1980)....................................................... 13

*Vincent v. Hughes Air W., Inc.*, 557 F.2d 759 (9th Cir. 1977) ................................ 18

*Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019)..................14-16


<u>Statutes, Rules and Other</u>

Cal. Civ. Code § 3439.04 ........................................................................... 2, 8

Cal. Civ. Code § 3439.07 ................................................................................ 8

Cal. Civ. Code § 3439.08 ................................................................... 2, 8, 10

L.R. 66-8 ................................................................................................... 6

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

## MEMORANDUM OF POINTS AND AUTHORITIES

### Factual Background

#### A.    The Receiver; investigation of transfers

On April 5, 2021, the SEC commenced this action against Zachary J. Horwitz ("Horwitz") and 1inMM Capital, LLC ("1inMM"; together, "Defendants"), alleging that they committed an offering fraud and Ponzi scheme in violation of the federal securities laws ("1inMM Ponzi Scheme"). On January 14, 2022, the Court entered the Receiver Order, appointing Ms. Vives as receiver of 1inMM and its subsidiaries and affiliates, as well as over the assets that are attributable to funds derived from investors or clients of Defendants or were fraudulently transferred by Defendants (the "Estate"). The Receiver Order authorizes the Receiver to prosecute claims.

#### B.    The Investor Actions; the Mediation

The Receiver determined that Horwitz raised investor funds mostly using certain entities that pooled large amounts of money from many individual investors for upstream investment in 1inMM. (Vives Decl. ¶9.) The largest of these entities was JJMT Capital, LLC ("JJMT"), of which Tyler Crookston was a member until early 2018. (*Id.*)

Several investors commenced lawsuits alleging claims associated with Defendants' scheme, including against JJMT and Crookston ("Investor Actions"). (*Id.* ¶10.) The plaintiffs in the Investor Actions ("Investor Plaintiffs") claimed millions of dollars generally asserting that Crookston and the other defendants are liable to them in connection with the 1inMM Ponzi Scheme ("Investor Claims"). (*Id.* ¶11.) Crookston asserted several defenses that could have resulted in the Investor Plaintiffs taking nothing. (*Id.*; Nelson Decl. ¶5.)

Counsel for the Investor Plaintiffs worked with the Receiver because she had claims against the same defendants, while the defendants expressed interest in settling the Receiver's potential claims against them, but only if the Receiver could concurrently resolve or eliminate the Investor Actions. (Vives Decl. ¶12.) After

months of negotiations, the Receiver and those litigants agreed to mediate, selecting retired U.S. Magistrate Judge Sidney I. Schenkier as mediator. (*Id.* ¶13.)

## C. The Transfers

As part of the above events, Crookston and his counsel, Margaret Nelson of Foley & Lardner LLP, worked cooperatively with the Receiver. (*Id.* ¶14.) Crookston produced a large volume of financial documents and related information. (*Id.*) The Receiver determined that Crookston received transfers from 1inMM from January 2016-November 2019 representing total, pre-tax net winnings of $6,693,255.17 ("Transfers"). (*Id.* ¶15, **Exhibit 2-1**.) The Transfers constitute Crookston's net winnings from investing in the 1inMM Ponzi Scheme, plus commissions he received. (*Id.*)

The Receiver asserted that she may avoid and recover the Transfers as actual fraudulent transfers pursuant to §3439.04(a)(1) of the California Uniform Voidable Transactions Act, Cal. Civ. Code §3439 *et seq.* ("UVTA") ("Receiver Claims"). (Vives Decl. ¶16.) As the Receiver contended, 1inMM and Horwitz made the Transfers with the actual intent to hinder, delay, or defraud their creditors, as Horwitz pled guilty and admitted that he used 1inMM to operate a Ponzi scheme, which conclusively establishes intent for purposes of a UVTA actual fraudulent transfer claim. (*Id.*) The Receiver argued that she could recover the Transfers from Crookston under UVTA §3439.08(b)(1)(A) as their first transferee, because even though 1inMM made many of the Transfers to him indirectly through JJMT, JJMT was a mere conduit that had no dominion over the money 1inMM transferred to it. (*Id.* ¶17.) Crookston asserted several defenses. (*See infra* Part I.A.2.)

## D. The Settlement

Following difficult negotiations, the Receiver and the Investor Plaintiffs reached a settlement with Crookston on the eve of the mediation whereby Crookston agreed to pay $3,850,000 to the Estate ("Settlement Payment") to resolve the Investor Claims and the Receiver Claims ("Settlement"). (Vives Decl. ¶18.) The

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Settlement is documented in the *Settlement Agreement and Mutual Release* ("Settlement Agreement") (**Exhibit 1**). (*Id.*)

The parties to the Settlement Agreement are the Receiver, Crookston and all Investor Plaintiffs who have sued or threatened to sue Crookston: (a) 42 persons/entities represented by Loftus & Eisenberg, Ltd. who invested in JJMT, listed on Schedule 1 to the Settlement Agreement ("L&E Investors"); (b) Nalpak I LP, Nalpak II LP, Nalpak Enterprises LLC and Peter Xilas ("Nalpak Investors"); and (c) Steven and Matthew Aronson ("Aronson Investors"). (*Id.* ¶19.)

The parties agreed to exchange mutual general releases of any claims arising out of or relating to the 1inMM Ponzi Scheme, and to ask the Court to enter a bar order permanently enjoining all persons and non-governmental units from suing Crookston on any claim arising out of or relating to the 1inMM Ponzi Scheme ("Bar Order"). (*Id.* ¶20.) Additionally, because the Investor Plaintiffs agreed that the entire Settlement Payment should be paid into the Estate for the benefit of all creditors, the Receiver has concluded that the Investor Plaintiffs' counsel created a common fund from which a negotiated amount of their fees—totaling $1,000,000—should be paid. (*Id.*) Finally, the validity of the Settlement Agreement is subject to the condition precedent that the Court approves it, including the Bar Order. (*Id.*)

The Receiver believes the Settlement is in the best interest of the Estate and its creditors—the net losing investors in the 1inMM Ponzi Scheme. (*Id.* ¶21.) The Settlement Payment constitutes a substantial recovery for the Estate without the expense and risk of litigation, and the Settlement represents an equitable, good-faith resolution of both the Receiver Claims and Investor Claims. (*Id.*) While the Receiver and the Investor Plaintiffs were confident in their respective claims, the risk of an adverse result always loomed. Crookston asserted multiple meaningful defenses to all claims asserted against him that, if successful, may have resulted in the Receiver and Investor Plaintiffs recovering nothing. (*Id.* ¶22.) The Settlement thus avoids

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

protracted and expensive litigation, thereby avoiding litigation risk and conserving Estate resources. (*Id.*)

The Settlement Payment—57% of the total Transfers—exceeds what Crookston would have paid to resolve the Receiver Claims alone without a bar order. (*Id.* ¶23; Nelson Decl. ¶6.) Crookston simultaneously resolved the Investor Claims, so the efforts of Investor Plaintiffs' counsel undoubtedly enhanced the final settlement value, all of which is flowing to the Estate. (Vives Decl. ¶23.) A critical component of the settlement consideration is that the Court enters a "bar order" in Crookston's favor—essentially a permanent injunction barring any other person/entity from suing him on any claim pertaining to the 1inMM Ponzi Scheme, which is a common component of these sorts of settlements. And because the Investor Plaintiffs agreed that Crookston should remit the entirety of the Settlement Payment to the Estate, the Investor Plaintiffs' counsel helped create a common fund from which a portion of their attorney's fees may be paid. (*Id.*)

Moreover, the Settlement resolves a particularly complex multiparty dispute. (*Id.* ¶24; Nelson Decl. ¶7.) The Investor Claims and Receiver Claims arise from a common nucleus of operative facts—the 1inMM Ponzi Scheme—but the litigants' objectives were not necessarily the same. (Vives Decl. ¶24.) Specifically, the Investor Plaintiffs pursued Crookston to remedy their own personal damages, while the Receiver aimed to recover funds for the benefit of *all* Estate creditors. (*Id.*) Those goals often conflicted, resulting in disagreements between the Receiver and Investor Plaintiffs about settlement terms and how to proceed. (*Id.*)

The Investor Actions are, nonetheless, derivative of the Receiver Claims and compete with the Receiver for Crookston's assets. (*Id.* ¶25.) The Receiver and the Investor Plaintiffs are pursuing the same person on account of the same conduct arising out of the same transactions and occurrences by the same actors. (*Id.*) As such, the Investor Actions affected the Estate's assets and ultimate recoveries; every

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1    dollar the Investor Plaintiffs managed to recover from Crookston was arguably a
2    dollar the Receiver could not recover from him. (*Id.*)

3           Crookston wanted to achieve finality with a settlement, which he really could
4    only accomplish through a deal with the Receiver. (*Id.* ¶26; Nelson Decl. ¶8.) At the
5    same time, the Receiver did not think it advisable or practical to exclude the Investor
6    Plaintiffs from those discussions. (Vives Decl. ¶26.) Because the Investor Plaintiffs
7    collectively constitute a significant percentage of the known population of net losing
8    investors, the Receiver considered them to function effectively as an ad hoc creditors
9    committee. (*Id.*) Crookston, moreover, made clear from the start that any settlement
10   with the Receiver must include a bar order enjoining any further creditor suits against
11   him arising from the 1inMM Ponzi Scheme, so the Receiver continually focused on
12   achieving a settlement that met the legal requirements for a bar order. (*Id.* ¶27.)
13   These factors, among others, made the litigation complex and particularly difficult
14   to settle on a global basis. (*Id.*)

15                                    **Legal Standards**

16          District courts have "extremely broad" power and "wide discretion" in
17   overseeing the administration of a receivership. *SEC v. Hardy*, 803 F.2d 1034, 1037
18   (9th Cir.1986). The Ninth Circuit "affords 'broad deference' to the [district] court's
19   supervisory role" in receivership cases, and "generally uphold[s] reasonable
20   procedures instituted by the district court that serve th[e] purpose of orderly and
21   efficient administration of the receivership for the benefit of creditors." *Commodity*
22   *Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.2d 1107, 1115 (9th
23   Cir.1999) (cleaned up).

24          That broad authority to oversee the administration of a receivership extends
25   to approving settlements. "[N]o federal rules prescribe a particular standard for
26   approving settlements in the context of an equity receivership; instead, a district
27   court has wide discretion to determine what relief is appropriate." *Gordon v.*
28   *Dadante*, 336 F.App'x 540, 549 (6th Cir.2009) (citing *Liberte Cap. Grp., LLC v.*

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

*Capwill*, 462 F.3d 543, 551 (6th Cir.2006)); *see also SEC v. Kaleta*, 530 F.App'x 360, 362 (5th Cir.2013) ("because this is a case in *equity*, it is neither surprising nor dispositive that there is no case law directly controlling" the district court's order approving receiver's settlement).

Local Rule 66-8 directs a receiver to "administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy." District courts sitting in receivership may look to bankruptcy law for guidance about the administration of a receivership. *See, e.g., SEC v. Cap. Consultants, LLC*, 397 F.3d 733, 745 (9th Cir.2005) (bankruptcy law "analogous" and therefore persuasive in administration of receivership estates). This is largely because "the purpose of bankruptcy receiverships and equity receiverships is essentially the same—to marshal assets, preserve value, equally distribute to creditors, and, either reorganize, if possible, or orderly liquidate." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 841 (5th Cir.2019) (internal citation and quotations omitted).

Courts in this circuit typically apply bankruptcy principles to evaluate approval of settlements in receivership cases. *SEC v. Champion-Cain*, 2022 WL 126114, at *1 (S.D.Cal. Jan. 13, 2022) (applying bankruptcy principles regarding approval of settlements in receivership case); *SEC v. Total Wealth Mgmt., Inc.*, 2019 WL 13179068, at *2 (S.D.Cal. Sept. 18, 2019) (same). Bankruptcy courts evaluate whether a compromise is "fair and equitable," considering "[a] the probability of success in litigation, [b] any difficulties that may be encountered in collection, [c] the complexity of the litigation, the expense, inconvenience, and delay necessarily attending, and [d] the interest of the receivership entities' creditors and their reasonable views." *Champion-Cain*, 2022 WL 126114, at *1 (quoting *In re Woodson*, 839 F.2d 610, 620 (9th Cir.1988)); *see also Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir.1986)). "[W]hen engaging in this analysis, bankruptcy courts need not conduct a mini trial on the merits, but need only canvass

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

the issues." *In re TBH19, LLC*, 2022 WL 16782946, at *6 (B.A.P.9th Cir. Nov. 8, 2022).

"The analysis under these factors is holistic; the Court must canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness…[I]t is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *Total Wealth Mgmt., Inc.*, 2019 WL 13179068, at *3 (internal citations and quotations omitted); *accord In re Open Med. Inst., Inc.*, 639 B.R. 169, 185 (B.A.P. 9th Cir. 2022) ("a settlement can satisfy the *A&C Properties* test even if the evidence supporting one or more of the four factors is relatively weak"). The Court should consider these factors "as a whole, and not individually in a vacuum, to ascertain whether the settlement is a good deal compared to litigation." *Open Med. Inst.*, 639 B.R. at 185. Further, when assessing a settlement, the Court need not decide issues of disputed fact or questions of law raised in the controversies sought to be settled. *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P.9th Cir.1997).

Ultimately, "courts generally should give deference to a [receiver's] business judgment in deciding whether to settle a matter for the benefit of the estate." *In re Douglas J. Roger, M.D., Inc., APC*, 393 F.Supp.3d 940, 961 (C.D.Cal.2019) (cleaned up); *see also In re Lahijani*, 325 B.R. 282, 289 (B.A.P.9th Cir.2005). "Approving a proposed compromise is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interests of the estate nor fair and equitable for the creditors." *In re MGS Mktg.*, 111 B.R. 264, 266-67 (B.A.P.9th Cir.1990).

## **Argument**

### I. **The Settlement is fair, equitable and in the best interests of the Estate.**

The Receiver respectfully submits that the Settlement easily satisfies all four *A&C Properties* factors. (Vives Decl. ¶28.)

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

### A. Probability of success

The Receiver's probability of success litigating the Receiver Claims is mixed. *See, e.g., Total Wealth Mgmt.*, 2019 WL 13179068, at *3 ("When determining the probability of success in litigation, a court must canvass the Receiver's litigation risk and determine whether the settlement amount is commensurate to that risk."). Assessing risk here is largely a function of evaluating Crookston's asserted defenses to the Receiver Claims, which, as discussed above, arise under UVTA.

### 1. UVTA

The Receiver's potential claims against Crookston arise under UVTA, the purpose of which is "to prevent debtors from placing, beyond the reach of creditors, property that should be made available to satisfy a debt by transferring that property to others." *RPB SA v. Hyla, Inc.*, 2021 WL 4980092, at *4 (C.D.Cal. June 24, 2021) (cleaned up). UVTA enables a creditor to bring an action to avoid a fraudulent transfer of an asset to the extent necessary to satisfy its claim. UVTA §3439.07(a)(1). A transfer is fraudulent—and thus avoidable—if the debtor transferred the asset either (1) with actual intent to hinder, delay, or defraud any of its creditors (i.e., "actual fraud"), or (2) without receiving reasonably equivalent value in exchange therefor when it had unreasonably small capital or was insolvent (i.e., "constructive fraud"). *Id.* §§3439.04(a)(1)-(2). A creditor may bring an action under UVTA against the "first transferee" of the asset, the person for whose benefit the transfer was made or any subsequent transferees. *Id.* §§3439.08(b)(1)(A)-(B).

Fraudulent transfer claims are among a receiver's most important tools to recover monies lost by Ponzi-scheme investors. *Donell v. Kowell*, 533 F.3d 762, 767 (9th Cir.2008). The Ponzi-scheme operator is the "debtor" and each investor is a "creditor," although the investors who profited from the scheme on a net basis—sometimes called "net winners"—are the recipients of the Ponzi-scheme operator's fraudulent transfers, and are thus liable under UVTA. *Id.* at 767-771. An equity receiver has standing to pursue fraudulent transfer claims "to redress injuries that

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

[the receivership entity] suffered when its managers caused [it] to commit waste and fraud." *Id.* at 777. A receiver may assert that a transfer was actually or constructively fraudulent. *Id.* at 770. But the debtor's admission that it operated a Ponzi scheme *conclusively* establishes fraudulent intent for a UVTA actual fraud claim (*In re Slatkin*, 525 F.3d 805, 814 (9th Cir.2008)), as well as financial distress for a UVTA constructive fraud claim (*Donell*, 533 F.3d at 770-71).

To determine whether a Ponzi-scheme investor is liable to the estate for receiving fraudulent transfers, courts apply the "netting rule," where "[a]mounts transferred by the Ponzi-scheme perpetrator to the investor are netted against the initial amounts invested by that individual. If the net is positive, the receiver has established liability[.]" *Id.* at 771. Generally, "innocent" investors may retain the payments they received up to the amount invested, but must disgorge the "profits" received from the Ponzi scheme as they "do not represent a return on legitimate investment activity." *Id.* at 772, 777.

### 2.    Defenses

Crookston argued that most of the Receiver Claims were untimely under the UVTA limitations period. Crookston asserted, for example, UVTA's one-year discovery rule was triggered before the Receiver's appointment, when the first creditors filed suit against 1inMM. While there are cases holding that creditor action will trigger a discovery rule generally, the Receiver replied that the UVTA discovery rule turns on what "the claimant" (i.e., the Receiver) knew—not any particular Estate creditor. *See, e.g., Gill v. Blessing*, 2014 WL 12573667, at *3 (C.D.Cal. Oct. 6, 2014). Similarly, Crookston argued that triggering the UVTA discovery rule does not depend on when a receiver is appointed. The Receiver countered with cases holding that the one-year discovery rule for a UVTA claim does not begin to run until at least sometime after the receiver is appointed. *See, e.g., Donell v. Mojtahedian*, 976 F.Supp.2d 1183, 1188-89 (C.D.Cal. 2013). In light of these

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

conflicting arguments, the Receiver considered this issue a significant litigation risk factor. (Vives Decl. ¶29.)

Crookston also argued that the Receiver could not avoid the Transfers because he took them in good faith and for value, which is a defense under UVTA §3439.08(a). In a Ponzi scheme, net winning investors generally may retain payments from the scheme operator returning the amounts invested only if the investor can prove that they received those transfers in good faith and for reasonably equivalent value. *Donell*, 533 F.3d at 771. The Receiver disagreed that Crookston, who profited from the 1inMM Ponzi scheme, could successfully invoke this defense. *Id.* (netting rule, which is used to determine existence of liability, "*requires only a positive net transaction with the Ponzi scheme*") (emphasis added). But Crookston also argued that the Receiver overstated his liability because she did not correctly consider the value of his initial investments to 1inMM. So, in deciding to settle, the Receiver contemplated that Crookston might successfully reclassify certain transfers of profits/commissions as payments returning his investments, making the good faith/for value defense a litigation risk. (Vives Decl. ¶30.)

Crookston contested the Receiver's assertion that she could recover the Transfers 1inMM made to him indirectly via JJMT because JJMT was a "mere conduit" rather than a transferee. While UVTA authorizes plaintiffs to recover an avoided transfer from the "first transferee" of the asset transferred, it does not define that term. The Ninth Circuit has observed that "'[t]ransferee' is not a self-defining term; it must mean something different from 'possessor' or 'holder' or 'agent,'" and that "treating anyone who touches the money as a 'transferee' could lead to absurd results…." *In re Walldesign, Inc.*, 872 F.3d 954, 962 (9th Cir.2017). The Ninth Circuit applies the "dominion test" to determine whether a party is a first transferee or a mere conduit. *In re Incomnet, Inc.*, 463 F.3d 1064, 1071 (9th Cir.2006). Under that test, the "minimum requirement [for] status as a 'transferee' is dominion over

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

the money or other asset," i.e., "the *right* to put the money to one's own purposes." *Walldesign*, 872 F.3d at 962.

Thus, JJMT would be deemed the first transferee if it had dominion over the money 1inMM transferred to it earmarked for Crookston on account of his investments; otherwise, JJMT was merely a conduit for 1inMM to transfer the money to Crookston, the first transferee. This issue presented an important litigation risk for the Receiver, as the vast majority of the Transfers flowed from 1inMM through JJMT to Crookston. (Vives Decl. ¶31.) If the Court ruled that JJMT was the first transferee, then the UVTA limitations period would bar the Receiver from avoiding most of the Transfers to Crookston. Rather than risk such a ruling, the Receiver decided it was preferable to settle. (*Id.*)

The Receiver believes that Crookston is liable under UVTA as a net winner, but it is not guaranteed that litigation would have resulted in the Receiver avoiding and recovering *all* of the Transfers. *Cf. In re ISE Corp.*, 2012 WL 1377085, at *8 (Bankr.S.D.Cal. Apr. 13, 2012) ("the success of litigation also entails consideration of the risk of uncertainty and the desire for expediency"). The Court may have sustained some of Crookston's defenses, which would be an outcome worse than the Settlement. Rather than take that risk, the Receiver compromised. (Vives Decl. ¶32.) *See, e.g., SEC v. Cap. Cove Bancorp LLC*, 2016 WL 11752897, at *2 (C.D.Cal. Dec. 15, 2016) (approving settlement, reasoning it "provide[d] a recovery that is proportionate to the successful prosecution of this action when discounts are factored in for the risk, time, and expense of fully litigating the case, and maximize[d] the funds available for distribution to creditors"); *Open Med. Inst.*, 639 B.R. at 183-84 (same, where trustee averred the odds of success as a "coin flip" and "thought it was safer to settle").

For these reasons, the Settlement appropriately takes into account the mixed probability of success on the merits. (Vives Decl. ¶33.)

### B. Collection difficulties

"Assessing the difficulties in collection is largely a bird-in-the-hand consideration that weighs the certainty of settlement against the potential uncertainty of collection even where a receiver secures a favorable judgment." *Total Wealth Mgmt.*, 2019 WL 13179068, at *3.

The Receiver understands that Crookston does not have assets that would be sufficient to satisfy a judgment avoiding all of the Transfers ($6,693,000), let alone that *plus* an adverse judgment entered in favor of the Investor Plaintiffs. (Vives Decl. ¶34.) So this factor weighs in favor of settling.

### C. Complexity/expense

It would be complex, expensive and time-consuming for the parties to litigate Crookston's defenses. (*Id.* ¶35.) This factor is particularly important in liquidations like this one where the goal is "obtaining the best possible realization upon the available assets and without undue waste by needless or fruitless litigation." *In re Law*, 308 F.App'x 152, 153 (9th Cir.2009). For example, a defendant's good faith under UVTA is a question of fact, which necessarily entails discovery and trial to resolve, along with the associated time and expense.

Given her review of the available evidence, the Receiver believes such litigation against Crookston would be expensive and time-consuming, as it would likely require extensive discovery, retention of experts and numerous witnesses. (Vives Decl. ¶36.) A trial and appeal would likely take at least two years to complete and cost the estate several hundred thousand dollars in fees and expenses. (*Id.*) This factor, therefore, weighs heavily in favor of approving the Settlement. *See, e.g., TBH19*, 2022 WL 16782946, at *3 (complexity element weighed in favor of settlement where dispute would require extensive discovery, cost the estate hundreds of thousands of dollars and take years to complete).

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

### D. Creditors

"The opposition of the creditors of the estate to approval of a compromise may be considered by the court, but is not controlling and will not prevent approval of the compromise where it is evident that the litigation would be unsuccessful and costly…In short, creditors have a voice but not a veto." *In re Bondanelli*, 2020 WL 1304140, at \*4 (B.A.P.9th Cir. Mar. 18, 2020). As discussed below, the Receiver is giving notice of this Motion to all known creditors of the Estate by email, posting it on the receivership website (the "Website"), as the Court has previously authorized,[1] and by publication in two major newspapers, along with instructions how to advise the Receiver if any creditor wishes to comment on or object to the Settlement. (Vives Decl. ¶37.)

In sum, the Receiver believes the Settlement is fair, equitable and adequate under the circumstances to realize the value of the Estate's interest in the Transfers. Litigation is, certainly, an alternative course, but "while the [Receiver] might do better in litigation, she is not likely to do so." *In re Tidwell*, 2018 WL 1162511, at \*3 (Bankr.C.D.Cal. Mar. 1, 2018) (cleaned up).

## II. The Court should approve the Bar Order.

### A. The Court has the power to enter the Bar Order.

The Court's "extremely broad" power and "wide discretion" to determine the appropriate relief in an equity receivership includes the "inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *Hardy*, 803 F.2d at 1037; *SEC v. Hickey*, 322 F.3d 1123, 1131 (9th Cir.2003). "Ancillary relief" in SEC enforcement actions may include "injunctions to stay proceedings by nonparties against the receivership." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir.1980)

---

[1] ECF #126 ¶5.

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

"Courts use ancillary relief in the form of bar orders to secure settlements in receivership proceedings and…to bar claims against third parties settling with receiverships." *SEC v. Stanford Int'l Bank Ltd.*, 2017 WL 9989250, at \*2 (N.D.Tex. Aug. 23, 2017), *aff'd sub nom. Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir.2019) (bar orders may "foreclos[e] suit against third-party defendants with whom the receiver is also engaged in litigation"). Bar orders enable federal receivers "to curb investors' individual advantage-seeking in order to reach settlements for the aggregate benefit of investors under the court's supervision." *Zacarias*, 945 F.3d at 896. "The availability of such [bar] orders facilitates settlement, promotes equitable recoveries by creditors, and maximizes assets available to creditors in the aftermath of a Ponzi scheme." *SEC v. Aequitas Mgmt., LLC*, 2020 WL 7318305, at \*1 (D.Or. Nov. 10, 2020).

Indeed, bar orders have become a common feature in settlements with receivers in cases arising from violation of the federal securities laws. *See, e.g., SEC v. DeYoung*, 850 F.3d 1172, 1183 n.5 (10th Cir.2017) (collecting cases); *SEC v. Nadel*, 2012 WL 12910648, at \*1 (M.D.Fla. Feb. 10, 2012) (same). Federal courts generally require that bar orders be (1) fair, just, equitable and in the best interest of the estate, and (2) "necessary" to the proposed settlement. *See, e.g., DeYoung*, 850 F.3d at 1178, 1183; *Kaleta*, 530 F.App'x at 362-63; *Stanford*, 2017 WL 9989250, at \*3; *SEC v. Alleca*, 2021 WL 4843987, at \*12 (N.D.Ga. Sept. 9, 2021), *vacated on other grounds*, 2022 WL 16631325 (11th Cir. Nov. 2, 2022). The Bar Order here satisfies both elements.

### B. The Bar Order is fair, equitable and in the best interest of the Estate.

A bar order typically meets this first element if it facilitates a higher settlement value and/or avoids protracted litigation. *See, e.g., DeYoung*, 850 F.3d at 1178; *Nadel*, 2012 WL 12910648, at \*1-2; *Alleca*, 2021 WL 4843987, at \*12-13; *SEC v. Adams*, 2021 WL 8016843, at \*2 (S.D.Miss. Feb. 25, 2021). A bar order is in the

best interest of the receivership estate if it resolves "complex claims" and "rights and obligations of parties" that "are so inextricably intertwined that resolution of the claims independently, as opposed to collectively, would be difficult and inefficient, would substantially increase costs to the [r]eceivership [e]state, and would likely reduce the ultimate recovery to the [investors]." *DeYoung*, 850 F.3d at 1178; *accord Alleca*, 2021 WL 4843987, at *13 (bar order was fair and equitable in light of amount defendants agreed to pay, as well as receiver's ability to avoid "the litigation risk…and the expenses associated with it"). Finally, a bar order is fair to creditors if it permits enjoined claims to be channeled to the receivership's claim process. *See, e.g., Kaleta*, 530 F.App'x at 362-63; *Adams*, 2021 WL 8016843, at *2.

The Settlement meets these requirements. It avoids protracted litigation of the Investor Claims and the Receiver Claims, the outcome of which was uncertain due to Crookston's defenses. (Vives Decl. ¶¶28-33.) By settling, the Estate avoided significant expenses and time associated with litigating. (*Id.* ¶¶35-36.) The Bar Order also drove a higher settlement value, as Crookston paid more to settle the Receiver Claims and the Investor Claims with a bar order than he would have paid to settle the Receiver Claims alone without one. (*Id.* ¶23; Nelson Decl. ¶6.) *See, e.g., Nadel*, 2012 WL 12910648, at *1 (bar order warranted in part because it "facilitate[d] a higher settlement value and, therefore, a larger recovery for claimants tha[n] would otherwise be available without the bar order"). Moreover, the Bar Order helped resolve complex claims that would have been difficult—if not impossible—to resolve independently. (Vives Decl. ¶¶24-27; Nelson Decl ¶7.) Absent a settlement, the Receiver and Investor Plaintiffs would be left to compete for Crookston's assets, a result that would have "frustrat[ed] the receiver's pro rata distribution to investors—a core element of its draw upon equity." *Zacarias*, 945 F.3d at 900. (Vives Decl. ¶25.)

The Bar Order is also fair to those 1inMM net losing investors who would be enjoined from pursuing any claims they might have against Crookston. The scope of

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

the Bar Order is appropriately tailored because it does not enjoin "independent and non-derivative [claims] that do not involve assets claimed by the receivership." *Zacarias*, 945 F.3d at 897. Instead, the Bar Order expressly enjoins ***only those claims that arise out of or relate to the 1inMM Ponzi Scheme***, including Crookston's involvement with JJMT. Such claims are derivative of and dependent upon the Receiver Claims. *See, e.g., Zacarias*, 945 F.3d at 897 (scope of bar order appropriate where enjoined claims were "derivative of and dependent on the receiver's claims, and their suits directly affect[ed] the receiver's assets"); *DeYoung*, 850 F.3d at 1178 (affirming bar order that limited scope of enjoined conduct to "any claims against [the settling defendants] arising out of, or in connection with, or relating to any [customer account associated with the securities fraud]"); *Kaleta*, 530 F.App'x at 362-63 (scope of bar order appropriate where "investors continue[d] to retain all other putative claims against the [settling parties] that d[id] not arise from the allegedly fraudulent notes [underlying] this action"); *Stanford*, 2017 WL 9989250, at *2 (entering bar order permanently enjoining any other pending or future claims against settling defendants "arising from their relationship with [the Ponzi-scheme operator]").

The Bar Order is also fair because it channels any future claims against Crookston to the Estate. Channeling investors' enjoined claims to a receivership's claims process safeguards their right to be heard, thus demonstrating a bar order's fairness. *See, e.g., Zacarias*, 945 F.3d at 897 (bar order affirmed that channeled investors' claims to estate's claim process); *Kaleta*, 530 F.App'x at 362 (same).

For these reasons, the Receiver respectfully submits that the Bar Order is fair, equitable and in the best interests of the Estate. (Vives Decl. ¶38.)

## C. The Bar Order is necessary to the Settlement.

A bar order is necessary if it is "essential," meaning the parties otherwise would not have resolved their dispute without it. *See, e.g., DeYoung*, 850 F.3d at 1183; *Alleca*, 2021 WL 4843987, at *12; *Kaleta*, 530 F.App'x at 362-63. Here, the

1    Bar Order is necessary because Crookston would not have settled with the Receiver

2    without a bar order enjoining all future claims against him arising out of or relating

3    to the 1inMM Ponzi Scheme and/or JJMT. (Vives Decl. ¶39; Nelson Decl. ¶9.);

4    Indeed, entry of the Bar Order is a condition precedent under the Settlement

5    Agreement. (Ex. 1 ¶12.) The Bar Order is, therefore, necessary. *See, e.g., Alleca*,

6    2021 WL 4843987, at *13 (bar order necessary where settling defendant "would not

7    have agreed to settle [the dispute] without the bar order," and settlement agreement

8    was contingent on entry of bar order); *Gordon v. Dadante*, 2008 WL 1805787, at

9    *14 (N.D.Ohio Apr. 18, 2008) (similar), *aff'd*, 336 F.App'x 540 (6th Cir.2009).

10   **III.    The Court should approve the Administrative Claims.**

11            The Investor Plaintiffs' agreement to pay the entire amount of the Settlement

12   Payment into the Estate for the benefit of all creditors will result in the Estate having

13   more cash for administration and creditor claims. (Vives Decl. ¶40.) In recognition

14   of that, the Receiver agreed that the Investor Plaintiffs' counsel should hold allowed

15   administrative claims in certain negotiated amounts[2] in exchange for their

16   contributions to the Estate ("Administrative Claims"). (*Id.*) After all, the Receiver

17   and Investor Plaintiffs' counsel—who function like counsel to a creditors'

18   committee in a bankruptcy case—are attempting to achieve the same goal of

19   bringing as much money in the Estate as possible for the benefit of net losing

20   investors. *Cf. Rodriguez v. Seabreeze Jetlev LLC*, 2022 WL 3327925, at *7

21   (N.D.Cal. Aug. 11, 2022) ("in bankruptcy cases, the debtor in possession and the

22   committee of creditors share a duty to maximize the debtor's estate") (cleaned up).

23            The Settlement reflects these principles. In deciding whether to approve a

24   settlement in a receivership, the Court is not constrained by a particular standard or

25

26

27   ---

28   [2] $600,000 for L&E Investors' counsel; $300,000 for Aronson Investors' counsel; $100,000 for
     Nalpak Investors' counsel.

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

set of rules but instead "has wide discretion to determine what relief is appropriate." *Cap. Cove Bancorp*, 2017 WL 11643414, at \*2. So the Court could approve the Administrative Claims and associated disbursements using its discretion alone. The Court may also do so because Investor Plaintiffs' counsel helped create a common fund in the Estate.

Under the "common fund" doctrine, "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir.1977); *accord Baten v. Mich. Logistics, Inc.*, 2023 WL 2440244, at \*7 (C.D.Cal. Mar. 8, 2023). The common fund doctrine "is designed to spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the 'stranger' beneficiaries do not receive benefits at no cost to themselves." *Vincent*, 557 F.2d at 769.

The Ninth Circuit recently held that where a lawyer for a creditor of an entity in receivership "undeniably caused the creation, discovery, increase, or preservation of a common fund that benefited investors," the receivership court must award the lawyer a reasonable fee under the common fund doctrine. *SEC v. Pritzker Levine LLP*, 2022 WL 671020, at \*1 (9th Cir. Mar. 7, 2022). In *Pritzker*, the law firm Pritzker Levine LLP pursued certain litigation claims on behalf of a creditor that resulted in the identification of millions in assets that became part of a state court receivership. *Id.* Later, the SEC commenced a securities fraud action against the same defendants and the court appointed a federal receiver, who obtained the assets of the state receivership, including the funds realized from Pritzker's litigation efforts. *Id.* The Ninth Circuit held that because Pritzker helped create a fund of cash that became part of the receivership estate, it should receive a reasonable fee award from the estate under the common fund doctrine, which "should be treated as an

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

allowed administrative claim" paid "from the fund itself, as a prior charge before the beneficiaries receive it." *Id.* at \*1-2.

Likewise, Investor Plaintiffs' counsel—who doggedly pursued the Investor Actions—played an essential role in increasing the amount that Crookston agreed to pay in settlement, all of which cash is coming into the Estate for eventual distribution to the net losing investors. (Vives Decl. ¶¶20,23,26,41.) The three-way nature of the settlement negotiations necessitated this. On the one hand, Crookston wanted to achieve finality with a settlement, which he really could only accomplish through a deal with the Receiver that would include a bar order. (*Id.* ¶26; Nelson Decl. ¶8.) But, on the other hand, as the Receiver was unwilling to settle with Crookston over the objections of the Investor Plaintiffs—constituting more than 100 of the Estate's creditors—any settlement had to resolve the Investor Claims too. (Vives Decl. ¶27.)

The Investor Plaintiffs' agreement that Crookston should pay *all* of the settlement consideration to the Estate for the benefit of all creditors was, from the Receiver's perspective, the lynchpin of this three-way compromise. (*Id.* ¶42.) It "undeniably caused the…increase" of the Estate's cash assets available for distribution to creditors beyond what the Receiver would have recovered by settling the Receiver Claims alone. (*Id.*) *Pritzker*, 2022 WL 671020, at \*1. Aside from their counsel, the L&E Investors in particular, who support the Settlement, also contributed a significant level of work that helped increase the Estate's assets. (Loftus Decl. ¶¶22,24,31.) Thus, the Investor Plaintiffs' and counsel's actions were a cause-in-fact benefitting the common fund in the Estate. *Pritzker*, 2022 WL 671020, at \*1 ("the common fund doctrine requires that the work of the attorney seeking an extra fee be *a* cause-in-fact of any claimed benefit to the fund, but not the *only* cause-in-fact"). This is so even if one might speculate that the Receiver might have recovered the same amount on her own. *Id.* ("The district court's speculation that the funds…might still have been recovered by the federal receiver in the absence of [Pritzker's efforts] therefore finds no support in the record and in any event does

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

not demonstrate that Pritzker's efforts were not a 'cause-in-fact' of the creation, increase, or preservation of a common fund."). So the Receiver respectfully submits that the Investor Plaintiffs and their counsel helped increase a common fund in the Estate. (Vives Decl. ¶43.)

The amount the Receiver agreed to pay the Investor Plaintiffs' counsel—$1 million of the total $3.85 million settlement—is reasonable and appropriate under the common fund doctrine. *See, e.g., In re Omnivision Techs.*, 559 F.Supp.2d 1036, 1046 (N.D.Cal. 2008) ("a total award of approximately 9% of the possible damages…weighs in favor of granting the requested 28% fee"); *Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *10-11 (C.D.Cal. June 9, 2008) (33% fee award appropriate for counsel's effort that resulted in recovering approximately 9.3% of the class's estimated loss); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D.Cal. June 10, 2005) (awarding 33% fee from $27.7 million settlement fund representing 36% of plaintiffs' estimated damages); *In re Gen. Instrument Sec. Litig.*, 209 F.Supp.2d 423,431,434 (E.D.Pa. 2001) (one-third fee awarded from $48 million settlement fund representing 11% of plaintiffs' estimated damages). Here, the proposed distributions to Investor Plaintiffs' counsel of $1 million is approximately 25.9% of the total Settlement Payment, which is a more modest percentage than the courts approved in the aforementioned cases.

"When all is said and done, the court can slice the pieces of this pie only so large. [Defendants] are to blame for the fact that the slices are so small. Had the professionals not persisted in their efforts, however, the pie would have been even smaller." *Gaskill v. Gordon*, 942 F.Supp.382, 388 (N.D.Ill. 1996) (awarding 38% of receivership assets under common fund doctrine to a receiver, his accountants, and interim class counsel), *aff'd*, 160 F.3d 361 (7th Cir.1998). The same is true here.

Finding a way to compensate the Investor Plaintiffs' counsel for their efforts in augmenting the Estate was a hard-fought material term of the overall Settlement. (Vives Decl. ¶44.) The Receiver agreed to the Administrative Claim amounts in the

exercise of her business judgment, which she felt was necessary to achieve a global settlement. (*Id.*) That decision is entitled to deference. *See, e.g., Roger*, 393 F.Supp.3d at 961; *Lahijani*, 325 B.R. at 289. For the reasons above, the Receiver asks the Court to approve the Administrative Claims and associated disbursements, which the Court may do pursuant to its wide discretion to approve receivership settlements generally and the common fund doctrine specifically.

### Notice to Creditors

"Creditors are entitled to 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 518 (N.D.Cal. 2008) (quoting *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950)). "[D]ue process…is not a technical conception with a fixed content unrelated to time, place and circumstances[.]" *Grimm v. City of Portland*, 971 F.3d 1060, 1065 (9th Cir.2020). Instead, "due process is flexible and calls for such procedural protections as the particular situation demands." *Muñoz v. United States Dep't of State*, 50 F.4th 906, 922 (9th Cir.2022). The Court may "exercise[] significant control over the time and manner" of any proceeding to hear a creditor's objections. *Liberte Cap. Grp.*, 462 F.3d at 552.

The Receiver will give notice of the Motion by: (a) CM/ECF to parties/interested parties; (b) email to all known creditors of the Estate (or, if represented, their counsel) with a link to this Motion and supporting exhibits; (c) posting it on the Website; and (d) publishing a notice once in the *Wall Street Journal* and once in the *Los Angeles Times* in the form annexed hereto as **Exhibit 5** ("Published Notice"). (Vives Decl. ¶45.) These communications will include instructions how to advise the Receiver of any objections to the Motion by no later than seven days before the hearing. (*Id.* ¶46.) The Receiver will thereafter file a status report. (*Id.*)

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
MOTION FOR ORDER APPROVING SETTLEMENT
WITH TYLER CROOKSTON AND FOR RELATED RELIEF

21

The Court should deem this notice sufficient under the circumstances. *See, e.g., Fed. Trade Comm'n v. Cardiff*, 2020 WL 9938072, at *4 (C.D.Cal. Mar. 10, 2020) (receiver's notice of settlement satisfied due process where receiver posted motion to its website and served on all parties, known creditors and interested parties); *Adams*, 2021 WL 8016843, at *2 (same, where receiver provided mail notice to interested parties, publicized settlement on receivership website and gave interested parties instructions how to submit comment or objection to settlement); *Nadel*, 2012 WL 12910648, at *1 (same, where receiver published notice once in two newspapers).

**WHEREFORE**, the Receiver respectfully requests the Court enter an order: (a) granting the Motion; (b) finding notice of the Motion, including the Published Notice, is sufficient under the circumstances and satisfies due process, and waiving any further notice otherwise required by Local Rule 66-7; (c) approving the terms of the Settlement memorialized in the Settlement Agreement as fair and equitable, including without limitation, the Bar Order and the Administrative Claims; (d) authorizing the Receiver to take such further actions as may be necessary to consummate the transactions in the Settlement Agreement; and (e) granting such further relief as the Court deems necessary and appropriate.

Dated: May 26, 2023

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By:     /s/ *Terence G. Banich*
        Terence G. Banich

*Attorneys for the Receiver*
Michele Vives

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

## **Certificate of Compliance with L.R. 11-6.2**

The undersigned, counsel of record for the Receiver, Michele Vives, certifies that this brief contains 6,977 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 26, 2023                    Respectfully submitted,

*/s/ Terence G. Banich*
Terence G. Banich
Attorney for the Receiver

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

# PROOF OF SERVICE

**STATE OF ILLINOIS, COUNTY OF COOK**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 525 W. Monroe St., Chicago, Illinois 60661. On May 26, 2023, I served the following document(s) described as:

**MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING SETTLEMENT WITH TYLER CROOKSTON**

as follows:

**[ ]   BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Katten Muchin Rosenman LLP practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[X]   BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused the document(s) to be sent from e-mail address terence.banich@katten.com to the persons at the e-mail address(es) listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Margaret Gembala Nelson – mnelson@foley.com
Susan Poll Klaessy – SPollKlaessy@foley.com
Alexander Loftus – alex@loftusandeisenberg.com
Andrew D. Campbell – acampbell@atllp.com
Monte Mann – mmann@atllp.com
Scott C. Frost – sfrost@howardandhoward.com

**[ ]   BY OVERNIGHT MAIL (FedEx):**  I enclosed said document(s) in an envelope or package provided by FEDEX and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FEDEX or delivered such document(s) to a courier or driver authorized by FEDEX to receive documents.

**[ ]   BY PERSONAL SERVICE:**  I caused said document to be personally delivered the document(s) to the person at the addresses listed above by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.

**[X]   E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

//

//

//

1    I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

2    Executed on May 26, 2023, at Winnetka, Illinois.

3                                                    */s/Terence G. Banich*
                                                     Terence G. Banich
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200