1  PATRICK BALDWIN, ESQ. (SBN 93337)
2  CHRISTOPHER MADER, ESQ. (SBN 199605)
   BALDWIN MADER LAW GROUP
3  516 North Sepulveda Boulevard
   Manhattan Beach, CA 90266
4  Phone: (310) 363-2031
   *Attorneys for Defendants Spiegel Accountancy Corporation, Jeffrey Spiegel, Ryan Spiegel and SAC*
5  *Advisory Group, LLC*

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11

12  ELLUSIONIST CASH BALANCE              **CASE NO. 23-cv-00287-AMO**
    PLAN AND TRUST, UYEN HUHYN,
13  SOUTHWEST INVESTMENTS FUNDS, LLC,     **DEFENDANTS' REPLY RE:**
    AVR GROUP, LLC, TRIDENT ASSET         **MOTION TO DISMISS**
14  MANAGEMENT, INC. and                  **SECOND AMENDED COMPLAINT**
    PHOENIX AFFORDABLE HOUSING
15  AUTHORITY, LLC,                       Date:       February 15, 2024
16                                        Time:       2:00 p.m.
        Plaintiffs,                       Courtroom:  10
17                                        Judge:      Hon. Araceli Martínez-Olguín
            v.
18                                        Action Filed:  January 19, 2023
    SPIEGEL ACCOUNTANCY CORP.,            Trial Date:    Not Set
19  JEFFREY SPIEGEL, RYAN SPIEGEL
    and SAC ADVISORY GROUP, LLC,
20
21      Defendants.
22

23      Defendants Spiegel Accountancy Corporation, Jeffrey Spiegel, Ryan Spiegel and SAC

24  Advisory Group, LLC ("Defendants") hereby Reply to the Opposition of Plaintiffs Ellusionist Cash

25  Balance Plan and Trust, Uyen Huhyn, Southwest Investments Funds, LLC, AVR Group, LLC,

26  Trident Asset Management, Inc. and Phoenix Affordable Housing Authority, LLC ("Plaintiffs") to

27  the Defendants' Motion to Dismiss Second Amended Complaint.

28

# TABLE OF CONTENTS

I.      INTRODUCTION                                                                              1

II.     ARGUMENT                                                                                  2

        A.      Plaintiffs' Cause of Action for Violation of §12(a)(2) of the 1933 Act Must Be
                Dismissed Because §12(a)(2) Does Not Apply to Private Placements                  2

        B.      Plaintiffs' Cause of Action for Violation of §15 of The 1933 Act Must be
                Dismissed Because it is Derivative of the Failed §12(a)(2) Claim                  5

        C.      Plaintiffs' Cause of Action for Declaratory Judgment Under §29(b)
                Fails as a Matter of Law                                                          6

        D.      Plaintiffs' Cause of Action for Violation of §10(b)5 of The 1933 Act Must Be
                Dismissed Because Fraud is Not Plead with Particularity                           7

        E.      This Court Lack Subject Matter Jurisdiction                                      12

        F.      Plaintiffs' State Law Fraud Claims Must be Dismissed
                Because Fraud is Not Plead with Particularity                                    13

        G.      Plaintiffs' Unjust Enrichment Claim Must be Dismissed                            14

III.    CONCLUSION                                                                               15

1

**TABLE OF AUTHORITIES**

2

<u>**Cases**</u>                                                                                                      <u>**Page**</u>

3

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    744 F.3d 595 (9th Cir. 2014)                                                                2

4

5

*Ambassador Hotel Co. v. Wei-Chuan  Inv.*,
    189 F.3d 1017 (9th Cir. 1999)                                                              12

6

*Berckeley Investment Group, Ltd. v. Colkitt*,
    455 F.3d 195 (3rd Cir. 2009)                                                                6-7

7

8

*BLM v. Sabo & Deitsch*,
    55 Cal. App. 4th 832 (1997)                                                                13

9

10

*Bridges v. Geringer*,
    2015 U.S. Dist. LEXIS 66695, at *12-15 (N.D. Cal. May 21, 2015)              4

11

*Comwest, Inc. v. Am. Op. Servs., Inc.*,
    765 F.Supp. 1467 (C.D. Cal. 1991)                                                          7

12

13

*Continental Airlines v. McDonnel Douglas*,
    216 Cal. App. 3d 388 (1989)                                                                3

14

15

*Drulias v. Guthrie*,
    2019 WL 13240415 (C.D. Cal. 2019)                                                        6

16

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005)                                                                          12

17

18

*GFL Advantage Fund, Ltd. v. Colkitt*,
    272 F.3d 189 (3rd Cir. 2001)                                                                7

19

20

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995)                                                                          2

21

22

*In re Brocade Communications Systems, Inc. Derivative Litigation*,
    615 F.Supp.2d 1018 (N.D. Cal. 2009)                                                      9

23

*In Re Metropolitan Securities Lit.*,
    532 F.Supp.2d 1260 (E.D. Wash. 2007)                                                    5-6

24

25

*In re Valence Technology Securities Litigation*,
    1995 WL 274343 (N.D. Cal. 1995)                                                          2

26

27

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002)                                                              7

28

1

**TABLE OF AUTHORITIES (Continued)**

**Cases**                                                                                    **Page**

2

3

*Liu Hongwei v. Velocity V Ltd. Partnership*,
   2018 U.S. Dist. LEXIS 115636, at *10-12 (C.D. Cal. July 11, 2018)        4

4

*Morgan v. AT & T Wireless Services, Inc.*,
   177 Cal. App. 4th 1235 (2009)                                          13

5

6

*No. 84 Employer–Teamster v. Am. West Hold. Corp.*,
   320 F.3d 920 (9th Cir. 2003)                                            6

7

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014)                                           11

8

9

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
   223 Cal. App. 4th 1105 (2014)                                          14

10

*Religious Technology Center v. Scott*,
   869 F.2d 1306 (9th Cir. 1989)                                           3

11

12

*Russell v. Rolfs*,
   893 F.2d 1033 (9th Cir. 1990)                                         2-3

13

*SEC v. Murphy*,
   626 F.2d 633 (9th Cir. 1980)                                            4

14

15

*SEC v. Ralston Purina Co.*,
   346 U.S. 119 (1953)                                                     4

16

*Small v. Fritz Companies, Inc.*,
   30 Cal.4th 167 (2003)                                                  13

17

18

*Tindell v. Murphy*,
   22 Cal. App. 5th 1239 (2018)                                            3

19

20

*TSC Industries, Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976)                                                    12

21

22

*Turpin v. Sortini*,
   31 Cal. 3d 220, (1982)                                                 13

23

24

*Vallejo Development Co. v. Beck Development Co.*,
   24 Cal. App. 4th 929 (1994)                                           3-4

25

26

*Weintraub Financial Services, Inc. v. Boeing Company*,
   2020 WL 6162801 (C.D. Cal. August 7, 2020)                             3

27

28

iv

## TABLE OF AUTHORITIES (Continued)

**Statutes**                                                              **Page**

California Corporations Code §25401                                          13

FRCP 12(b)                                                              *passim*

17 C.F.R. 240.10b-5                                                          8

28 U.S.C. §1331                                                            1, 12

28 U.S.C. §1658(b)                                                           8

The Securities Act of 1933                                              *passim*

The Securities Exchange Act of 1934                                     *passim*

I.    **INTRODUCTION**

The Plaintiffs' Second Amended Complaint ("SAC") perpetuates the same pleading defects that led Judge Chhabria to threaten sanctions against the Plaintiffs when he granted Defendants' Motion to Dismiss the Complaint, and led Judge Martínez-Olguín to grant Defendants' Motion to Dismiss the First Amended Complaint ("FAC") without even holding a hearing.

Plaintiffs' third attempt to state a claim fares no better than their prior attempts.  Despite *again* being granted leave to amend, Plaintiff only added **7 new paragraphs**.  That is, Plaintiffs simply re-filed the FAC with just 7 new paragraphs.  In their Opposition, Plaintiffs never dispute that those 7 new paragraphs have absolutely nothing to do with three of their four federal claims – Violation of §12(a)(2) of the Securities Act of 1933, Violation of §15 of the Securities Act of 1933 and Declaratory Judgment Pursuant to §29(b) of the Securities Exchange Act of 1934.  Nor do the Plaintiffs offer any explanation as to how these three claims, previously dismissed with leave to amend but unchanged, can possibly survive this Motion to Dismiss.

While the 7 new paragraphs are relevant to one of the Plaintiffs' four federal claims, Violation of §10(b)(5) of the Securities Exchange Act of 1934, they cannot salvage that claim.  The misrepresentations and omissions alleged in those 7 new paragraphs: (1) are barred by the statute of limitations; (2) occurred long after the private placement transactions at issue; and/or, (3) have nothing to do with the Profit Sharing Agreements at issue.

The Court should grant the Defendant's Motion to Dismiss the Plaintiffs' SAC for the same reasons that the Court granted Defendant's Motions to Dismiss their original Complaint and FAC.  Because each of the Plaintiffs' four federal securities law claims, Causes of Action Nos. 1-4, must be dismissed under FRCP Rule 12(b)(6), there is no basis for federal question jurisdiction under 28 U.S.C. §1331, and therefore the SAC must be dismissed for lack of subject matter jurisdiction under FRCP Rule 12(b)(1).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.   ARGUMENT

### A.   Plaintiffs' Cause of Action for Violation of §12(a)(2) of The 1933 Act Must be Dismissed Because §12(a)(2) Does <u>Not</u> Apply to Private Placements

Section 12(a)(2) of The 1933 Act proscribes any "untrue statement of a material fact" by means of a "prospectus or oral communication" in connection with the sale of a security.

<u>First</u>, the most glaringly obvious reason that the Plaintiffs' §12(a)(2) claim must be dismissed is the clear, twenty-eight years old U.S. Supreme Court holding that §12(a)(2) does not apply to private placements. *Gustafson v. Alloyd Co*., 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). Plaintiffs simply cannot get around *Gustafson*, which the Ninth Circuit explicitly recognized in *In re Valence Tech. Sec. Lit.*, 1995 WL 274343 (N.D. Cal. 1995), f/n 15 ("***Gustafson* held that §12(2) does not apply to private placement transactions**." *Emphasis added*.).

Plaintiffs also cannot get around the fact that the Profit Sharing Agreements are indeed private placements.  Plaintiffs alleged the following in their original Complaint:

". . . [T]he unregistered securities at issue in this case are not 'covered securities' within the meaning of National Securities Market Improvement Act of 1996 (NMSIA), 15 U.S.C. § 77r(b), . . . The securities were not issued by a nationally registered investment company nor was it designated for trading in a national securities exchange." ECF 1, ¶27.

"Placement agents such as SAC who sell private placements . . . ." ECF 1, ¶81.

"A placement agent, or at least a party acting in that role such as SAC, is required to perform reasonable due diligence on a private placement . . .." ECF 1, ¶84.

Plaintiffs cannot now alter their allegations in an attempt to get around a Motion to Dismiss. "**A party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding**.'" *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014), citing *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990). *Emphasis added*. The doctrine of judicial estoppel proscribes the Plaintiffs' attempt to change their prior position that the Profit Sharing Agreements are indeed private placements:

"The doctrine of judicial estoppel, sometimes referred to as the **doctrine of preclusion of inconsistent positions**, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. [Citations.] 'The policies underlying preclusion of inconsistent positions are 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings.' [Citations.] **Judicial estoppel is 'intended to protect against a litigant playing 'fast and loose with the courts.'** [Citations.] Because it is intended to protect the integrity of the judicial process, it is an equitable doctrine invoked by a court at its discretion. . . . **Judicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion** made in the same proceeding or a prior one. [Citations.]" *Russell*, *supra* at 1037, citing *Religious Tech. Center v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989). *Emphasis added*.

The "sham pleading" doctrine also prevents the Plaintiffs from changing their prior position that the Profit Sharing Agreements are private placements. "California recognizes the sham pleading doctrine, which states that 'a plaintiff cannot avoid allegations that are determinative to a cause of action simply by filing an amended complaint which omits the problematic facts or pleads facts inconsistent with those alleged in the original complaint. The doctrine precludes a plaintiff from amending a complaint to omit harmful allegations without explanation, from previous complaints to avoid attacks raised in demurrers.'" *Weintraub Financial Services, Inc. v. Boeing Company*, 2020 WL 6162801 (C.D. Cal. August 7, 2020), citing *Tindell v. Murphy*, 22 Cal. App. 5th 1239, 1248 (2018). See also, *Continental Ins. Co. v. Lexington Ins. Co.*, 55 Cal. App. 4th 637, 646 (1997) ("As our Court of Appeal succinctly put it, a party is 'not . . . allowed to amend the complaint to state a fact directly contradictory to one stated previously. '[A] plaintiff may not discard factual allegations of a prior complaint, or avoid them by contradictory averments, in a superseding, amended pleading.' [Citation.]"); and, *Vallejo Development Co. v. Beck Development Co.*, 24 Cal. App. 4th 929, 946 (1994) ("'. . . The court may examine the prior complaint to ascertain whether the amended complaint is merely a sham.' [Citation.] The rationale for this rule is obvious. '**A pleader may not attempt to breathe life into a complaint by omitting relevant facts which made his previous complaint defective**.' Moreover, any inconsistencies with prior

pleadings must be explained; if the pleader fails to do so, the court may disregard the inconsistent allegations. Accordingly, **a court is 'not bound to accept as true allegations contrary to factual allegations in former pleading in the same case**.'" *Emphasis added.*)

Plaintiffs clearly omit and ignore their prior allegations that the Profit Sharing Agreements are private placements, and moreover assert arguments inconsistent with those allegations. Plaintiffs cannot be allowed to change course and alter a fundamental allegation just to get around the Motion to Dismiss.

<u>Second</u>, in an attempt to twist the private Profit Sharing Agreements into a public offering, Plaintiffs rehash the argument they previously made in Opposition to the prior Motions to Dismiss based upon *SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980), *SEC v. Ralston Purina Co.*, 346 U.S. 119 (1953), *Bridges v. Geringer*, 2015 U.S. Dist. LEXIS 66695, at *12-15 (N.D. Cal. May 21, 2015) and *Liu Hongwei v. Velocity V Ltd. Partnership*, 2018 U.S. Dist. LEXIS 115636, at *10-12 (C.D. Cal. July 11, 2018). Opp. at P. 18, L. 6 – P. 10, L. 11. As was explained at length in connection with the prior two Motions to Dismiss, these foregoing decisions relied upon by the Plaintiffs concern fact patterns not even remotely close to the facts here. In this case, five institutional Accredited Investors and one individual Accredited Investor each represented in writing:

> "**4.1 . . . He or she acknowledges that . . . he or she is capable of evaluating the risks and merits of paying the Investment Amount and of protecting his or her own interests in connection with such investment**." SAC Exhibit A. *Emphasis added.*

> "**4.4   He or she acknowledges that in connection with paying the Investment Amount no oral or written representations have been made by SAC, its manager or any officer, employee, agent other than representations made in this Agreement**." SAC Exhibit A. *Emphasis added.*

As Accredited Investors, each Plaintiff represented that they could fend for themselves and withstand a complete loss of their investment. Moreover, the offering at issue is a quintessential private placement. It is difficult to imagine an offering *less* like a public offering and more private in nature. And even assuming *arguendo* that the Profit Sharing Agreements are a "security" under

The 1933 Act, as amended, it is beyond dispute that the Profit Sharing Agreements were *not* issued in a registered transaction.  As a matter of public record, *no* registration statement was filed at the Securities and Exchange Commission.  Plaintiffs' misguided effort to allege an unregistered public offering also fails because the alleged various offerings were *not* the same security.  The securities were in fact different, thus prohibiting treatment as one offering.

Third, Plaintiffs' assertion that the Defendants have conceded that all elements of a §12(a)(2) claim have been adequately plead (Opp. at P. 17, L. 7) is flat wrong.  To the contrary, Plaintiffs fail to allege all of the required elements for a §12(a)(2) claim, which are as follows:

> ". . . (1) there must be an offer or sale of a security; (2) the offer or sale must be made by the use of any means of interstate commerce or the mails; (3) the offer must be made by means of a prospectus; and (4) the prospectus or oral communication relating to the prospectus must include an untrue statement or omission of a material fact."  Opp. at P. 17, L. 1 – 7.

Plaintiffs admit that they are domiciled in California.  SAC ¶¶7-12.  Thus, the Profit Sharing Agreements were not sold via the use of interstate commerce, but rather were sold entirely within California (notably affording an exemption from registration under the intrastate offering exemption, §3(a)(11) of The 1933 Act and Securities Act Rule 147).  Additionally, the Plaintiffs specifically disavow that they received a prospectus.  SAC ¶155.

**B.    Plaintiffs' Cause of Action for Violation of §15 of The 1933 Act Must be Dismissed Because it is Derivative of the Failed §12(a)(2) Claim**

Plaintiffs allege that under §15 of the Securities Act of 1933, Defendants Jeffrey Spiegel, Ryan Spiegel and Spiegel Accountancy Corporation are liable as "control persons" of Defendant SAC Advisory Group, LLC for its alleged misrepresentations made in violation of §12(a)(2) of The 1933 Act.  "Section 15 provides investors with a private cause of action against anyone who controls a party liable under . . . Section 12.  In order to state a *prima facie* case under Section 15, a plaintiff must allege two elements: '(1) a primary violation of a federal securities law and (2) that the defendant exercised actual power or control over the primary violator."  *In Re Metropolitan*

1  *Securities Lit.*, 532 F.Supp.2d 1260 (E.D. Wash. 2007), citing *No. 84 Employer–Teamster v. Am.*

2  *West Hold. Corp.*, 320 F.3d 920, 945 (9th Cir. 2003).  Without a primary violation of §12(a)(2),

3  there can be no control person liability under §15.  Because the Plaintiffs' §12(a)(2) claim must be

4  dismissed, their §15 control person liability claim must also be dismissed under FRCP 12(b)(6).

5

6  **C.   Plaintiffs' Cause of Action for Declaratory Judgment Under §29(b) Fails as a Matter of Law**

7

8      Plaintiffs allege that under §29(b) of the Securities Exchange Act of 1934, they are entitled to

9  rescind the Profit Sharing Agreements because the agreements include terms that allegedly "seek

10 to waive compliance with the antifraud and civil liability provisions of the Securities Exchange

11 Acts of 1933 and 1934."  SAC ¶170.  (Presumably, Plaintiffs mean The Securities Act of 1933 and

12 The Securities Exchange Act of 1934.)  Those specific terms, typical in all private placements, are:

13 (1) Plaintiffs' acknowledgement that SAC Advisory Group, LLC made no representations to them

14 outside of those in the Profit Sharing Agreements themselves; and, (2) Plaintiffs' waiver of claims.

15 SAC, Exhibit A at Sections 3.1 and 4.4.

16

17     While §29(b) does make voidable every contract "made in violation of" federal securities

18 law, "the performance of which involves [such a] violation," federal courts take very narrow views

19 of those phrases.  *Berckeley Invest. Group, Ltd. v. Colkitt*, 455 F.3d 195, 206 (3rd Cir. 2009), cited

20 with approval by the Central District of California in *Drulias v. Guthrie*, 2019 WL 13240415 (C.D.

21 Cal. 2019).  Plaintiffs must demonstrate "a direct relationship between the violation at issue and

22 the performance of the contract; i.e., the violation must be 'inseparable from the performance of

23 the contract' rather than 'collateral or tangential to the contract.'"  *Berckeley* at 205.  In other

24 words, a contract can be voided under §29(b) <u>only</u> where the "**agreement cannot be performed**

25 **without violating the securities laws**."  *Id.* at 206.  *Emphasis added*.  The nexus between the

26 alleged securities law violation and the contract must be closer than a simple allegation that a

27 securities violation was committed in the course of a contract.  *Drulias* at *7.

28

Just as they did in opposing Defendants' Motions to Dismiss both the Complaint and FAC, Plaintiffs again ignore this important issue. Of course, that is because *Plaintiffs have no argument*. Plaintiffs simply cannot get around the fact that the two terms of the Profit Sharing Agreements they cite do *not* directly violate federal securities law, and even if they did violate federal law, the terms are not "inseparable" from the parties' agreement. "The test . . . is whether the alleged securities violations are 'inseparable' from the underlying agreement between the parties." *Berckeley* at 205, citing *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 201 (3rd Cir. 2001). Plaintiffs' §29(b) claim must again be dismissed.

### D. Plaintiffs' Cause of Action for Violation of §10(b)5 of The 1934 Act Must be Dismissed Because Fraud is Not Plead with Particularity

In connection with their claim for Violation of §10(b)(5) of the 1934 Act, Plaintiffs do not dispute that they are required to allege **each** alleged misrepresentation with particularity: "To meet the more exacting standards of the PSLRA, a plaintiff must specify **each** statement alleged to have been misleading and the reason why or reasons why the statement is misleading. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir. 2002)." Opp. at P. 3, L. 9-11. *Emphasis added*. Despite their admission, the Plaintiffs fail to refute any of key arguments made in the Defendants' Motion to Dismiss. First, Plaintiffs continue to assert proscribed of "group" allegations:

> "Ryan told **investors** via email their 'investment was safe' . . .." SAC ¶68 n. *Emphasis added*.

> "Ryan still told **investors** their money was safe . . .." SAC ¶71 m. *Emphasis added*.

Lumping the Plaintiffs together in a "group" is prohibited because the Defendants have no idea to *which* Plaintiff each alleged misrepresentation was made. *Comwest, Inc. v. Am. Op. Servs., Inc.*, 765 F.Supp. 1467, 1471 (C.D. Cal. 1991). These type of "group" allegations are the precise type of pleading defect that caused Judge Chhabria to threaten sanctions against the Plaintiffs. Despite failing to cite a single case in their Opposition allowing such "group" allegations, Plaintiffs inexplicably continue to assert them in their *third attempt* to properly state a claim

<u>Second</u>, Plaintiffs continue to allege misrepresentations made *after* the Plaintiffs entered the

Profit Sharing Agreements, which *cannot* support a 10(b)5 claim because they were not made "in

connection with the offer and sale of the security," as required.  17 C.F.R. 240.10b-5.  Nowhere in

their Opposition do the Plaintiffs ever dispute that the following alleged misrepresentations were

supposedly made in 2021, *long after* each Plaintiffs' final investments in January 2020 (as alleged

in SAC ¶126-132):

> "On or about February 18, **2021**, Ryan **told all Plaintiffs** via email HBO had a plan to pay 1inMM." SAC ¶68 p. *Emphasis added*.

> "On or about March 15, **2021**, Ryan **told all Plaintiffs** via email Warner Media intended to pay 1inMM in March 2021." SAC ¶68 q. *Emphasis added*.

> "On or about April 7, **2021**, Ryan **told all Plaintiffs** via email that Jeff and Ryan were 'shocked' by Horwitz's arrest." SAC ¶68 r. *Emphasis added*.

> "On December 15, **2020** Ryan communicated via email **to Plaintiffs** that money was coming and 'The CAM account is now over $100M as of last Friday and we were able to verify this account statement.  When the funds are released to 1inMM we will be notified.  1inMM was under the impression that the first $20M would have already been remitted to them, but it has not yet been released from the CAM account.'  Ryan had not verified anything was another lie to lull investors." SAC ¶89. *Emphasis added*.

> "**After 1inMM defaulted** on its promissory notes **Ryan and Jeff told Plaintiffs** by phone and email that they were 'victims' of Horwitz and lost money." SAC ¶68 m. *Emphasis added*.

> "Ryan **told investors** via email their 'investment was safe' even **after payments stopped** coming and it was clear 1inMM did not actually have contracts with HBO." SAC ¶68 n. *Emphasis added*.

Again, these are the type of clear pleading defect that led Judge Chhabria to threaten to

sanction the Plaintiffs.  These alleged misrepresentations were not made "in connection with the

offer and sale of the security," as required, and are also prohibited "group" allegations.

<u>Third</u>, Plaintiffs fail to refute the fact that many of the alleged misrepresentations cannot

support a 10(b)5 claim as they are barred by the five-year statute of repose.  28 U.S.C. §1658(b).

Despite Plaintiffs' argument to the contrary, the application of the statute of repose is applied

mechanically and cannot be tolled: "The five-year statute of repose period may not be tolled and it begins to run **on the date of the false representation**." *In re Brocade Communications Systems, Inc. Derivative Litigation*, 615 F.Supp.2d 1018, 1035 (N.D. Cal. 2009). *Emphasis added*.

Plaintiffs cannot change the fact that the following alleged misrepresentations occurred more than five years *prior* to April 26, 2023, the date that they first alleged a 10(b)5 claim:

"In or about **March 2017**, Ryan communicated the attached 1inMM Capital overview . . .." SAC ¶53. *Emphasis added*.

"In or about **March 2017**, Ryan communicated an Investor Information Statement . . .." SAC ¶54. *Emphasis added*.

"On or about **April 5, 2017**, Ryan presented the investment opportunity . . .." SAC ¶62. *Emphasis added*.

"On **March 27, 2017**, Ryan created and narrated a video . . .." SAC ¶65. *Emphasis added*.

"In or about **April 2017**, Ryan on behalf of SAC distributed the video . . .." SAC ¶68 a. *Emphasis added*.

"In or about **March 2017**, SAC communicated the following video . . .." SAC ¶68 c. *Emphasis added*.

"In or about **March 2017**, Ryan, on behalf of SAC, communicated the following video . . .." SAC ¶68 d. *Emphasis added*.

"In or about **March 2017**, Ryan, on behalf of SAC, communicated the following video . . .." SAC ¶68 e. *Emphasis added*.

"In **April 2018** Ryan told Cindy by phone video . . .." SAC ¶68 g. *Emphasis added*.

"Ryan communicated to Brad via email on or about **March 15, 2017** that SAC  . . .." SAC ¶68 l. *Emphasis added*.

<u>Fourth</u>, Plaintiffs fail to refute the fact that many of the alleged misrepresentations **have nothing to do with the investments at issue**. As admitted in the Plaintiffs' SAC and the *Carter Complaint*, SAC Advisory Group, LLC launched three investment funds: SAC Movie Fund One, LLC ("Movie Fund") in **March 2017**, Fortune Film Fund One, LLC ("FF1") in **October 2017**, and Fortune Film Fund Two, LLC ("FF2") in **February 2018**.  RJN, **<u>Exhibit 6</u>**.

Plaintiffs do not dispute that many of the alleged misrepresentations – SAC ¶¶53, 54, 62, 65, 66, 68 a.-i., l. – supposedly occurred in **spring 2017** or **spring 2018**.  Plaintiffs also do not dispute that it was not until at least over **one year later**, in June 2019 for some of the Plaintiffs and September 2019 for others, that each Plaintiff first invested in an entirely different venture, the subject Profit Sharing Agreements.  SAC ¶¶126-132.  Plaintiffs do not dispute that the Profit Sharing Agreements were structured entirely differently than Movie Fund, FF1 and FF2, which were private funds managed by SAC Advisory Group, LLC with many member investors.  Plaintiffs do not dispute that the subject Profit Sharing Agreements were in the nature of joint venture agreements with a single investor, requiring a far larger capital commitment than Movie Fund, FF1 and FF2, and subject to an entirely different contract.

<u>Fifth</u>, Plaintiffs do not dispute that many of the alleged misrepresentations are couched in terms of negligence, and focus on the Defendants' alleged failure to conduct "due diligence":

" . . . Defendants operated with deliberate recklessness in an extreme departure from the standards of ordinary care and never sought any third-party confirmation of Horwitz's stories and misrepresented or concealed many of the facts they did know." SAC ¶6.

"Defendants undertook no due diligence sufficient to comply with the governing standards of care." SAC ¶75.

Such "negligence" allegations cannot support a 10(b)5 claim, and Plaintiffs make no cognizable argument to the contrary.  Moreover, the Plaintiffs are judicially estopped from claiming that the *Defendants did not conduct due diligence*.  In their FAC, the Plaintiffs alleged that the Defendants did in fact conduct due diligence, and did in fact engage counsel to investigate 1inMM:

"Defendants . . . limited their due diligence to asking Horwitz and Cole questions and reviewing documents provided by Horwitz and Cole." FAC ¶67 a. (ECF 32).

"SAC [Advisory Group, LLC] engaged an attorney named Brian Fraser ("Fraser") to draft documents and review contracts between SAC [Advisory Group, LLC] and 1inMM . . . and order[] a background check." FAC ¶67 b. (ECF 32).

/ / /

Plaintiffs' allegations that Defendants falsely represented that they conducted due diligence, and falsely represented that they engaged professionals to do due diligence, are belied by their own prior admissions.

Sixth, Plaintiffs fail to allege with the particularity the element of scienter as required per *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).  Plaintiffs argue that facts demonstrating the Defendants "extreme departure from the standards of ordinary care" are sufficient to satisfy this element.  Opp. at P. 3, L. 26 – 27.  In support of their argument that such an "extreme departure" has been adequately alleged, Plaintiffs argue that the Defendants failed to conduct due diligence.  Opp. at P. 5, L. 14 – P. 6, L. 16.  However, as previously stated hereinabove, the Plaintiffs already admitted and are judicially estopped from denying that the Defendants did in fact conduct due diligence, and did in fact engage counsel to investigate 1inMM:

> "Defendants . . . limited their due diligence to asking Horwitz and Cole questions and reviewing documents provided by Horwitz and Cole."  FAC ¶67 a.  (ECF 32).

> "SAC engaged an attorney named Brian Fraser ("Fraser") to draft documents and review contracts between SAC and 1inMM . . . and order[] a background check."  FAC ¶67 b. (ECF 32).

Moreover, no Defendant was contractually obligated to conduct diligence.  Plaintiffs, all Accredited Investors, agreed and represented in writing in the Profit Sharing Agreements that they would perform their own evaluation of the risks of the investment, and had not relied on any representations made by Defendants in making their respective investment decision:

> "**4.1 . . . He or she acknowledges that . . . he or she is capable of evaluating the risks and merits of paying the Investment Amount and of protecting his or her own interests in connection with such investment**."  SAC Exhibit A.  *Emphasis added.*

> "**4.4    He or she acknowledges that in connection with paying the Investment Amount no oral or written representations have been made by SAC, its manager or any officer, employee, agent other than representations made in this Agreement**."  SAC Exhibit A.  *Emphasis added.*

/ / /

The Defendants' alleged failure to conduct due diligence could not possibly be considered an "extreme departure from the standards of ordinary care" because the Accredited Investor Plaintiffs assumed all due diligence obligations themselves.

Seventh, Plaintiffs fail to make factual allegations with particularity showing that any alleged representations were "material," as required pursuant to applicable U.S. Supreme Court authority, *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Remarkably, the argument in Plaintiffs' Opposition on this issue does not refer to a single allegation in the SAC.

Eighth, Plaintiffs fail to make the factual allegations with particularity showing Plaintiffs' reliance upon any of the alleged representations.  Again, **the Accredited Investor Plaintiffs agreed and represented in writing in the Profit Sharing Agreements that they would perform their own evaluation of the risks of the investment**, and had not relied on any representations made by Defendants in making their respective investment decision.  SAC Exhibit A.

Seventh, Plaintiffs fail to make the factual allegations showing "loss causation," as required, as explained by the U.S. Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005); and, *Ambassador Hotel Co. v. Wei-Chuan Inv*., 189 F.3d 1017, 1027 (9th Cir. 1999) (To prove loss causation, [the plaintiff] must  demonstrate a causal connection between the deceptive acts that form the basis for the claim of  securities fraud and the injury suffered by the [Plaintiff].").

The word "cause" does not appear in the SAC.

**E.    This Court Lacks Subject Matter Jurisdiction**

Because all of the Plaintiffs' federal law claims must be dismissed under FRCP Rule 12(b)(6), there is no basis for federal question jurisdiction under 28 U.S.C. §1331.  Therefore the entire Complaint must be dismissed for lack of subject matter jurisdiction under FRCP Rule 12(b)(1).

**F.** **Plaintiffs' State Law Fraud Claims Must be Dismissed Because Fraud is Not Plead with Particularity**

A claim for Violation of California Corporations Code §25401 is required to be plead with particularity and specificity rather than conclusory allegations. *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 184 (2003).  Under California law, facts which show how, when, where, to whom, and by what means the representations were made must be alleged with particularity. *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1261-1262 (2009).

The Plaintiffs fail to allege *facts* with the required particularity describing *each* statement they allege to be false, the reason why *each* statement was false, who made *each* statement, to whom *each* statement was made, why *each* statement was material, and how *each* statement was false and how the falsity of *each* statement caused each Plaintiff's alleged damages.  Plaintiffs' argument, that "Defendants parroted Horwitz's lies" and negligently performed their due diligence, is not enough.  Plaintiffs' failure to plead each of these specific factual allegations, as required, requires dismissal.

Plaintiffs' Cause of Action for "Negligent Misrepresentation" must also be dismissed.  Under California law, Plaintiff *must* allege facts showing a misrepresentation of material fact, and that the defendant intended to induce reliance on the fact misrepresented. *BLM v. Sabo & Deitsch*, 55 Cal. App. 4th 832 (1997).  Nowhere in the Plaintiffs' Opposition to do they address the fact that there are no allegations whatsoever in the SAC of the Defendants' "intent to induce reliance."

**G.** **Plaintiffs' Accounting Malpractice Claim Must Be Dismissed**

The required elements for an Accounting Malpractice claim are:  ". . . (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Turpin v. Sortini*, 31 Cal. 3d 220, 229-30 (1982).

First, in their Opposition the Plaintiffs never dispute that they fail to allege that Spiegel Accountancy Corporation owed them any duty in connection with the Profit Sharing Agreements. Second, in their Opposition the Plaintiffs never dispute that they fail to allege that Spiegel Accountancy Corporation breached any purported duty regarding the Profit Sharing Agreements.

Plaintiffs' Accounting Malpractice claim (and indeed their entire SAC) is a cut and paste hodgepodge of boilerplate rules.  Plaintiffs fail to allege any nexus between those rules and Spiegel Accountancy Corporation's alleged breach of duty.  Plaintiffs fail to allege in the SAC, and fail to address in their Opposition: (1) exactly how providing basic tax services to both the Plaintiffs and SAC Advisory Group, LLC created a conflict of interest; (2) Spiegel Accountancy Corporation's exact role in the Profit Sharing Agreements and obligations related thereto; and, (3) exactly what Spiegel Accountancy allegedly did wrong.

**H.      Plaintiffs' Unjust Enrichment Claim Must Be Dismissed**

The theory of unjust enrichment requires one who acquires a benefit which may not be justly retained to return either the thing or its equivalent to the aggrieved party.  *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132 (2014).  Plaintiffs fail to make a *prima facie* showing that the Defendants were unjustly enriched, as they fail to plead factual allegations indicating that a benefit was conferred to Defendants, or that Defendants were "unjustly" enriched. Remarkably, the argument in Plaintiffs' Opposition on this Cause of Action **does not refer to a single allegation in the SAC**.  Rather, Plaintiffs (inappropriately) label the Defendants' argument "nauseating" (Opp., P. 28, L. 17) and claim – without any support whatsoever or reference to the SAC – that the Defendants' made "in excess of $4,000,000."  Opp., P. 28, L. 22.  In all events, Plaintiffs' Unjust Enrichment claim must be dismissed under FRCP 12(b)(6).

Simply stated, the Plaintiffs fail to state a claim for which relief can be granted.

/ / /

**III.     CONCLUSION**

Defendants respectfully requests that this Court grant their Motion to Dismiss all of Plaintiffs' causes of action under FRCP Rule 12(b)(6) with prejudice.

Dated:  October 3, 2023                             BALDWIN MADER LAW GROUP

By: _____
                                                   Patrick Baldwin, Esq.
                                                   Christopher Mader, Esq.
                                                   *Attorneys for Defendants*